RONALD D. KENT (SBN 100717)
ronald.kent@dentons.com
SUSAN M. WALKER (SBN 130748)
susan.walker@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone: (213) 623-9300
Facsimile: (213) 623-9924

Attorneys for Defendant
MEDPRO GROUP, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ORINDA CARE CENTER, LLC, a California limited liability company, and RENEW HEALTH GROUP, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>MEDPRO GROUP, INC., an Indiana corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:21-cv-9419<br><br>**DEFENDANT MEDPRO GROUP, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441, AND 1446** |

TO THE COURT AND CLERK AND ALL PARTIES OF RECORD AND THEIR COUNSEL:

PLEASE TAKE NOTICE that Defendant MedPro Group, Inc. ("MedPro" or "Defendant"), contemporaneously with the filing of this Notice of Removal, hereby removes the below-referenced action from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of  California, Western Division.

The removal is based on 28 U.S.C. §§ 1332(d) and 1441(b), specifically, on the following grounds:

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**PLEADINGS, PROCESS AND ORDERS**

1.     On or about October 19, 2021, Plaintiffs Orinda Care Center, LLC and Renew Health Group, LLC (together, "Plaintiffs") filed a complaint against Defendant entitled *Orinda Care Center, LLC et al. v. MedPro Group, Inc*., Case No. 21STCV38519, in the Superior Court of the State of California, County of Los Angeles, asserting causes of action for breach of insurance contract, breach of the implied covenant of good faith and fair dealing, violation of the Unfair Competition Law ("UCL") and declaratory relief (the "Complaint").

2.     The Plaintiffs' Complaint alleges, among other things, that MedPro breached a Senior Care Liability Policy, number NSC100432 (the "Policy").  A copy of the Policy is attached as Exhibit A to the Complaint.  As alleged in the Complaint, the Policy has a $1 million per event limit and $3 million aggregate limit.  Complaint, ¶ 18, Ex. A.

3.     Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of Plaintiffs' Complaint and all process and pleadings in the state court action are attached collectively as **Exhibit A**.

**TIMELINESS OF REMOVAL**

4.     Plaintiffs served the Summons and Complaint on Defendant on November 5, 2021.

5.     Pursuant to 28 U.S.C. Section 1446(b), this Notice of Removal is timely filed within thirty (30) days of Defendant's notice and receipt of Plaintiffs' Summons and Complaint.

**VENUE IS PROPER**

6.     Venue is proper under 28 U.S.C. § 1441(a) because the United States District Court, Central District of California, Western Division, embraces the county and court in which Plaintiffs filed this action—the Superior Court for the State of California, County of Los Angeles.

1

**JURISDICTION**

2    7.    "[A]ny civil action brought in a State court of which the district courts

3  of the United States have original jurisdiction, may be removed by the defendant or

4  the defendants, to the district court of the United States for the district and division

5  embracing the place where such action is pending."  28 U.S.C. § 1441(a).

6    8.    This Court has diversity jurisdiction over this matter pursuant to 28

7  U.S.C. § 1332(a) because (1) the amount in controversy exceeds $75,000 because

8  the Plaintiffs' Complaint seeks damages in excess of $75,000.00, exclusive of

9  interest and costs, and (2) there is diversity between Plaintiffs and Defendant

10  because they are citizens of different states.  28 U.S.C. §§ 1332(a), 1441.

11    9.    Accordingly, this case is properly removed under 28 U.S.C. §§ 1332

12  and 1441, as this case falls within the Court's diversity jurisdiction.

13  **A.    Diversity of Citizenship**

14    10.    For diversity purposes, "a corporation shall be deemed to be a citizen

15  of every State and foreign state by which it has been incorporated and of the State

16  or foreign state where it has its principal place of business . . . ."  28 U.S.C.

17  § 1332(c)(1).

18    11.    Plaintiffs' Complaint alleges that Orinda Care Center, LLC is a

19  California limited liability corporation with its principal place of business in

20  Orinda, California.  Complaint ¶ 12.  Therefore, Orinda Care Center, LLC is a

21  California citizen for diversity purposes.

22    12.    Plaintiffs' Complaint alleges that Renew Health Group, LLC is a

23  California limited liability corporation with its principal place of business in

24  Monrovia, California.  Complaint ¶ 13.  Therefore, Renew Health Group, LLC is a

25  California citizen for diversity purposes.

26    13.    As alleged in Plaintiffs' Complaint, MedPro is an Indiana corporation

27  with its principal place of business in Fort Wayne, Indiana, where it is

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 3 -

headquartered.  Complaint ¶ 14.  Therefore, MedPro is an Indiana citizen for diversity purposes.

14.     MedPro is the only defendant served in this action.  Doe defendants are disregarded when determining diversity jurisdiction for removal. 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.")

15.     As Plaintiffs are California citizens and Defendant is an Indiana citizen, the parties in this action are diverse.

**B.     Amount in Controversy**

16.     To meet the 28 U.S.C. § 1332(a) amount in controversy threshold, Plaintiffs must allege damages in excess of $75,000 at the time of removal.

17.     It is facially apparent from Plaintiffs' Complaint that, while Defendant disputes Plaintiffs' allegations and denies liability as to Plaintiffs' claims, the amount in controversy exceeds $75,000, exclusive of interest and costs.  Plaintiffs' Complaint asserts that Plaintiffs "have suffered damages in the millions of dollars, to be proven at trial" due to Defendant's alleged conduct in not settling an underlying action filed against Plaintiffs entitled *Linetskaya v. Orinda Care Center et al.*, Case No. C21-00589 ("Underlying Action"), pending in Contra Costa County Superior Court.  Complaint ¶¶ 24-27, 54-55, 63.  As alleged in Plaintiffs' Complaint, the Underlying Action alleges various forms of neglect and violation of patient's rights by Plaintiffs and asserts causes of action against Plaintiffs for elder abuse and neglect, violation of Patient's Bill of Rights under Title 22 of the California Code of Regulations, negligence and negligent infliction of emotional distress.  Complaint ¶ 27.  Plaintiffs' Complaints alleges that in the Underlying Action, "the Linetskaya Plaintiffs sent a written Policy limits demand letter to Plaintiffs."  Complaint ¶ 39.  *See Budget Rent-A-Car v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997) ("Because the applicability of Budget's liability

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 4 -

coverage to a particular occurrence is at issue, the amount in controversy is the value of the underlying potential tort action."); *Cohn v. Petsniart, Inc*., 281 F.3d 837, 840 (9th Cir. 2002) (holding settlement demand is relevant evidence of the amount in controversy).

18.    Further, Plaintiffs' Complaint alleges that Defendant breached the implied covenant of good faith and fair dealing by not settling the pending Underlying Action.  Complaint ¶ 61.  Plaintiffs claim that Defendant's alleged conduct caused Plaintiffs to "have suffered, and continue to suffer, damages in the millions of dollars," including incurring attorneys' fees in this action that Plaintiffs claim are recoverable as damages.  Complaint ¶¶ 63, 64.  *See Michal v. Safeco Ins. Co. of Am.*, 2014 WL 12611298, at *1 (considering claim for attorneys' fees sought pursuant to *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985) as alleged damages for purposes of determining the amount in controversy).

19.    Moreover, Plaintiffs' Complaint asserts that Defendant's alleged breach of the implied covenant of good faith and fair dealing was "willful" and "constitute[d] malice, oppression, and/or fraud," and that Plaintiffs therefore are entitled to an award of punitive and exemplary damages against Defendant under California Civil Code Section 3294.  Complaint ¶ 65.  *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) ("It is well established that punitive damages are part of the amount in controversy in a civil action.") (citation omitted).

20.    Consequently, as alleged in Plaintiffs' Complaint, Plaintiffs' claimed compensatory damages, punitive damages, and attorneys' fees far exceed the jurisdictional threshold amount of $75,000.

## NOTICE TO PLAINTIFF AND SUPERIOR COURT

21.    Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Central District of California, and pursuant to 28 U.S.C. § 1446(d), written notice of this filing and any attendant supplementary papers required by this Court will be given to Plaintiffs, and a copy of the Notice of

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Removal will be filed with the Clerk of the Court for the Superior Court of the State of California, County of Los Angeles.

## CONCLUSION

22.    Pursuant to 28 U.S.C. § 1332(a), this Court has jurisdiction over this action under 28 U.S.C. §§ 1441 and 1446 because, for the reasons set forth above, the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and there is diversity between Plaintiffs and Defendant who are citizens of different states and/or a foreign state.

23.    Defendant, by filing this Notice of Removal, does not waive any defenses or objections available to it under the law. Defendant reserves the right to amend or supplement this Notice of Removal.

WHEREFORE, Defendant requests that the above-captioned action pending in the Superior Court of the State of California for the County of Los Angeles, Case No. 21STCV38519, be removed to this Court.

Dated:   December 3, 2021

DENTONS US LLP

By: _____
         Ronald D. Kent

Attorneys for Defendant MEDPRO GROUP, INC.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

# EXHIBIT A

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Brian A. Procel (SBN 218657)
MILLER BARONDESS LLP
1999 Avenue of the Stars - Suite 1000, Los Angeles, California 90067
Email: bprocel@millerbarondess.com
TELEPHONE NO.: (310) 552-4400   FAX NO.: (310) 552-4800
ATTORNEY FOR *(Name):* Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **LOS ANGELES**
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Central Judicial District - Stanley Mosk Courthouse

CASE NAME:
Orinda Care Center, LLC, et al v. Medpro Group, Inc., et al

**CIVIL CASE COVER SHEET** | Complex Case Designation | CASE NUMBER:
☑ Unlimited   ☐ Limited | ☐ Counter   ☐ Joinder | **21STCV38519**
(Amount demanded exceeds $25,000) (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:   DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☑ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is   ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):* Three (3) - See Attachment 1
5. This case ☐ is   ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: October 19. 2021
Brian A. Procel (SBN 218657)
(TYPE OR PRINT NAME)   (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
**CIVIL CASE COVER SHEET**
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courtinfo.ca.gov*

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Page 2 of 2

**MC-025**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Orinda Care Center, LLC, et al v. Medpro Group, Inc., et al | 21STCV38519 |

**ATTACHMENT** *(Number):* 1 (One)

*(This Attachment may be used with any Judicial Council form.)*

1. Breach of Insurance Contract
2. Breach of the Implied Covenant of Good Faith and Fair Dealing
3. Violation of Business and Professions Code Sections 17200 et seq.
4. Declaratory Relief

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page 3 of 3

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT
to Judicial Council Form**

*www.courtinfo.ca.gov*

Electronically FILED by Superior Court of California, County of Los Angeles on 10/19/2021 05:36 PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Flores-Hernandez,Deputy Clerk

1  BRIAN A. PROCEL (State Bar No. 218657)
   bprocel@millerbarondess.com
2  BRYAN R. REDFERN (State Bar No. 319648)
   bredfern@millerbarondess.com
3  MILLER BARONDESS, LLP
   1999 Avenue of the Stars, Suite 1000
4  Los Angeles, California 90067
   Telephone:    (310) 552-4400
5  Facsimile:    (310) 552-8400

6  Attorneys for Plaintiffs
   ORINDA CARE CENTER, LLC and
7  RENEW HEALTH GROUP, LLC

8             SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF LOS ANGELES, CENTRAL DISTRICT

10

11 ORINDA CARE CENTER, LLC, a California      CASE NO. _____ 21STCV38519
   limited liability company, and RENEW
12 HEALTH GROUP, LLC, a California limited     COMPLAINT FOR:
   liability company,
13                                             1. **BREACH OF INSURANCE**
                Plaintiffs,                       **CONTRACT**
14
        v.                                     2. **BREACH OF THE IMPLIED**
15                                                **COVENANT OF GOOD FAITH**
                                                  **AND FAIR DEALING**
16 MEDPRO GROUP, INC., an Indiana
   corporation, and DOES 1 through 10,         3. **VIOLATION OF BUSINESS AND**
17 inclusive,                                     **PROFESSIONS CODE SECTIONS**
                                                  **17200** *ET SEQ.*
18              Defendants.
                                               4. **DECLARATORY RELIEF**
19
                                               **DEMAND FOR JURY TRIAL**
20
                                               Action Filed:    October 19, 2021
21

22

23

24

25

26

27

28

535068.2

COMPLAINT

*MILLER BARONDESS, LLP*
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1      Plaintiffs Orinda Care Center, LLC, a California limited liability company, and Renew

2 Health Group, LLC, a California limited liability company (collectively, "Plaintiffs"), allege in

3 this Complaint against MedPro Group, Inc. and DOES 1-10 (collectively, "Defendants") as

4 follows:

5                 **NATURE OF ACTION AND RELIEF SOUGHT**

6     1.     This action arises out of Defendant MedPro Group's ("MedPro") bad faith in

7 connection with the settlement of an underlying lawsuit.  MedPro is the insurer of Plaintiffs.

8 MedPro's obligations are set forth in a written policy ("the Policy") taken out by Plaintiffs with a

9 $1 million per event limit of liability and a $3 million aggregate limit of liability.

10     2.     On March 26, 2021, Lyudmila Linetskaya, a resident at Orinda Care Center, and

11 her daughter, Regina Linetskaya (the "Linetskaya Plaintiffs"), filed an action in Contra Costa

12 Superior Court, entitled *Linetskaya v. Orinda Care Center, LLC et. al.*, Case No. C21-00589 (the

13 "Underlying Action").  Linetskaya accused Orinda Care Center of various forms of neglect and

14 violations of patient's rights.  These alleged injuries resulted from the shortage of staff and overall

15 strain placed on Orinda Care Center by the COVID-19 pandemic.

16     3.     The Policy was intended to provide security against the type of risk presented by

17 the Underlying Action.

18     4.     Plaintiffs timely tendered their Claim for the Underlying Action to MedPro.  At

19 first, MedPro argued that the Policy did not provide any coverage for the Claim.  Upon Plaintiffs

20 pointing out that the Claim was clearly covered by the Policy, MedPro reversed its position and

21 agreed to defend Plaintiffs under a reservation of rights.  However, MedPro continued its attempts

22 to evade its obligations, asserting that although it had a duty to defend Plaintiffs, it did not have a

23 duty to indemnify Plaintiffs in the Underlying Action.  This position was also clearly erroneous.

24 After Plaintiffs objected, MedPro again reversed course, this time claiming that while it has a duty

25 to defend and indemnify Plaintiffs, it disputes whether there is any liability in the Underlying

26 Action.

27     5.     MedPro's inconsistent and wavering positions make clear that Defendants have not

28 conducted any real analysis regarding the defenses they are relying on to avoid their obligations

MILLER BARONDESS, LLP

1   under the Policy.  Rather than standing by its insured, Defendants have continued to delay and

2   slow settlement discussions for MedPro's own benefit, to the detriment of Plaintiffs.

3           6.      To avoid the risk of an adverse jury verdict, Plaintiffs have pleaded with MedPro to

4   settle the Underlying Action.  Yet Defendants continue to posture, delay, and take untenable

5   positions to frustrate Plaintiffs from receiving the benefits of their insurance coverage.

6           7.      The Linetskaya Plaintiffs' most recent settlement demand was within the Policy

7   limits.  However, by refusing to meaningfully evaluate the claims in the Underlying Action,

8   MedPro continues to prevent the settlement process from progressing.

9           8.      Defendants are stalling.  They are doing so as a tactic—to see if they can withdraw

10  coverage completely.  This is the epitome of bad faith, where a carrier favors its interests over

11  those of its insured and seeks to evade its obligations under the policy.

12          9.      Plaintiffs are informed and believe that Defendants' conduct is not limited to

13  Defendants' evaluation of Plaintiffs' particular claim.  MedPro has a pattern and practice of

14  delaying and denying meritorious claims of its policyholders.  MedPro's pattern and practice is

15  specifically designed by MedPro to earn illicit profits at the expense of its policyholder's rights.

16  This ongoing pattern of conduct constitutes institutional bad faith.

17          10.     In order to prove that Defendants' improper conduct is part of a widespread pattern

18  and practice undertaken by MedPro, Plaintiffs will seek discovery of all insureds whose claims

19  were denied by MedPro or for whom MedPro refused to indemnify under similar circumstances.

20  *See Colonial Life & Accident Ins. Co. v. Superior Court* (1982) 31 Cal. 3d 785, 790-793.

21          11.     Plaintiffs seek damages in an amount to be proven at trial for Defendants' (1)

22  breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3)

23  violation of California Business and Professions Code sections 17200 *et seq*.  Plaintiffs also seek

24  (4) an order and judgment declaring that the Policy's $3 million aggregate limit applies to separate

25  claims resulting from COVID-19.

26                                    **PARTIES**

27          12.     Orinda Care Center, LLC is a California limited liability corporation based in

28  Monrovia, California that operates a skilled nursing facility in Orinda, California.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

3

13.     Renew Health Group, LLC is a California limited liability corporation based in Monrovia, California.  Renew Health Group, LLC operates multiple skilled nursing facilities throughout California, including Orinda Care Center.

14.     MedPro Group, Inc. is an Indiana corporation, with its headquarters in Fort Wayne, Indiana, that conducts substantial business in the State of California.

15.     Plaintiffs are ignorant of the true names and capacities of the additional defendants named herein as Does 1-10, inclusive, and therefore sue such additional defendants by such fictitious names.  Plaintiffs will amend this Complaint to allege the true names and capacities of those additional defendants if and when they have been ascertained.  Plaintiffs are informed and believe, and on that basis allege, that each of the additional defendants sued herein as Does 1-10, inclusive, is responsible in some manner for the occurrences and damages alleged herein.

16.     Plaintiffs are informed and believe, and on that basis allege, that except as otherwise alleged herein, each of the defendants is, and at all times relevant to this Complaint was, the agent, employer, partner, joint venturer, alter ego, and/or affiliate of the other defendants and, in doing the things alleged herein, was acting within the course and scope of such positions at the direction of, and/or with the permission, knowledge, consent, and/or ratification of the other defendants.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over the claims alleged herein because Plaintiffs seek relief pursuant to the laws of the State of California for the acts and omissions and /or transactions which occurred, in part, in Los Angeles County; and the amount in controversy exceeds $25,000.

## FACTUAL ALLEGATIONS

**The Insurance Policy**

18.     Plaintiffs purchased from MedPro a Senior Care Liability Policy, number NSC100432.  Orinda Care Center, LLC is the named insured under the Policy.  The Policy was effective from February 15, 2020 to February 15, 2021 (the "Policy Period").  The aggregate limit of liability for Professional Liability coverage under the Policy is $3 million with a $1 million limit of liability for single claims.  A true and correct copy of the Policy is attached hereto as

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

**Exhibit A**.

19.     At all times, Plaintiffs have paid all premiums on the Policy as they became due and payable, and have duly complied with all material conditions in the Policy, except for those conditions which have been waived or excused by Defendants.

**The Underlying Action**

20.     In or around April 1, 2020, Orinda Care Center experienced an outbreak of COVID-19 among many of its patients and staff.

21.     While the Policy was in full force and effect, in or around April 13, 2020, Lyudmila Linetskaya, a patient at Orinda Care Center, contracted COVID-19.  Plaintiffs subsequently reported Ms. Linetskaya's diagnosis as a **Potential Claim**[1] to MedPro in or around April 23, 2020.

22.     In addition to Ms. Linetskaya's COVID-19 diagnosis, the **Potential Claim** also detailed numerous comorbidities and health issues Ms. Linetskaya faced, which put her health at greater risk.

23.     As a result of the COVID-19 pandemic, Orinda Care Center experienced a severe staffing shortage that impacted its ability to provide care to its patients, including Ms. Linetskaya.

24.     Following her COVID-19 diagnosis, Ms. Linetskaya was hospitalized in July 2020 and, among other conditions, she was diagnosed with sepsis, aspiration pneumonia, and a urinary tract infection.  Ms. Linetskaya was hospitalized again in August 2020, as a result of acute metabolic encephalopathy and sepsis, as well as a urinary tract infection associated with an indwelling Foley Catheter.  These alleged injuries were the result of the conditions caused by the ongoing COVID-19 pandemic.

25.     On March 30, 2021, the Linetskaya Plaintiffs filed a complaint against Plaintiffs Orinda Care Center, LLC and Renew Health Group LLC, as well as Orinda Care Center and Crystal Solorzano, in Contra Costa County Superior Court, captioned: *Linetskaya v. Orinda Care Center el al*, Case Np. C21-00589.

_____

[1] Words in bold are defined terms in the Policy.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

26.     In the Underlying Action, the Linetskaya Plaintiffs allege that Ms. Linetskaya suffered various injuries while she was a patient at Orinda Care Center, as a result of inadequate care and understaffing.  The conditions giving rise to the alleged injuries have resolved and Ms. Linetskaya currently remains as a patient at Orinda Care Center.

27.     The Underlying Action seeks damages for four causes of action: i) Elder Abuse/Neglect; ii) Violation of Patient's Bill of Rights under Title 22 of the California Code of Regulations; iii) Negligence; and iv) Negligent Infliction of Emotional Distress.

28.     The Underlying Action constitutes a **Claim** as defined under the Policy, thus warranting coverage under the Policy.

**Initial Denial of Coverage**

29.     Plaintiffs timely provided notice of, and tendered, the Underlying Action to MedPro.

30.     On July 29, 2021, MedPro sent a letter to Plaintiffs denying any coverage for a defense or indemnity.  To support its declination of coverage, MedPro erroneously claimed that the claim was not made and/or reported during the Policy Period.

31.     Plaintiffs informed MedPro that it had in fact provided notice of a **Potential Claim** in April 2020, when it reported Ms. Linetskaya's COVID-19 diagnosis and underlying health conditions to MedPro.

32.     The Policy expressly provides that when the insured provides notice of a **Potential Claim**, which later turns into an actual **Claim**, coverage is triggered and falls back to the date of the original notice.

33.     In spite of the clear language of the Policy, MedPro refused to revaluate its position on coverage or provide any defense to Plaintiffs.

34.     The first mediation for the Underlying Action took place on August 16, 2020. MedPro refused to participate in, or even attend, the mediation.

35.     In response to MedPro's outrageous position on coverage, Plaintiffs sent MedPro a demand letter requesting that they reconsider their position and provide settlement authority within Policy limits.

6

COMPLAINT

36.     On August 30, 2021, MedPro reversed its initial decision and indicated that it would provide limited coverage under a reservation of rights.  However, MedPro still maintained that it was not obligated to pay for any claims unrelated to Ms. Linetskaya contracting COVID-19 in April 2020.

37.     Plaintiffs sent MedPro another letter explaining that all of the allegations in the Underlying Action constituted the same **Claim** under the express terms of the Policy, and that MedPro was not entitled to pick and choose the specific injuries it would cover.

38.     A Mandatory Settlement Conference in the Underlying Action was held on September 9, 2021.  Although a MedPro representative attended the conference, MedPro did not provide any settlement authority.

**Failure to Settle**

39.     On that same day, counsel for the Linetskaya Plaintiffs sent a written Policy limits demand letter to Plaintiffs' counsel in the Underlying Action.  The Linetskaya Plaintiffs requested that MedPro pay the remaining balance left on the Policy towards the settlement.

40.     In that same letter, counsel for the Linetskaya Plaintiffs explained that the Policy limits demand would expire on September 22, 2021, and in the event the offer was not accepted, the Linetskaya Plaintiffs would increase their demand beyond the Policy limits to account for increased litigation costs.

41.     Plaintiffs expressed their desire to settle the Underlying Action to MedPro.

42.     On or around September 19, 2021, MedPro responded to the written Policy limits demand, refusing to pay the balance under the Policy towards the settlement offer.

43.     MedPro's position is unreasonable and not made in good faith.  At the time of the Policy limits demand, the entire amount of Policy limit remained intact.  What's more, Plaintiffs informed Defendants that if the Underlying Action did not settle, litigation costs could exceed the Policy limit.  Yet, MedPro refused to pay, or even consider, a reasonable settlement within Policy limits.  By doing so, Defendants have left their insured in a lurch—facing potential liability beyond the limits of the Policy—instead of engaging in reasonable settlement discussions that could have resolved the case within the Policy limits.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

44.     MedPro's conduct violates California law which requires that an "insurer must settle within policy limits when there is substantial likelihood of recovery in excess of those limits. The duty to settle is implied in law to protect the insured from exposure to liability in excess of coverage as a result of the insurer's gamble—on which only the insured might lose." *Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 941 (1976).  "[T]he only permissible consideration in evaluating the reasonableness of the settlement offer becomes whether, in light of the victim's injuries and the probable liability of the insured, [an] ultimate judgment is likely to exceed the amount of the settlement offer.  Such factors as the limits imposed by the policy, a desire to reduce the amount of future settlements, or a belief that the policy does not provide coverage, should not affect a decision as to whether the settlement offer in question is a reasonable one." *Johansen v. Cal State Auto. Ass'n Inter-Ins. Bureau*, 15 Cal. 3d 9, 16 (1975).  An insurer that fails to accept a settlement offer within policy limits will be held liable in tort for the entire judgment against the insured, even if that amount exceeds the policy limits.  *Hamilton v. Maryland Cas. Co.*, 27 Cal. 4th 718, 725 (2002).

**Defendants Stall Settlement Discussions in Bad Faith**

45.     An additional Mandatory Settlement Conference was held on September 20, 2021. Ahead of the Conference, MedPro sent a letter to Plaintiffs reiterating its position that the Policy only covered claims resulting from injuries relating to Ms. Linetskaya's COVID-19 diagnosis.

46.     MedPro's letter also reiterated its position that all COVID-19-related injuries at Orinda Care Center constitute a single claim, subject to the $1 million per event limit of the Policy, as opposed to the $3 million aggregate limit.  Attempting to define all injuries related to COVID-19 as a single Claim is yet another attempt by MedPro to impermissibly protect itself at the expense of the insured.

47.     As a result of MedPro's refusal to recognize its duty to indemnify the insured for the claims at issue in the Underlying Action, Plaintiffs have been unable to successfully settle the Underlying Action.

48.     MedPro has come up with an improper settlement position to save money and avoid its contractual and legal duties to its insured.  This conduct is in violation of its duty to

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

engage in good faith and fair dealing with Plaintiffs and established California law.

49.     As a result of MedPro's refusal to settle, Plaintiffs have been forced to incur additional litigation costs as the Underlying Action progresses.

50.     By refusing the Policy limits demand, and engaging in other misconduct as discussed herein, Defendants engaged in bad faith and opened up the Policy.

## FIRST CAUSE OF ACTION

### (Breach Of Insurance Contract – Against All Defendants)

51.     Plaintiffs repeat and re-allege all of the foregoing and subsequent allegations and incorporate them by reference, as though set forth in full.

52.     The Policy is a written insurance contract between Plaintiffs and Defendants.

53.     Plaintiffs have performed all covenants and conditions required under the Policy, including, but not limited to, the provisions of timely notice of the Underlying Action.  All premiums due under the Policy have been paid in full.

54.     Defendants breached the Policy by refusing to authorize a reasonable settlement of the Underlying Action within Policy limits.

55.     As a direct and proximate result of the conduct of Defendants, Plaintiffs have suffered damages in the millions of dollars, to be proven at trial.

## SECOND CAUSE OF ACTION

### (Breach Of The Implied Covenant Of Good Faith And Fair Dealing – Against All Defendants)

56.     Plaintiffs repeat and re-allege all of the foregoing and subsequent allegations and incorporate them by reference, as though set forth in full.

57.     Implied in every contract of insurance is a covenant of good faith and fair dealing which obligates insurers (Defendants) to act at all times in good faith towards their insureds (Plaintiffs).

58.     Defendants acted without proper cause and in violation of their duties under the implied covenant of good faith and fair dealing.

/ / /

9

COMPLAINT

59.     Plaintiffs reasonably expected that Defendants would deal with Plaintiffs fairly, equitably, and in good faith.

60.     Plaintiffs' expectations were brought about and intended by Defendants as a result of, *inter alia*, the contractual language in the Policy.

61.     Defendants breached their duties under the implied covenant of good faith and fair dealing by stalling settlement negotiations for their own benefit and to the detriment of Plaintiffs.

62.     Plaintiffs allege that the motivation for Defendants' bad faith is to save money that will have to be paid by Plaintiffs and unfairly maximize Defendants' own profits at the expense of Plaintiffs.

63.     As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing contained in the Policy, Plaintiffs have suffered, and continue to suffer, damages in the millions of dollars, to be proven at trial.

64.     Defendants' breach of the covenant of good faith and fair dealing required Plaintiffs to incur costs, expenses and attorneys' fees in obtaining the contractual benefits to which they are entitled under the Policy, including the costs, expenses and attorneys' fee incurred in the instant action.  These fees continue to accrue as the Underlying Action proceeds and as Plaintiffs prosecute this action.

65.     Defendants' conduct, described hereinabove, was intended to cause injury to Plaintiffs and constituted despicable conduct carried on by Defendants in willful and conscious disregard of Plaintiffs' rights such as to constitute malice, oppression and/or fraud as defined by Section 3294 of the California Civil Code, thereby entitling Plaintiffs to punitive and exemplary damages.

## THIRD CAUSE OF ACTION

### (Violation of Unfair Competition Law – Against All Defendants)

66.     Plaintiffs repeat and re-allege all of the foregoing and subsequent allegations and incorporate them by reference, as though set forth in full.

67.     The Unfair Competition Law ("UCL"), California Business and Professions Code sections 17200 *et seq.*, prohibits any person from engaging in unfair competition as that term is

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

defined in California Business and Professions Code section 17200, which includes any "unlawful, unfair or fraudulent business act or practice," "unfair, deceptive, untrue or misleading advertising," and any act prohibited by Chapter 1 (commencing with section 17500) of Part 3 of Division 7 of the California Business and Professions Code.

68.     Defendants' acts and practices alleged herein, including, among other things, improperly denying Plaintiffs' initial claim, refusing to honor MedPro's duty to indemnify Plaintiffs, and refusing to authorize a reasonable settlement of the Underlying Action within Policy limits, constitute unlawful, fraudulent, and/or unfair business acts and practices within the meaning of the UCL and California common law.  Such conduct is ongoing and continues to this date.

69.     Defendants have a pattern and practice of engaging in unfair, fraudulent and unlawful business practices.  Defendants will continue to engage in this wrongful conduct unless they are enjoined from doing so by the Court.

70.     As a result of Defendants' unlawful, fraudulent, unfair, and deceptive business practices, Plaintiffs have been deprived of the benefits of coverage under the Policy, and have failed to receive the full benefits to which they are entitled under the Policy.  Plaintiffs have a vested interest in the benefits due under the Policy because one or more claims have arisen which trigger coverage under the Policy, and Plaintiffs have tendered their claim under the Policy to MedPro.

71.     Pursuant to California Business and Professions Code sections 17203 and 17204, Plaintiffs are empowered to compel Defendants to restore to Plaintiffs the money and property that Defendants acquired as a result of any act which constitutes unfair competition.

72.     Plaintiffs further seek an injunction preventing Defendants from engaging in these unfair, fraudulent and unlawful business practices going forward.

/ / /

/ / /

/ / /

/ / /

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1

**FOURTH CAUSE OF ACTION**

2

**(Declaratory Judgment Cal. Code. Civ. Proc. Section 1060, *et seq.* – Against All**

3

**Defendants)**

4        73.     Plaintiffs repeat and re-allege all of the foregoing and subsequent allegations and

5   incorporate them by reference, as though set forth in full.

6        74.     An actual controversy has arisen and now exists between Plaintiffs and Defendants

7   concerning their respective rights and duties in relation to the Policy limits that are applicable to

8   injuries resulting from COVID-19 at Orinda Care Center.  MedPro contends that all COVID-19-

9   related injuries constitute a single **Healthcare Event**, and therefore any resulting Claims are

10  subject to the per event Policy limit of $1 million, as opposed to the aggregate Policy limit of $3

11  million.  The categorization of all COVID-19-related injuries as a single Claim undercuts the

12  purpose of the Policy, and is part of MedPro's ongoing scheme to save money at the expense of its

13  insured.  As such, Plaintiffs desire a judicial determination regarding the meaning of the Policy

14  and a declaration as to whether Defendants may legally consider all COVID-19-related injuries as

15  a single Claim under the Policy.

16        75.     Resolution of the duties, responsibilities, and obligations of the parties is necessary

17  as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute

18  and controversy.  Absent such declaratory relief, Plaintiffs will suffer irreparable harm and be

19  deprived of the full protection and benefits offered by the Policy.

20        76.     The issuance of declaratory relief determining whether Defendants may treat all

21  COVID-19-related injuries as a single claim for purposes of setting a Policy Limit will confer

22  significant benefit not only to Plaintiffs, but to the general public at large, as Defendants (and

23  likely other insurance carriers) have taken this position on other claims involving COVID-19-

24  related injuries.  As such, in the interests of justice, Plaintiffs are entitled to recover reasonable

25  attorney's fees and costs pursuant to Cal. Code. Civ. Proc. Section 1021.5.

26        / / /

27        / / /

28        / / /

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**12**

1

## **PRAYER FOR RELIEF**

2          WHEREFORE, Plaintiffs respectfully pray for the following relief:

3          1.          An award of actual and compensatory damages in the millions of dollars, to be

4  determined at trial;

5          2.          An award of exemplary and punitive damages;

6          3.          An award of pre- and post-judgment interest at the maximum rate permitted by law;

7          4.          An award for costs of the suit and litigation expenses, including attorneys' fees;

8  and

9          5.          Such other and further relief as the Court deems just and appropriate.

10

11  DATED:  October 19, 2021                    MILLER BARONDESS, LLP

12

13                                                                  By:  _____

14                                                                         BRIAN A. PROCEL
                                                                            Attorneys for Plaintiffs
15                                                                         ORINDA CARE CENTER, LLC and
                                                                            RENEW HEALTH GROUP, LLC
16

17

18                                        **DEMAND FOR JURY TRIAL**

19          Plaintiffs Orinda Care Center, LLC and Renew Health Group, LLC demand a trial by jury.

20

21  DATED:  October 19, 2021                    MILLER BARONDESS, LLP

22

23                                                                  By:  _____

24                                                                         BRIAN A. PROCEL
                                                                            Attorneys for Plaintiffs
25                                                                         ORINDA CARE CENTER, LLC and
                                                                            RENEW HEALTH GROUP, LLC
26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1

## **INDEX OF EXHIBITS TO THE COMPLAINT**

2

| Ex. No. | Description | Pg. No. |
|---------|-------------|---------|
| A. | Orinda Care Center, LLC's MedPro Senior Care Liability policy, Policy No. NSC100432, dated February 15, 2020 | 15-104 |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

# EXHIBIT A



Medical Protective
Princeton Insurance Company
PLICO
MedPro RRG

4/6/2020

ORINDA CARE CENTER, LLC
107 W LEMON AVE
MONROVIA, CA  91016

**Re:   Policy Number NSC100432**

Thank you for trusting us to protect your assets and reputation. Enclosed please find your policy underwritten by National Fire & Marine Insurance Company.

MedPro Group, a Berkshire Hathaway company, offers our insureds:

- Peace of Mind: Unsurpassed financial strength ratings of A++ (Superior) from A.M. Best and AA+ from Standard and Poor's combined with the strongest defense of claims

- Expertise: Innovative resident safety and risk solutions

- Choice: Customized insurance solutions across the healthcare continuum – nationwide

We encourage you to visit our Senior Care website and Risk Management Resource Center ([www.medpro.com/seniorcare](www.medpro.com/seniorcare)) to access information regarding the latest risk concerns and recommended strategies to help promote resident safety and satisfaction.

Please direct notice of claims in accordance with the reporting requirements of this policy as follows:

Via Email:      [reportaclaim@medpro.com](reportaclaim@medpro.com)

Via Mail:       Medical Protective
                Attn: First Claim Reports
                5814 Reed Road
                Fort Wayne, IN 46835

Our claim experts are prepared to work with you to resolve any claim-related issues. Please feel free to contact 800-4MedPro (800-463-3776) to be connected to your claims representative who will be able to address questions or concerns about a claim involving this policy.

Sincerely,

Tim Kenesey
President and CEO

A.M. Best rating as of 05/27/2015. S&P rating as of 08/06/2015. MedPro Group is the marketing name used to refer to the insurance operations of The Medical Protective Company, Princeton Insurance Company, PLICO, Inc. and MedPro RRG Risk Retention Group. All insurance products are administered by MedPro Group and underwritten by these and other Berkshire Hathaway affiliates, including National Fire & Marine Insurance Company, all of which have earned financial strength ratings of A++ from A.M. Best. Visit www.medpro.com/affiliates for more information. © 2016 MedPro Group Inc. All Rights Reserved.

## California Surplus Lines Warning Statement

**Notice:**
**1. The insurance policy that you have purchased is being issued by an insurer that is not licensed by the state of California. These companies are called "nonadmitted" or "surplus line" insurers.**

**2. The insurer is not subject to the financial solvency regulation and enforcement that apply to California licensed insurers.**

**3. The insurer does not participate in any of the insurance guarantee funds created by California law. Therefore, these funds will not pay your claims or protect your assets if the insurer becomes insolvent and is unable to make payments as promised.**

**4. The insurer should be licensed either as a foreign insurer in another state in the United States or as a non-United States (alien) insurer. You should ask questions of your insurance agent, broker, or "surplus line" broker or contact the California Department of Insurance at the following toll-free telephone number (800) 927-4357, or internet website www.insurance.ca.gov. Ask whether or not the insurer is licensed as a foreign or non-United States (alien) insurer and for additional information about the insurer. You may also contact the NAIC's internet web site at www.naic.org.**

**5. Foreign insurers should be licensed by a state in the United States and you may contact that state's department of insurance to obtain more information about that insurer.**

**6. For non-United States (alien) insurers, the insurer should be licensed by a country outside of the United States and should be on the NAIC's International Insurers Department (IID) listing of approved nonadmitted non-United States insurers. Ask your agent, broker, or "surplus line" broker to obtain more information about that insurer.**

**7. California maintains a list of approved surplus line insurers. Ask your agent or broker if the insurer is on that list, or view that list at the internet web site of the California Department of Insurance:** www.insurance.ca.gov.

**8. If you, as the applicant, required that the insurance policy you have purchased be bound immediately, either because existing coverage was going to lapse within two business days or because you were required to have coverage within two business days, and you did not receive this disclosure form and a request for your signature until after coverage became effective, you have the right to cancel this policy within five days of receiving this disclosure. If you cancel coverage, the premium will be prorated and any broker's fee charged for this insurance will be returned to you.**

This insurance is issued pursuant to the CA INS § 1760 through CA. INS § 1780, and is placed in an insurer or insurers not holding a Certificate of Authority from or regulated by the California Insurance Commissioner.


MedPro Group
*a Berkshire Hathaway company*

## SENIOR CARE LIABILITY POLICY
## DECLARATIONS

### NOTICE:
**This policy may contain claims-made and reported coverage. Please read this policy carefully.**

**ISSUING COMPANY:** National Fire & Marine Insurance Company, as administered by a MedPro Group company
Omaha, Nebraska

**POLICY NUMBER:** NSC100432

| | | |
|---|---|---|
| ITEM 1 | **FIRST NAMED INSURED:** | Orinda Care Center, LLC |
| | **ADDRESS:** | 107 W Lemon Ave<br>Monrovia, CA 91016 |
| | | ☐ Administrative First Named Insured |
| ITEM 2 | **POLICY PERIOD:** | From 02/15/2020 to 02/15/2021 both days at 12:01 a.m. at the address of the First Named Insured stated herein. |
| ITEM 3 | **COVERAGE PARTS SELECTED:** | |
| | (please refer to the applicable Schedule of Named Insureds for detailed Retroactive Dates, Limits of Liability, Retentions, etc.) | |
| | **Professional Liability:** | Claims-Made and Reported |
| | **General Liability:** | Claims-Made and Reported |
| | **Employee Benefits Liability:** | Claims-Made and Reported |
| | **Cyber Liability and Breach Response:** | Claims-Made and Reported |
| ITEM 4 | **RETROACTIVE DATE:** | |
| | **Professional Liability:** | 02/15/2015 |
| | **General Liability:** | 02/15/2015 |
| | **Employee Benefits Liability:** | 02/15/2015 |
| | **Cyber Liability and Breach Response:** | 02/15/2018 |
| | All days at 12:01 a.m. at the address of the First Named Insured stated herein. | |
| ITEM 5 | **LIMITS OF LIABILITY:** | |
| | **Professional Liability:** | |
| | Per Event Limit | $1,000,000 |
| | Aggregate Limit | $3,000,000 |
| | Claims Expenses | Defense Outside Limits |
| | **General Liability:** | |
| | Per Event Limit | $1,000,000 |
| | General Aggregate Limit | $3,000,000 |
| | Products Completed Operations Hazard Aggregate Limit | $3,000,000 |
| | Personal and Advertising Injury Limit | $1,000,000 Each Person |
| | Damage to Premises Rented to an Insured | $200,000 Any One Premises |

|  | Medical Expense Limit | $5,000 Each Person |
|---|---|---|
|  | Claims Expenses | Defense Outside Limits |

**Employee Benefits Liability:**

|  | | |
|---|---|---|
|  | Employee Benefits Liability Per Event Limit | $1,000,000 |
|  | Employee Benefits Liability Aggregate Limit | $3,000,000 |
|  | Claims Expenses | Defense Outside Limits |

**Cyber Liability and Breach Response:**

|  | | |
|---|---|---|
|  | Coverage A - Multimedia Liability | $100,000 each claim/aggregate |
|  | Coverage B - Security and Privacy Liability | $100,000 each claim/aggregate |
|  | Coverage C - Privacy Regulatory Defense and Penalties | $100,000 each claim/aggregate |
|  | Coverage D - Privacy Breach Response Costs, Customer Notification Expenses, and Customer Support and Credit Monitoring Expenses | $100,000 each claim/aggregate |
|  | Coverage E - Network Asset Protection | $100,000 each claim/aggregate |
|  | Coverage F - Cyber Extortion | $100,000 each claim/aggregate |
|  | Coverage G - Cyber Terrorism | $100,000 each claim/aggregate |
|  | Coverage H - Regulatory Proceeding | $100,000 each claim/aggregate |
|  | Coverage I - Evacuation Expense Reimbursement | $100,000 each claim/aggregate |
|  | Coverage J - Disinfection Expense Reimbursement | $100,000 each claim/aggregate |
|  | Coverage K - Public Relations Expense Reimbursement | $100,000 each claim/aggregate |
|  | Coverage L - E-Discovery Claim Expenses and E-Discovery Regulatory Investigation Expenses | $100,000 each claim/aggregate |
|  | Coverage M - Data Protection Reputational Harm | $100,000 each claim/aggregate |
|  | Aggregate Limit | $100,000 |
|  | Claims Expenses | Defense Within Limits |

| ITEM 6 | **RETENTION:** | |
|---|---|---|
|  | **Professional Liability:** | $50,000 Per Event / $Nil Aggregate |
|  | | Deductible - Loss and Claims Expense |
|  | **General Liability:** | $50,000 Per Event / $Nil Aggregate |
|  | | Deductible - Loss and Claims Expense |
|  | **Employee Benefits Liability:** | $1,000 Per Event / $Nil Aggregate |
|  | | Deductible - Loss Only |
|  | **Cyber Liability and Breach Response:** | $Nil Each Claim Self-Insured Retention |
|  | | 8 hours' Time Retention (Coverages E.2. and G) |
|  | | 180 consecutive days Period of Indemnity (Coverage M) |

| ITEM 7 | **PREMIUM:** | |
|---|---|---|
|  | Policy Premium | $89,915 |
|  | Terrorism Premium (TRIA) | Declined |
|  | Total Premium | $89,915 |
|  | **(Does not include any applicable surplus lines taxes, which must be collected by the producer.)** | |

| ITEM 8 | **FORMS & ENDORSEMENTS:** Refer to attached Schedule of Forms and Endorsements |
|---|---|

 © 2018 MedPro Group. All rights reserved.

| ITEM 9 | **PRODUCER:** | AmWINS Insurance Brokerage of California LLC |
| | **ADDRESS:** | 21550 Oxnard St Ste 1100 |
| | | Woodland Hills, CA 91367 |
| ITEM 10 | **SERVICE OF SUIT:** Service of process in any lawsuit or mandated alternative dispute resolution (ADR) proceeding instituted against the company shall be made upon: General Counsel, National Fire & Marine Insurance Company, 1314 Douglas Street, Omaha, Nebraska 68102-1944.  The General Counsel is authorized and directed to accept service of process on behalf of the company in any suit or ADR proceeding. Further, pursuant to any law which makes provision therefore, the company hereby designates the Superintendent, Commissioner, Director of Insurance, deputy, or department employee specified as attorney or agent for receipt of lawful service of process or ADR proceeding instituted by or on behalf of the insured or any beneficiary within this contract. Additionally, the General Counsel is hereby authorized as the company's designee upon whom the service of process may be served. | |

IN WITNESS WHEREOF, National Fire & Marine Insurance Company has caused this policy to be signed by its President (and countersigned by its duly Authorized Representative, where necessary).

President

Countersigned By: _____   Date: _____



**Issuing Company:**
**National Fire & Marine Insurance Company**
**Omaha, Nebraska**

| | |
|---|---|
| **Forming Part of Policy No.:** | NSC100432 |
| **Issued to:** | Orinda Care Center, LLC |
| **Policy Period:** | From 02/15/2020 to 02/15/2021 at 12:01 a.m. at the address of the First Named Insured stated herein. |

## SCHEDULE OF FORMS AND ENDORSEMENTS

Forms and Endorsements attached to this Policy:

| FORM NAME | FORM NUMBER | ENDORSEMENT NUMBER |
|---|---|---|
| Senior Care Liability Policy - Declarations | 0001-PXS-00-0618 | |
| Schedule of Forms and Endorsements | 0002-PXX-00-1215 | |
| Schedule of Named Insureds - Senior Care | 0004-PXS-00-1215 | |
| Schedule of Named Insureds – Insured Locations-Senior Care | 0005-PXS-00-0317 | |
| Schedule of Trade, Fictitious and/or Business Names | 0009-PXX-00-1215 | |
| Senior Care Liability Policy Common Policy Provisions And Conditions | 0010-PXS-00-1215 | |
| Senior Care Liability Policy Professional Liability Coverage Part | 0011-PPS-00-1215 | |
| Senior Care Liability Policy General Liability Coverage Part | 0012-PGS-00-1215 | |
| Senior Care Liability Policy Cyber Liability And Breach Response Coverage Part | 0013-PCS-00-1215 | |
| Schedule of Additional Insureds Endorsement | 1120-PXX-00-1215 | 1 |
| Disciplinary, Licensing Credentialing Actions Endorsement | 1303-PPX-00-1215 | 2 |
| Employee Benefits Liability Endorsement (General Liability) (Claims-Made and Reported Coverage) | 1504-PGX-00-1215 | 3 |
| Patient's Personal Property Endorsement (General Liability) | 1518-PGX-00-1215 | 4 |
| Crisis Response Costs Endorsement (General Liability) | 1520-PGX-00-1215 | 5 |
| Disease Contamination Clean-Up Expenses Endorsement (General Liability) | 1521-PGS-00-1215 | 6 |
| Emergency Evacuation Expenses Endorsement (General Liability) | 1522-PGX-00-1215 | 7 |
| Media Expenses Endorsement (General Liability) | 1525-PGX-00-1215 | 8 |
| Schedule of Hired and Non-Owned Auto Liability Limited Coverage Endorsement (General Liability) | 1528-PGX-00-0119 | 9 |
| Exclusion of Certified Acts of Terrorism Endorsement (General Liability) | 1537-PGX-00-1215 | 10 |



**Issuing Company:**
**National Fire & Marine Insurance Company**
**Omaha, Nebraska**

| | |
|---|---|
| **Forming Part of Policy No.:** | NSC100432 |
| **Issued to:** | Orinda Care Center, LLC |
| **Policy Period:** | From 02/15/2020 to 02/15/2021 at 12:01 a.m. at the address of the First Named Insured stated herein. |

## SCHEDULE OF NAMED INSUREDS

In consideration of the premium due, and in reliance upon the representations of all **insureds**, the **company** and the **insureds** agree the organizations and persons listed below are designated as **named insureds** and the Retroactive Dates shown on the Declarations are amended as follows, but only with respect to the designated **named insureds**.

| SCHEDULE OF NAMED INSUREDS | | | | | |
|---|---|---|---|---|---|
| NAMED INSURED | ID NUMBER | RETROACTIVE DATE: PROFESSIONAL LIABILITY | RETROACTIVE DATE: GENERAL LIABILITY | RETROACTIVE DATE: CYBER LIABILITY | TERMIN- ATION DATE |
| Orinda Care Center, LLC | 1368708 | 02/15/2015 | 02/15/2015 | 02/15/2018 | |
| Orinda Holdings, LLC | 1398217 | 02/15/2015 | 02/15/2015 | 02/15/2018 | |

**All other terms and conditions of the policy remain unchanged.**



**Issuing Company:**
**National Fire & Marine Insurance Company**
**Omaha, Nebraska**

| | |
|---|---|
| **Forming Part of Policy No.:** | NSC100432 |
| **Issued to:** | Orinda Care Center, LLC |
| **Policy Period:** | From 02/15/2020 to 02/15/2021 at 12:01 a.m. at the address of the First Named Insured stated herein. |

## SCHEDULE OF NAMED INSUREDS — INSURED LOCATIONS

In consideration of the premium due, and in reliance upon the representations of all **insureds**, the **company** and the **insureds** agree the **locations** listed below are provided coverage subject to their Retroactive Dates and Retentions also listed below, notwithstanding any Retroactive Date or Retention listed elsewhere in the policy.

| SCHEDULE OF NAMED INSUREDS - INSURED LOCATIONS | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | RETROACTIVE DATE | | | RETENTION | | |
| LOCATION | ID NUMBER | PROFESSIONAL LIABILITY | GENERAL LIABILITY | CYBER LIABILITY | PROFESSIONAL LIABILITY PER EVENT/ AGGREGATE | GENERAL LIABILITY PER EVENT/ AGGREGATE | TERMINATION DATE |
| 11 Altarinda Rd, Orinda, CA 94563<br><br>Orinda Care Center, LLC<br><br>dba Orinda Care Center | | 02/15/2015 | 02/15/2015 | 02/15/2018 | $50,000/$Nil | $50,000/$Nil | |

**All other terms and conditions of the policy remain unchanged.**

 © 2015 MedPro Group. All rights reserved.



**Issuing Company:**
**National Fire & Marine Insurance Company**
**Omaha, Nebraska**

| | |
|---|---|
| **Forming Part of Policy No.:** | NSC100432 |
| **Issued to:** | Orinda Care Center, LLC |
| **Policy Period:** | From 02/15/2020 to 02/15/2021 at 12:01 a.m. at the address of the First Named Insured stated herein. |

## SCHEDULE OF TRADE, FICTITIOUS AND/OR BUSINESS NAMES

In consideration of the payment of the premium due, and in reliance upon the representations of all **insureds**, the **company** and the **insureds** agree that any trade, fictitious, and/or business name listed in the Schedule of Trade, Fictitious and/or Business Names below and any other trade, fictitious and/or business name by which any **named insured** operates or trades as are by reference included in the coverage afforded to the associated **named insured**. Any such trade, fictitious and/or business name shares the Limits of Liability and any other terms and conditions applicable to the associated **named insured**, regardless of the number of **named insured(s)** scheduled below or on the policy.

| SCHEDULE OF TRADE, FICTITIOUS AND/OR BUSINESS NAMES | | |
|---|---|---|
| NAMED INSURED | ID NUMBER | TRADE, FICTITIOUS OR BUSINESS (D/B/A) NAME |
| Orinda Care Center, LLC | 1368708 | Orinda Care Center |

**All other terms and conditions of the policy remain unchanged.**



**Issuing Company:**
**National Fire & Marine Insurance Company**
**Omaha, Nebraska**

**SENIOR CARE LIABILITY POLICY**

**COMMON POLICY PROVISIONS AND CONDITIONS**

**NOTICE:**

**This policy may contain claims-made and reported coverage. Please read this policy carefully.**

In consideration of the payment of the premium due, and in reliance upon the representations of all **insureds**, the **company** and all **insureds** agree as follows, subject to the terms and conditions of this policy, including the applicable Limits of Liability:

**I.** **DEFINITIONS**

These definitions apply to all Coverage Parts:

A. **Additional insured** means any person or organization listed on a Schedule of Additional Insureds.

B. **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about any **named insured's** goods, products, or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   1. notices that are published include material placed on the internet or on similar electronic means of communication; and

   2. regarding websites, only that part of a website that is about any **named insured's** goods, products, or services for the purposes of attracting customers or supporters is considered an **advertisement**.

C. **Authorized insured** means any **insured** authorized by the **first named insured** to give notice of a **claim** or **potential claim** to the **company**.

D. **Automobile** or **auto** means:

   1. any land motor vehicle, trailer or semi-trailer, including any attached machinery and equipment, designed for use on public roads; or

   2. any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, **automobile** or **auto** does not include **mobile equipment**.

E. **Bodily injury** means any damage to the human body, including sickness or disease and any mental injury, shock, emotional distress, or death arising therefrom. In addition, it includes damages claimed for the cost of any care, loss of services, or loss of consortium arising therefrom.

F. **Case management** means identifying patients with specific health care needs and developing a plan to ensure an efficient use of resources to achieve the best outcome.

G. **Claim** means an express, written demand upon an **insured** for money or services as compensation for damages, including a suit. As used in this definition, "suit" means a civil proceeding in which damages to which this insurance applies are alleged. Suit also includes an arbitration or other alternative dispute resolution proceeding in which such damages are claimed and to which an **insured** must submit or does submit with the **company's** consent. However, this definition does not apply to coverage provided under the Cyber Liability and Breach Response Coverage Part.

H. **Claims expense** means all costs and expenses incurred in connection with the investigation, adjustment, and defense of any **claim** or **potential claim**. Such costs and expenses:

   1. shall only include:

© 2015 MedPro Group. All rights reserved.

    a.   attorneys' fees paid to the law firm selected to defend an **insured**;

    b.   court costs;

    c.   expert fees;

    d.   reporter fees;

    e.   the cost of any alternative dispute resolution ordered by a court, otherwise required by law, or pre-approved by the **company**;

    f.   post-judgment interest on that portion of the judgment that does not exceed the Limit of Liability available under the particular coverage provided; and

    g.   such other costs and expenses that the **company** determines to be reasonably related to the defense of a **claim** or **potential claim**.

2.  shall not include:

    a.   **loss**;

    b.   attorneys' fees awarded to a claimant;

    c.   the salary of any **employee** of an **insured**; or

    d.   the forgiveness of any amounts owed for the cost of care or services rendered by an **insured**.

However, this definition does not apply to coverage provided under the Cyber Liability and Breach Response Coverage Part.

I.  **Company** means the Issuing Company shown on the Declarations.

J.  **Employee** means any person who receives a W-2 or 1099 IRS tax form from any **named insured** that is an organization, and who was acting within the scope of his or her duties on behalf of that **named insured** at the time of the **event**, offense, **health care event** or any other act or omission that results in a **claim** or **potential claim** that is otherwise covered under this policy. **Employee** also includes any leased worker, temporary worker or volunteer so long as such person is or was acting within the scope of his or her duties on behalf of a **named insured** that is an organization.

As used in this definition:

1.  "leased worker" means a person leased to, or used by, a **named insured** that is an organization through a labor leasing firm or a locum tenens or staffing organization under an agreement between a **named insured** and the labor leasing firm, or locum tenens or staffing organization, to perform duties related to the conduct of that **named insured's** business. Leased worker does not include a temporary worker;

2.  "temporary worker" means a person who is furnished to a **named insured** that is an organization to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload conditions. A temporary worker does not include a leased worker; and

3.  "volunteer" means a person who provides his or her services or labor to a **named insured** that is an organization, without being paid by that **named insured**, under the supervision or direction of the **named insured**. Volunteer does not include any independent contractor or staff physician.

However, only with respect to the coverage provided under the Professional Liability Coverage Part, **employee** does not mean any physician, surgeon, podiatrist, chiropractor, dentist, certified registered nurse anesthetist, midwife, resident or intern.

Additionally, this definition does not apply to coverage provided under the Cyber Liability and Breach Response Coverage Part.

K.  **Event** means an accident. All injuries arising out of, or in connection with:

1.  the same or related acts or omissions; or

2.  the continuous or repeated exposure to substantially the same harmful conditions;

will be considered one **event**. For the purposes of this definition, all injuries to a mother and fetus (or fetuses) from conception through delivery shall constitute one **event**.

 © 2015 MedPro Group. All rights reserved.

L.  **Extended reporting period** means the period of time after the cancellation or nonrenewal of any Coverage Part shown on the Declarations or any endorsement as "Claims-Made and Reported" during which an **insured** may report a **claim** or **potential claim**.

M.  **First named insured** means the person or organization shown as the First Named Insured on the Declarations.

N.  **Health care event** means any **event** in the rendering of, or failure to render, **professional services** that results in injury. All injuries arising out of, or in connection with, the same or related acts or omissions in furnishing **professional services** shall be considered one **health care event**.

O.  **Impaired property** means tangible property, other than the **insured's product** or the **insured's work**, which cannot be used or becomes less useful because:

1.  it incorporates the **insured's product** or **insured's work** that is known or thought to be defective, deficient, inadequate, or dangerous; or

2.  an **insured** has failed to fulfill the terms of a contract or agreement if such property can be restored to use by:

    a.  the repair, replacement, adjustment, or removal of the **insured's product** or **insured's work**; or

    b.  an **insured's** fulfillment of the terms of the contract.

P.  **Insured** means:

1.  the **first named insured**;

2.  any **named insured**;

3.  any **employee**;

4.  any administrator, partner, superintendent, director, officer, member, trustee, stockholder, medical director, department head or head of the medical staff, student, board or committee member or staff member, but only to the extent that he or she is acting within the scope of his or her duties on behalf of any **named insured**. As used to define **insured**, student means an unlicensed person, other than a resident, enrolled in a licensed or accredited training program operated by any **named insured** that is an organization relative to the delivery of **professional services**;

5.  any spouse or domestic partner of any individual **insured**, but only with respect to the conduct of the business of a **named insured** that is an organization. As used in this definition, "domestic partner" means any person qualifying as such under any federal, state or local laws or under a **named insured's** employee benefit plans or employee benefits program;

6.  any organization formed or acquired by a **named insured** that is an organization during the **policy period**, over which that **named insured** maintains at least majority ownership; however, coverage under this subparagraph is afforded only:

    a.  after the **company** has received an application, and has agreed in writing to add the newly formed or acquired organization to the policy as an **insured**;

    b.  for a **loss**, **event**, offense, **health care event**, **bodily injury**, **property damage** or **personal and advertising injury** or other **claim** or **potential claim** otherwise covered by this policy that occurred after the organization was formed or acquired by the **named insured**; and

    c.  unless otherwise stated on a Schedule of Named Insureds, the newly formed or acquired organization will share Limits of Liability with the **named insured** that formed or acquired that newly formed or acquired organization;

7.  the estate, heirs, executors, administrators, assigns and legal representatives of an **insured** in the event of such **insured's** death, incapacity, insolvency or bankruptcy, but only to the extent that such **insured** would have been provided coverage under this policy; or

8.  any organization, or any person other than an **employee**, while acting as a **named insured's** real estate manager.

Q.  **Insured contract** means:

1.  a contract for a lease of premises, except for that portion of the contract for a lease of premises that indemnifies

 © 2015 MedPro Group. All rights reserved.

any person or organization for damage by fire to premises while rented to an **insured** or temporarily occupied by an **insured** with permission of the owner;

2.  an agreement between a railroad and an **insured** under which the **insured** will hold the railroad harmless for certain liability arising out of the use of a sidetrack;

3.  any easement or license agreement, except in connection with construction or demolition operations on, or within 50 feet of, a railroad;

4.  an obligation, as required by ordinance, law or regulation, to indemnify a municipality, except in connection with work for a municipality; or

5.  any agreement to maintain an elevator;

6.  any provision in any other contract or agreement pertaining to an **insured's** business (including an indemnification of a municipality in connection with work performed for a municipality) under which an **insured** assumes the tort liability of another party to pay for **bodily injury** or **property damage** to a third person or organization. As used in this definition, "tort liability" means a liability that would be imposed by law in the absence of any contract or agreement. This does not include any provision:

    a.  that indemnifies a railroad for **bodily injury** or **property damage** arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

    b.  that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        (1)  preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        (2)  giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    c.  under which the **insured**, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the **insured's** rendering or failure to render professional services, including those listed in b. above and supervisory, inspection, architectural or engineering activities.

R.  **Insured's product**

1.  means:

    a.  any goods or products, other than real property, manufactured, sold, handled, distributed, or disposed of by:

        (1)  a **named insured**;

        (2)  others trading under a **named insured's** name; or

        (3)  a person or organization whose business or assets a **named insured** has acquired.

    b.  containers (other than vehicles), materials, parts, or equipment furnished in connection with such goods or products.

2.  includes:

    a.  warranties or representations made at any time with regard to the fitness, quality, durability, performance, or use of the goods or the **insured's products**; or

    b.  the providing of, or the failure to provide, warnings or instructions.

3.  does not include:

    a.  vending machines; or

    b.  other property rented to, or located for, the use of others, but not sold to others by a **named insured**.

S.  **Insured's work**

1.  means:

    a.  work or operations performed by, or on behalf of, a **named insured**; or

 © 2015 MedPro Group. All rights reserved.

      b.   materials, parts, or equipment furnished in connection with such work or operations.

  2.   includes:

      a.   warranties or representations made at any time with regard to the fitness, quality, durability, performance, or use of the work or operations; or

      b.   the providing of, or the failure to provide, warnings or instructions.

T.  **Loading or unloading** means the handling of property:

  1.   after it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft, or **auto**;

  2.   while it is in or on an aircraft, watercraft, or **auto**; or

  3.   while it is being moved from an aircraft, watercraft, or **auto** to the place where it is finally delivered.

It does not include the movement of property by means of a mechanical device, other than a hand truck, which is not attached to the aircraft, watercraft, or **auto**.

U.  **Location** means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

V.  **Loss**

  1.   Means civil damages, including prejudgment interest, which an **insured** becomes legally obligated to pay through adjudication or settlement.

  2.   Does not include:

      a.   any damages that are greater than any applicable Limit of Liability;

      b.   any injunctive or other equitable relief;

      c.   **claims expense**;

      d.   attorneys' fees awarded to a claimant as a fine, penalty, or sanction based upon any **insured's** misconduct; however, attorneys' fees awarded as a part of the claimant's damages in a covered **claim** for any other purpose will be included as **loss**;

      e.   the salary of any **employee**; or

      f.   the forgiveness of any amounts owed for the cost of care or services rendered by an **insured**.

W.  **Managed care services** means services provided to manage and/or administer a health care plan. As used in this definition "health care plan" means a medical benefits plan administered by a health maintenance organization, preferred provider organization, or other similar organization which provides, or arranges to provide, healthcare services to members under a written contract or agreement. These services can include any of the following acts provided on behalf of the health care plan:

  1.   the creation, sale, and marketing of a health care plan;

  2.   the selection, credentialing, and contracting of health care providers;

  3.   the evaluation of the cost, quality and proper utilization of treatment options available or being provided to participants;

  4.   the adjustment, investigation, and processing of claims for benefits; or

  5.   **case management**.

However, **managed care services** do not include **treatment** rendered, or which should have been rendered, to a patient.

X.  **Medical expenses** means the reasonable cost of necessary:

  1.   first aid administered at the time of the accident;

  2.   medical, surgical, diagnostic, and dental services;

  3.   prosthetic devices; and

          © 2015 MedPro Group. All rights reserved.

4.   ambulance, hospital, professional nursing, and funeral services.

Y.   **Mobile equipment**

1.   Means any of the following types of land vehicles, including any attached machinery or equipment:

a.   bulldozers, farm machinery, forklifts, and other vehicles designed for use principally off public roads;

b.   vehicles maintained for use only on, or next to, premises owned or rented by a **named insured**;

c.   vehicles that travel on crawler treads;

d.   vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1)   power cranes, shovels, loaders, diggers, or drills; or

(2)   road construction or resurfacing equipment, such as graders, scrapers, or rollers;

e.   vehicles not described in subparagraphs 1.a, b, c, or d above, that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1)   air compressors, pumps, and generators, including spraying welding, building cleaning, geophysical exploration, lighting, and well-servicing equipment; or

(2)   cherry pickers and similar devices used to raise or lower workers; or

f.   vehicles not described in subparagraphs 1.a, b, c, or d above, maintained primarily for purposes other than the transportation of persons or cargo.

2.   Does not include self-propelled vehicles with the following types of permanently attached equipment, but will be considered **autos**:

a.   equipment designed primarily for:

(1)   snow removal,

(2)   road maintenance (but not construction or resurfacing); or

(3)   street cleaning;

b.   cherry pickers and similar devices mounted on car or truck chassis and used to raise or lower workers; and

c.   air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well-servicing equipment.

3.   Does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered **autos**.

Z.   **Named insured** means any of the following, but only if listed by name on a Schedule of Named Insureds:

1.   any organization, including any corporations, partnerships or joint ventures;

2.   any individual person, but only to the extent that such person was acting in the course and scope of his or her duties of employment with the **first named insured** or another **named insured**; or

3.   a **location**.

AA. **Personal and advertising injury** means injury, including consequential **bodily injury**, arising from one or more of the following offenses:

1.   false arrest, detention, or imprisonment;

2.   malicious prosecution;

3.   the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor;

4.   oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

5.   oral or written publication, in any manner, of material that violates a person's right of privacy; or the use of

another's advertising idea in the **insured's advertisement**.

BB. **Pollutants** means any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electrical, or magnetic irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleum, chemicals or waste. As used in this definition, "waste" means medical waste, biological infectants, and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed.

CC. **Policy period** means the period of time shown on the Declarations as the Policy Period. However, if the policy is terminated before the later of the dates shown on the Declarations, **policy period** means the period between the first date shown on the Declarations and the date the policy was terminated.

DD. **Potential claim** means an **event**, including an incident arising from, or in connection with, that **event**, which an **insured** knows or reasonably should know is likely to result in a **claim**.

EE. **Products completed operations hazard**

1. Means all **bodily injury** and **property damage** occurring away from any premises an **insured** owns or rents, and arising out of the **insured's product** or **insured's work** except:

   a. products that are still in the physical possession of an **insured**; or

   b. work that has not yet been completed or has been abandoned. However, the **insured's work** will be deemed completed at the earliest of the following times:

      (1) when all of the work called for in the **insured's** contract has been completed;

      (2) when all of the work to be done at the job site has been completed if the contract calls for work at more than one job site; or

      (3) when that part of the work at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be deemed completed.

2. Does not include **bodily injury** or **property damage** arising out of, or in connection with:

   a. the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by an **insured** and that condition was created by the **loading or unloading** of the vehicle by an **insured**;

   b. the existence of tools, uninstalled equipment, or abandoned or unused materials; or

   c. products or operations for which the classification, shown on the Declarations or in a policy schedule, states that **products completed operations hazard** is subject to the General Aggregate Limit.

FF. **Professional services** means **treatment**, administrative services, beautician's and barber's services, pastoral counseling services, peer review and utilization management not involving **managed care services**. As used in this definition:

1. "administrative services" means the planning, organizing, controlling or directing of the operations of an **insured**;

2. "beautician's and barber's services" means the provision of grooming services to a **resident** by a licensed beautician or barber in his or her capacity as such, who is not employed by the **insured**, but who is invited to perform such services by the **insured** at a location operated by an **insured**;

3. "pastoral counseling services" means the provision of advice, guidance or other counseling sessions, without compensation, by an ordained member of the clergy;

4. "peer review" means the evaluation of a health care provider's fitness and qualification to provide **treatment** by a professional review board or committee through formally adopted, written procedures for the purposes of granting, determining or revoking clinical staff privileges at a hospital, clinic or other medical facility that is a **named insured**, and which results in a patient alleging damages arising from a **health care event**; and

5. "utilization management" means the process of evaluating **treatment** to a patient for its appropriateness or necessity which results in a patient alleging damages arising from a **health care event**. In clarification and not in limitation of the foregoing, utilization management will include prospective review of proposed

**treatment**, concurrent review of **treatment**, retrospective review of already rendered **treatment**, disease management, **case management**, and the use of predictive modeling to identify individuals or populations for disease management or **case management**.

GG. **Property damage** means:

1. physical injury to tangible property, including any resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **event** that caused it.

However, this definition does not apply to coverage provided under the Cyber Liability and Breach Response Coverage Part.

HH. **Resident** means a person who lives or resides at a long-term care facility or other residential healthcare facility listed by name on a Schedule of Named Insureds.

II. **Residents' rights** means any right granted to a **resident** under the Nursing Home Quality Reform Act of 1987, any federal regulations promulgated pursuant to such law, including 42 C.F.R. 483.10, or any similar state law or regulation regulating long-term care facilities or residential healthcare facilities.

JJ. **Superbug contamination** means the actual contamination of an **insured's** location with methicillin-resistant staphylococcus aureus, vancomycin intermediate sensitive staphylococcus aureus or vancomycin-resistant enterococcus. **Superbug contamination** does not include any contamination as a result of **pollutants**, war, an act of terrorism or a certified act of terrorism.

KK. **Treatment** means:

1. medical, surgical, dental, mental health, or nursing services, including those rendered in connection with a clinical trial. This shall also include first aid rendered at the scene of an accident without expectation of monetary compensation, unless such accident occurred on the premises;

2. the provision of medical examinations, opinions, or consultations regarding a person's medical condition within an **insured's** practice as a licensed health care provider;

3. the provision of home health, hospice, rehabilitation or social services and adult day care and home-based community operations, including a Program of All-inclusive Care for the Elderly (PACE), or any services related to the provision, or protection of **residents' rights**, provided such **insured** is licensed, trained and qualified to perform such services in the jurisdiction in which such **professional services** were rendered.

4. postmortem handling of bodies, including autopsies, organ donation or harvesting or other procedures; or

5. the furnishing of any of the following, but only as it relates to the rendering of medical, surgical, dental, or nursing services:

   a. food and beverages;

   b. blood, blood products, medications, supplies, equipment, or appliances; or

   c. counseling or other social services.

As used in this definition, "clinical trial" means a structured study with predetermined protocols approved by an institutional review board, an independent ethics committee, an ethical review board or a research ethics board which has been formally designated to approve, monitor, and review research involving humans in order to develop effectiveness or safety data or treatment plans, pharmaceutical products or medical devices.


## II. DEFENSE AND SUPPLEMENTAL PAYMENTS

These provisions apply to all Coverage Parts:

A. DEFENSE

The **company** will have the exclusive right and duty to defend any **claim** or **potential claim** against an **insured** to which this policy applies, subject to the timely payment of any applicable Deductible or Self-Insured Retention. However, the **company** has no duty to:

1. defend an **insured** until any applicable Self-Insured Retention has been exhausted by the payment of **loss** or **claims expense**;

2. defend an **insured** after the applicable Limits of Liability have been exhausted by the payment of **loss** or **claims expense**;

3. appeal any judgment; however, the **company** may appeal any judgment as it deems expedient; or

4. pay any **claims expense** incurred by an attorney not retained or approved by the **company**, in writing, to represent the **insured**.

Upon the exhaustion of the applicable Limit of Liability provided under this policy, the **insured** shall become responsible for all further **claims expense** arising from any **claim** or **potential claim** and the **company** has the right to withdraw from the further defense of such **claim** or **potential claim** by tendering such defense to the **insured**. If the **insured** cannot come to an agreement with the attorney assigned by the **company** regarding the payment of future fees and costs, the **insured** shall take all steps necessary to allow the attorney to withdraw from the matter.

B. SUPPLEMENTAL PAYMENTS

The **company** shall also pay, in addition to the Limits of Liability:

1. the premium on any bond required to proceed with an appeal approved by the **company** or to release attachments to an **insured's** property; however, the face value of the bond may not exceed the applicable Limit of Liability or the total **loss** payable under the policy, whichever is less; in addition, the **company** has no duty to apply for or furnish any such bond; and

2. reimbursement of reasonable expenses incurred by an **insured** at the **company's** request to assist in the investigation and defense of a **claim** or **potential claim**; payment for actual loss of earnings shall not exceed $500 for each day an individual **insured** is required to attend hearings, trials, or an **insured's** own deposition.

C. DEFENSE OUTSIDE THE LIMITS/WITHIN THE LIMITS SHOWN ON DECLARATIONS

The **company's** duty to defend shall also include a duty to pay **claims expenses** either:

1. in addition to the applicable Limits of Liability such that payment of **claims expenses** and other supplemental payments will not reduce or exhaust the applicable Limits of Liability, if shown on the Declarations as "Defense Outside Limits;" or

2. as part of the applicable Limits of Liability such that payment of **claims expenses** and other supplemental payments reduce and can exhaust the applicable Limits of Liability, if shown on the Declarations as "Defense Within Limits."

## III. EXCLUSIONS

The coverage provided under any Coverage Part of this policy does not apply to:

A. ADA

Any **claim** or **potential claim** arising out of, or in connection with, an **insured's** duty to comply with the Americans with Disabilities Act of 1990 (ADA). This also includes any amendment or regulation that applies thereto or any comparable federal, state, or local law.  This exclusion does not apply to any such **claim** or **potential claim** that is based on an **insured's** alleged negligence in the rendering of or failure to render **professional services**.

B. ANTITRUST

Any **claim** or **potential claim** arising out of, or in connection with, an **insured's** antitrust activity, except to the extent such **claim** or **potential claim** arises out of any **insured's** alleged rendering of, or failure to render, **professional services**. As used in this exclusion, "antitrust activity" means any actual or alleged price fixing, restraint of trade, price discrimination, predatory pricing, monopolization, unfair business practices, or violation of common law or the Federal Trade Commission Act of 1914, the Sherman Antitrust Act of 1890, the Clayton Act of 1914, any similar federal, state, or local antitrust statute or law, or any rule or regulation promulgated under the Act, statute, or law.

C. BUSINESS PRACTICES

 © 2015 MedPro Group. All rights reserved.

Any **claim** or **potential claim** arising out of, or in connection with, an **insured's** billing practices or advertising activities. However, this exclusion does not apply to the coverage provided under the Personal and Advertising Injury Liability Insuring Clause.

D.   CLAIM OR POTENTIAL CLAIM REPORTED OR DISCOVERED PRIOR TO THE POLICY PERIOD

Only with respect to any Coverage Part shown on the Declarations as "Claims-Made and Reported":

1.   any **claim** or **potential claim** which has or which should have been reported to any insurer, including through any self-insured or captive program, prior to the **policy period**; and

2.   any **potential claim** that was first known about or discovered, or should reasonably have been known about or discovered by, an **authorized insured** prior to the **policy period**.

E.   CRIMINAL ACTS

Any **claim** or **potential claim** arising out of, or in connection with, any criminal act committed by, or at the direction of, the **insured**.

F.   DEFAULT JUDGMENT AND FAILURE TO COOPERATE

Any **claim** or **potential claim** that the **company** was unable to timely investigate or defend due to the acts or omissions of any **insured**, including any resulting damages from a default judgment.

G.   DISCRIMINATION

Any **claim** or **potential claim** arising out of, or in connection with, the violation of any statute, law, ordinance or regulation prohibiting discrimination or humiliation because of race, creed, color, national origin, religion, age, gender or any other protected class as defined by statute, law, ordinance or regulation.

H.   ECONOMIC SANCTIONS EXCLUSION

Whenever coverage provided by this policy would be in violation of any U.S. economic trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control, such coverage shall be null and void. Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any **claim** or **potential claim** that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

I.   EMPLOYEE BENEFITS LIABILITY

Any **claim** or **potential claim** arising out of, or in connection with, any group benefits administered on behalf of a **named insured's employees**, including:

1.   group insurance plans or programs, such as life, health, accident, dental, or legal advice;

2.   individual retirement accounts, salary reduction plans under I.R.S. Code 401(k), or any amendment thereto, savings plans, or employee stock subscription plans;

3.   travel or vacation plans; or

4.   workers' compensation, occupational disease, unemployment, Social Security, or disability benefits insurance.

J.   EMPLOYER'S LIABILITY

Any **claim** or **potential claim** arising out of, or in connection with, **bodily injury** to:

1.   an **employee** of a **named insured** arising out of, or in connection with, and in the course of:

   a.   employment by that **named insured**; or

   b.   performing duties related to the conduct of that **named insured's** business; or

2.   the spouse, child, parent, brother, or sister of that **employee** as a consequence of subparagraph 1 above.

This exclusion shall apply whether a **named insured** may be held liable as an employer, or in any other capacity, and to any obligation to share damages with, or repay someone else who must pay damages, because of the injury. This exclusion does not apply to liability assumed by an **insured** under an **insured contract**.

K.   EMPLOYMENT PRACTICES

Any **claim** or **potential claim** brought by an **employee**, or applicant for employment, which alleges an **insured**:

1. breached an actual or implied contract of employment;

2. violated an anti-discrimination statute;

3. engaged in any form of harassment;

4. engaged in libel or slander related to an employment relationship;

5. retaliated for the exercise of a public right or duty;

6. engaged in intentional or negligent infliction of emotional distress arising out of, or in connection with, an employment relationship;

7. wrongfully failed to hire, promote, or grant tenure;

8. wrongfully demoted; or

9. wrongfully terminated employment.

L. ERISA

Any **claim** or **potential claim** seeking to impose liability under the Employee Retirement Income Security Act of 1974 (ERISA), or any amendment or regulation that applies thereto.

M. FRAUDULENT CLAIMS

Any **claim** or **potential claim** made by an **insured** who knows that the **claim** or **potential claim** is false or fraudulent, as regards to amount or otherwise; additionally, this policy shall become void and all **claims** and **potential claims** hereunder shall be forfeited.

N. GOVERNMENTAL IMMUNITY AND OTHER PROTECTIONS

Any **claim** or **potential claim** for which an **insured** has:

1. immunity as a volunteer or as an employee or contractor of a federal, state, or local government; or

2. immunity, insurance, indemnity, or any other protection pursuant to any federal, state, or local laws, including but not limited to the Federal Tort Claims Act.

O. INJUNCTIVE RELIEF, TAXES, FINES AND PENALTIES

Any **claim** or **potential claim** or other matter seeking:

1. injunctive relief;

2. any relief other than **loss**; or

3. the award of taxes, fines, penalties, or sanctions.

P. INSURED VERSUS INSURED

Any **claim** or **potential claim** initiated, alleged, or caused to be brought about, by any **insured** covered by this policy against any other **insured** covered by this policy. This exclusion does not apply if the **claim** or **potential claim** arises out of an **insured** providing **professional services** to another **insured**.

Q. MANAGED CARE SERVICES

Any **claim** or **potential claim** arising out of, or in connection with, any **managed care services**.

R. MEDICARE OR MEDICAID

Any **claim** or **potential claim** arising out of, or in connection with, any Medicare/Medicaid Claim. As used in this exclusion, a "Medicare/Medicaid Claim" means a claim based on or arising out of, or in connection with, any actual or alleged violation of law, regulation or rule with respect to Medicare, Medicaid, Tricare or any similar federal, state or local governmental program.

S. MULTI-POLICY AND ANTI-STACKING

If more than one policy, Coverage Part or Insuring Clause applies, the following multi-policy and anti-stacking exclusions apply:

1. if more than one policy issued by the **company** or by a past, present or future parent, subsidiary or affiliate

 © 2015 MedPro Group. All rights reserved.

applies to the liability of an **insured**, the **company's** duty to pay for a **loss** will be confined to the policy containing the largest applicable Limit of Liability; or

2.  if more than one Coverage Part or Insuring Clause under this policy applies to the liability of an **insured**, the **company's** duty to pay **loss** will be confined to the Coverage Part or Insuring Clause containing the largest applicable Limit of Liability.

T.  NUCLEAR ENERGY LIABILITY

Any **claim** or **potential claim**:

1.  for which an **insured** has coverage under a nuclear energy liability policy issued by the:

    a.  Nuclear Energy Liability Insurance Association;

    b.  Mutual Atomic Energy Liability Underwriters;

    c.  Nuclear Insurance Association of Canada; or

    d.  any successor or assign of the entities set forth in the subparagraphs above.

    This policy also does not apply if such coverage did exist, but was terminated by the exhaustion of the **insured's** limit of liability.

2.  resulting from the hazardous properties of nuclear material for which an **insured**:

    a.  was required to maintain financial protection under the Atomic Energy Act of 1954 or any amendment or regulation that applies thereto; or

    b.  was entitled to indemnity by the United States government or any agency thereof or would have been entitled to had this policy not been issued.

U.  OWNERSHIP OR MANAGEMENT OF NON-INSURED ENTITIES

Any **claim** or **potential claim** arising out of, or in connection with, the acts or omissions of any organization, partnership, joint venture, or other business enterprise that is not a **named insured**, but which is owned, managed or supervised by an **insured**. However, this exclusion does not apply to an organization defined as an **insured**.

V.  RICO

Any **claim** or **potential claim** arising out of, or in connection with, an **insured's** violation of the Racketeer Influenced Corrupt Organizations Act (RICO), or any comparable federal, state or local laws or any amendment or regulation that applies thereto.

W.  WAR

Any **claim** or **potential claim** arising out of, or in connection with:

1.  war, including undeclared or civil war;

2.  warlike action by a military force, including action in hindering or defending against an actual or expected attack by any governmental, sovereign, or other authority using military personnel or other agents; or

3.  insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

X.  WORKERS' COMPENSATION AND OTHER SIMILAR LAWS

Any **claim** or **potential claim** arising out of, or in connection with, any obligation or damages arising under any law related to:

1.  workers' compensation;

2.  occupational disease;

3.  unemployment compensation;

4.  disability benefits; or

5.  other similar law that provides for scheduled benefits as a result of an injury or disease.

The exclusions for "EMPLOYMENT PRACTICES," "EMPLOYER'S LIABILITY," "WAR" and "WORKER'S COMPENSATION

AND OTHER SIMILAR LAWS" do not apply to damage by fire to premises while rented to an **insured** or temporarily occupied by an **insured** with the permission of its owner. Only with respect to the coverage provided under the General Liability Coverage Part, a separate limit of liability applies to Damage to Premises Rented to an Insured as described in the Limits of Liability.

## IV. **DEDUCTIBLES AND RETENTIONS**

These provisions apply to all Coverage Parts:

A.   LOSS AND CLAIMS EXPENSE

If a Deductible or Self-Insured Retention is shown on the Declarations, and is designated as "Loss and Claims Expense," it is agreed and understood that the **company's** duty to pay **loss** and **claims expense** for any **claim** or **potential claim** thereunder will be limited in the following manner:

1.   the **company** shall have a duty to pay **loss** and **claims expense** only in excess of the Deductible or Self-Insured Retention. The Deductible or Self-Insured Retention shall be applied to **claims expense** first, then to **loss**;

2.   the **first named insured** shall have a duty to pay all **loss** and **claims expense** up to the amount of the Deductible or Self-Insured Retention, payment of which shall not be unreasonably withheld;

3.   unless prohibited by law, the **company** has complete discretion to pay the entire **loss** and **claims expense** and seek reimbursement from the **first named insured** for the Deductible or Self-Insured Retention. If this occurs, the **first named insured** shall reimburse the **company** within 30 days of the **company's** payment of the Deductible or Self-Insured Retention amount;

4.   the applicable Limits of Liability shall be reduced by the amount of the Deductible payable as **loss** and **claims expense** for such **claims** or **potential claims**. The applicable Limits of Liability shall not be reduced by the amount of the Self-Insured Retention;

5.   if a Deductible or Self-Insured Retention is shown on the Declarations, the Deductible or Self-Insured Retention shall apply to all **loss** and **claims expense** arising from a single **event**, **health care event**, offense or other covered incident, regardless of the number of **insureds** found liable for the **loss** and/or **claims expense**; and

6.   if a Retention Aggregate is shown on the Declarations, the **first named insured's** duty to pay **loss**, regardless of the number of **claims** or **potential claims** made, shall not exceed the Retention Aggregate.

B.   LOSS ONLY

If a Deductible is shown on the Declarations, and is designated as "Loss Only," it is agreed and understood that the **company's** duty to pay **loss** for any **claim** or **potential claim** thereunder will be limited in the following manner:

1.   the **company** shall have a duty to pay only **loss** in excess of the Deductible;

2.   the **first named insured** shall have a duty to pay all **loss** up to the amount of the applicable Deductible, payment of which shall not be unreasonably withheld;

3.   unless prohibited by law, the **company** has complete discretion to pay the entire **loss** and seek reimbursement from the **first named insured** for the Deductible. If this occurs, the **first named insured** shall reimburse the **company** within 30 days of the **company's** payment of the Deductible amount;

4.   the applicable Limits of Liability shall be reduced by the amount of the Deductible payable as **loss** for such **claims** or **potential claims**;

5.   if a Deductible is shown on the Declarations, the Deductible shall apply to all **loss** arising from a single **event**, **health care event**, offense or other covered incident, regardless of the number of **insureds** found liable for the **loss**; and

6.   if a Retention Aggregate is shown on the Declarations, the **first named insured's** duty to pay **loss**, regardless of the number of **claims** or **potential claims** made, shall not exceed the Retention Aggregate.

If more than one Deductible or Self-Insured Retention applies to a **claim** or **potential claim**, the **first named insured's** duty to pay all applicable **loss** and/or **claims expense** will be limited to the largest such Deductible or Self-

Insured Retention.

## V. **CONDITIONS**

These conditions apply to all Coverage Parts:

A. ACTION AGAINST THE COMPANY

1. No action shall lie against the **company** unless each **insured** is in full compliance with all of the terms of this policy.

2. No person shall have the right to join the **company** as a party to a **claim** to determine an **insured's** liability under this policy. Further, an **insured** shall not interplead the **company** into a **claim**.

3. No action shall lie against the **company** until the amount of **loss** has been finally determined by entry of judgment or written agreement between the **insured**, the claimant, and the **company**. Once the amount of **loss** has been finally determined, the claimant shall be entitled to recover under the terms of this policy.

B. ARBITRATION

1. The **company** and the **insureds** agree that in any dispute, **claim**, **potential claim** or controversy arising out of, relating to, or in connection with this policy, whether brought by or on behalf of an **insured**, the **company**, or any other party, the **company** may elect to submit any such dispute, **claim**, **potential claim** or controversy to binding arbitration, in accordance with Title 9 USC Sec. 1 et seq. (the Federal Arbitration Act) and shall be governed by the Commercial Arbitration Rules of the American Arbitration Association.

2. The arbitration shall be presided over by three arbitrators chosen from the Commercial Insurance Panel of the American Arbitration Association. The arbitrators shall be governed by the law of the state of the address of the **first named insured**, as shown on the Declarations. The arbitration shall take place in the county that the capital of that state is located.

3. The arbitrators shall have the discretion to order pre-arbitration discovery, including an exchange of documents and deposition of potential witnesses. Each party shall bear its own arbitration costs and expenses including attorneys' fees, unless otherwise provided by law.

4. Any arbitration award shall be in writing and shall specify the factual and legal bases of the award. Judgment on the award rendered by the arbitrator shall be final and may be entered in any court having jurisdiction thereof. Furthermore, this arbitration provision shall be a complete defense to any suit, action or proceeding in any federal, state or local court or before any administrative tribunal with respect to any dispute, **claim**, **potential claim** or controversy arising out of, relating to or in connection with this policy.

C. ASSISTANCE AND COOPERATION

1. After any **claim** is made, or any **potential claim** is first discovered, the **insured** shall not contract any expense, voluntarily assume any liability in any situation, nor make or contract any settlement of the **claim** or **potential claim**, except at the **insured's** own cost and responsibility, without the written authorization of the **company**.

2. The **company's** duty to defend and pay **loss** for any **claim** or **potential claim** otherwise covered under this policy is strictly conditioned upon all **insureds'** cooperation with the **company** in the investigation, defense, and/or settlement of any matter to which this policy applies. Such cooperation shall include, but is not limited to:

   a. attendance at any deposition, hearing, or trial, as requested by the **company**;

   b. assistance in securing and giving evidence;

   c. obtaining the attendance of witnesses;

   d. doing nothing to prejudice the **company's** ability to investigate, defend, and/or manage any matter to which this policy applies;

   e. submitting to recorded and/or sworn statements and to examinations under oath as requested by the **company**; and

   f. promptly producing, at the **company's** request, any records, documents and other information in an

© 2015 MedPro Group. All rights reserved.

**insured's** possession, custody or control.

3. If a **claim** or **potential claim** is, or might be, covered under any other policy of insurance, the **insured** shall promptly give notice to such other insurers. The **insured** shall also provide the **company** with copies of the applicable policies. The **insured** shall further act in good faith to enforce any rights held under such policies, including the right to a defense.

D.  BANKRUPTCY OR INSOLVENCY

The bankruptcy or insolvency of an **insured** or an **insured's** estate, or the non-payment by an **insured** or by any other organization responsible for a Deductible or Self-Insured Retention, shall not act to modify any duty owed by an **insured** or the **company** under the policy. Under no circumstances will such bankruptcy, insolvency or non-payment require the **company** to assume or in any way be responsible for any Deductible or Self-Insured Retention, or otherwise assume any obligation owed by any **insured** under this policy. The **company** will have no duty to pay **loss** or **claims expense** for any **claim** or **potential claim** unless the **insured** or any other organization responsible for the Self-Insured Retention timely pays the Self-Insured Retention in full.

E.  CANCELLATION, NONRENEWAL AND/OR TERMINATION OF COVERAGE

1. This policy may be canceled by the **first named insured**. The **first named insured** shall provide written notice to the **company** requesting cancellation. The cancellation shall be effective on the date requested by the **first named insured** or the date the notice is received by the **company**, whichever is later.

2. Any coverage contained within this policy may be terminated by the **first named insured**. The **first named insured** shall provide written notice to the **company** requesting the coverage termination. The termination shall be effective on the date requested by the **first named insured** or the date the notice is received by the **company**, whichever is later.

3. This policy, or any coverage contained therein, may also be canceled, terminated or nonrenewed by the **company**. The **company** will send notice to the **first named insured** at the last address on record with the **company**.

4. If the **first named insured** cancels this policy, or terminates any coverage contained therein, earned premium shall be computed in accordance with the standard short rate tables and procedure. If the **company** cancels this policy, or terminates any coverage contained therein, earned premium shall be computed pro rata. Premium adjustments shall be made within a reasonable period of time after cancellation. However, payment or tender of unearned premium shall not be a condition of cancellation.

5. If the **company** cancels or nonrenews this policy for any reason other than non-payment of premium, the **company** shall provide written notice to the **first named insured** not less than 30 days prior to the effective date of such cancellation or nonrenewal. If the **company** cancels this policy for nonpayment of premium, the **company** shall provide written notice to the **first named insured** not less than 10 days prior to the effective date of such cancellation or nonrenewal.

6. If the **company** cancels or nonrenews this policy, coverage under the policy shall terminate on the earlier of:

    a.  the date stated on the cancellation or nonrenewal notice; or

    b.  the date an **insured** procures replacement coverage.

F.  COVERAGE TERRITORY

This policy applies to **claims** or **potential claims** arising from acts, omissions, occurrences or offenses (including offenses that take place through the Internet or similar electronic means of communication) occurring anywhere in the world, with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America, provided that the **claim** or **potential claim** is made and any legal proceedings are pursued within the United States, its territories and possessions, including Puerto Rico.

G.  EXTENDED REPORTING PERIOD

Only with respect to any Coverage Part shown on the Declarations as "Claims-Made and Reported," the following provisions apply:

1. <u>Automatic Limited Extended Reporting Period</u>

    a.  In the event that coverage under this policy is terminated for any reason, the **company** will provide an

 © 2015 MedPro Group. All rights reserved.

automatic limited **extended reporting period** of 30 days, starting with the end of the **policy period**, during which **claims** and **potential claims** arising out of any specific coverage(s) may be reported to the **company** in writing. However, the **claim** must have been first made against an **insured** during the **policy period**, or the **potential claim** must have been first discovered by an **insured** during the **policy period**.

b.   This automatic limited **extended reporting period** shall not extend the **policy period** or change the scope of the coverage provided. Any **claim** or **potential claim** first reported to the **company** during the automatic limited **extended reporting period** will be deemed to have been made on the last date on which this policy is in effect. The Limits of Liability that apply at the end of the **policy period** are not renewed or increased for **claims** or **potential claims** first reported during the automatic limited **extended reporting period**.

2.   Optional Extended Reporting Period

a.   The **company** shall, upon written request by or on behalf of the **first named insured**, make an offer for an **extended reporting period** to the **first named insured** if coverage is or will be canceled or nonrenewed, subject to the following:

(1)   any such written request by or on behalf of the **first named insured** must be received by the **company** no later than 30 days after the cancellation or nonrenewal of the coverage;

(2)   the **company** shall be required to send the offer for an **extended reporting period** only to the **first named insured** or its authorized representative; and

(3)   the coverage has been or will be canceled or nonrenewed with respect to:

a)   the entire policy;

b)   a Coverage Part; or

c)   a **named insured** who:

i)   has Limits of Liability listed in the Limits of Liability column of a Schedule of Named Insureds – Professional Liability;

ii)   does not share Limits of Liability with another **named insured** with respect to the General Liability Coverage Part or the Cyber Liability and Breach Response Coverage Part; or

iii)   shares Limits of Liability with another **named insured**, but only when all coverage available under that shared limit is terminated.

b.   The **first named insured** may accept the **company's** offer of an **extended reporting period** by paying the premium due within 30 days from either the date on which the policy expires or the date on which the **company** receives the request for an **extended reporting period**, whichever is later. Failure to pay the full premium within this 30-day period will be deemed a rejection of the offer.

c.   In the event of the purchase of an **extended reporting period**, the entire premium for such **extended reporting period** shall be deemed earned at its commencement.

d.   If an **extended reporting period** is purchased, a **claim** or **potential claim** otherwise covered by this policy may be reported for the period of time set forth in the applicable **extended reporting period** endorsement issued after termination of the **policy period**. The **extended reporting period** will begin at the end of the **policy period**. However, the **extended reporting period** shall not:

(1)   extend the **policy period**;

(2)   apply to any **claim** or **potential claim** arising from a **health care event**, **event**, offense, **bodily injury**, **property damage**, or **personal and advertising injury** that took place after the **policy period**; or

(3)   otherwise expand the coverage provided under this policy.

H.   FIRST NAMED INSURED

1.   The **first named insured** shall be authorized to act on behalf of all **insureds** with respect to this policy, with full authority to bind all **insureds**. The **first named insured's** authority shall include, but is not limited to, the following actions:

a. receipt of notices of cancellation or nonrenewal;

b. requesting or receiving endorsements issued to form a part of this policy;

c. payment of premiums due;

d. receiving return premium; and

e. receiving and/or responding to an offer for an **extended reporting period** for any **insured**.

2. The **first named insured** shall notify the **company** in writing of any changes that might affect the insurance provided under this policy, including cancellation and nonrenewal.

I. FRAUD WARNING

Any person, who knowingly and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties, which may include voiding of the policy if allowed by law.

J. GOVERNMENTAL ACCESS TO RECORDS

If required by section 952 of the Omnibus Reconciliation Act of 1980, and after receipt of written request from the **first named insured**, the **company** will allow the U.S. Secretary of Health and Human Services or the U.S. Comptroller General access to this policy as well as all books, documents and records necessary to verify the cost of this policy. The **company** will also allow access to subcontracts between the **company** and any of its related organizations, and to such organization's books, documents and other records to the extent required by law, and to the extent that the **company** has possession, custody or control of such books, documents and records. Access will be provided for up to 4 years after the services provided pursuant to this policy cease.

K. INSPECTION AND AUDIT

The **company** shall be permitted, at its own discretion and for its own benefit, to audit an **insured's** property, operations, and any business records. The **company** shall also have the right to obtain a copy of any current or prior insurance records. Any findings or recommendations made by the **company** as a result of an audit shall inure only to the **company's** benefit. As a result, they may not be used as evidence of the **insured's** compliance with any safety regulations or other industry standards.

L. MODIFICATIONS

Except as provided herein, this policy may not be modified except by written endorsement attached to and made a part of this policy by the **company**. The **company's** decision not to insist on an **insured's** compliance with any provision of this policy shall not operate to waive, modify, or void that provision, or any other provision, condition or term of this policy.

M. NON-ASSIGNABILITY

No interest of an **insured** under this policy shall be assignable without the prior written consent of the **company**. However, if the **insured** is a person and dies, the coverage afforded by this policy shall inure to the benefit of that **insured's** estate.

N. OTHER INSURANCE

Unless otherwise noted in a Coverage Part:

1. if any other valid and collectible insurance is available to any **insured** with respect to a liability covered by this policy, and such insurance is afforded under a policy issued by a past, present or future parent, subsidiary or affiliate of the **company**, then the maximum limits of liability under all policies shall not exceed the highest remaining applicable limit of liability under any one policy;

2. if any other valid and collectible insurance is available to any **insured** for a **claim** or **potential claim** under a policy not issued by a past, present or future parent, subsidiary or affiliate of the **company**, then this insurance will be excess over such other insurance even if such other insurance is stated to be primary, excess, contingent or otherwise. The **company** will pay only the **company's** share of the **loss**, if any, that exceeds the sum of:

a. the total amount that all such other insurance would pay for the **loss** in the absence of this insurance; and

    b.  the total of all deductible and self-insured amounts under all such other insurance; and

  3.  this condition shall not apply if such other valid insurance is written to be specifically excess of this policy.

O.  PREMIUMS

  1.  The **company's** obligation to perform any duty under the policy is strictly conditioned upon the payment of the premium when due. Therefore, this policy shall not be deemed to have been issued, delivered, or renewed and shall not be applicable to any matter which would otherwise be covered herein, until:

    a.  the premium has been paid in full; or

    b.  if the **company** has agreed to finance the policy, the first installment has been paid in full.

  If payment is made by check, electronic transfer or money order, it shall not be considered "paid in full" until honored by the payor's bank.

  2.  Premiums for this policy shall be computed in accordance with the **company's** rules, rates, and rating plans.

  3.  Any premium designated as deposit premium is merely a deposit on the actual amount owed. At the close of the **policy period**, the **company** will compute the earned premium for that period. The deposit premium will then be credited to that amount. If the deposit premium exceeds the earned premium, the **company** will refund the difference to the **first named insured**. If the earned premium exceeds the deposit premium, the **company** will bill the **first named insured** for the difference.

  4.  The **first named insured** shall maintain records of the information necessary for premium computation. The **first named insured** shall send copies of these records to the **company** at the end of the **policy period** as directed by the **company**. Such information shall be subject to audit and verification by the **company**.

P.  REPORTING REQUIREMENTS

  1.  The **company's** duty to defend and pay **loss** for any **claim** or **potential claim** otherwise covered under this policy is strictly conditioned upon an **authorized insured's** forwarding, as soon as practicable and expressly subject to the reporting requirements of the applicable Insuring Clause, notice of every **claim**, **potential claim**, demand, suit, summons, or legal paper the **insured** receives.

  2.  If the Retention shown on the Declarations is a:

    a.  Deductible, an **authorized insured** shall, as soon as practicable, report any **claim** or **potential claim**;

    b.  Self-Insured Retention, an **authorized insured** shall, as soon as practicable, report any **claim** or **potential claim** that:

      (1)  an **authorized insured** believes will results in damages that exceed the applicable Self-Insured Retention;

      (2)  has a loss reserve exceeding 50% of the applicable Self-Insured Retention;

      (3)  involves a claimant's demand which exceeds the applicable Self-Insured Retention;

      (4)  contains allegations of unfair claim practices or bad faith;

      (5)  involves a suit naming the **company** or its affiliates as defendants; or

      (6)  that caused:

        a)  neurological injury, such as brain injury, spinal cord injury or nerve injury resulting in paralysis;

        b)  injury during pregnancy or delivery;

        c)  significant limitation of daily activities, such as feeding, continence or sexual function;

        d)  loss of sight or hearing;

        e)  elopement;

        f)  decubitus ulcers;

        g)  severe disfigurement, such as burns, amputation or scarring;

        h)  loss of any organ; or

       i)  death.

3. All such reports and documents shall be:

    a. directed to the **company** using the contact information listed on the contact sheet attached to this policy;

    b. in writing; and

    c. include the following information:

      (1) the identity of all **insureds** implicated;

      (2) all reasonably obtainable information with respect to the time, place and circumstances of the **health care event**, **event**, offense or other matter for which coverage is sought under this policy;

      (3) the nature and extent of the injury;

      (4) the names and addresses of any injured persons;

      (5) the names and addresses of available witnesses; and

      (6) the basis for the **insured's** belief that a **claim** is reasonably likely to be made, as well as the date the **insured** first came to this belief.

4. A **health care event**, **event**, offense, accident or other matter reported to the **company** as part of risk management or loss control services shall not constitute the report of a **claim** or **potential claim** for purposes of coverage under this policy.


Q. REPRESENTATIONS

1. By acceptance of this policy, each **insured** agrees, represents, and warrants that the statements and particulars made in all applications, including any statements and particulars made in any and all documents, supplemental pages or other attachments for the purposes of any application, are true and correct. It is further understood and agreed that any application and attachments are incorporated into, and shall form a part of, this policy. Therefore, this policy and any endorsements hereto, and all applications and attachments, embody all agreements between the **company** and any of its authorized representatives, and all **insureds** relating to this insurance.

2. In the event any application was executed or endorsed by an **insured's** insurance producer, the **insured** acknowledges that the insurance producer has acted under the **insured's** express authority and that the **insured** has thoroughly reviewed the information contained on any application.

3. The representations made by an **insured** in the applications and attachments are the basis for the coverage provided, as well as the **company's** calculation of the applicable premium. Therefore, it is understood and agreed that, to the extent permitted by law, the **company** reserves all rights, including the right to rescind this policy, or deny any coverage provided for a **claim** or **potential claim**, based upon any material misrepresentation made by any **insured**. As used in this condition, "material misrepresentation" means concealment, misrepresentation, omission or fraud which, if known by the **company**, would have led to refusal by the **company** to make this contract or provide coverage, or to make this contract or provide coverage on different terms or conditions.

4. No knowledge or information possessed by any **insured** shall be imputed to any other **insured**, except for material facts or information known to the person or persons who signed the application. In the event of any material misrepresentation in connection with any of the particulars or statements in the application, this policy shall be void with respect to any **insured** who knew of such material misrepresentation or to whom such knowledge is imputed.

R. SEPARATION OF INSUREDS

Except for any duties specifically assigned to the **first named insured** and Limits of Liability applicable to any **insured**, this policy applies:

1. separately to each **insured** against whom a **claim** or **potential claim** is made; and

2. as if each **insured** were the only **insured** under this policy.

S.  SETTLEMENT

The **company** may only settle a **claim**, **potential claim** or other matter brought against an **insured** with the consent of the **first named insured**.

T.  SUBROGATION

The **company** shall be subrogated to the rights of any **insured** to the extent of any payments made, or as allowed by law. **Insureds** shall do nothing to prejudice those rights. At the **company's** request, an **insured** shall bring suit or transfer those rights to the **company**. **Insureds** shall also help the **company** enforce its rights.

U.  TERMS CONFORM TO STATUTE OR REGULATION

If any term of this policy, or any duty arising therefrom, would cause the **company** to violate any federal, state or local law or regulation, the policy is amended to bring the **company** into compliance with such statute or regulation.



**Issuing Company:**
**National Fire & Marine Insurance Company**
**Omaha, Nebraska**

*SENIOR CARE LIABILITY POLICY*

*PROFESSIONAL LIABILITY COVERAGE PART*

**NOTICE:**

**This Coverage Part may contain claims-made and reported coverage. Please read this Coverage Part carefully.**

## I.  INSURING CLAUSES

A.  PROFESSIONAL LIABILITY

1.  Claims-Made and Reported:

If "Claims-Made and Reported" is shown on the Declarations with respect to this Coverage Part, the following provisions apply:

a.  The **company** will pay on behalf of any **insured** all **loss** and **claims expense**, subject to any applicable Deductible or Self-Insured Retention, and up to the Limits of Liability shown on the Declarations with respect to this Coverage Part, arising from a **health care event** that took place on or after the applicable Retroactive Date shown on the Declarations. Moreover, to be covered under this policy, the **loss** or **claims expense** must arise from:

(1)  a **claim** that was first made against, and received by, an **insured** during the **policy period**, and reported to the **company**, in writing, during the **policy period** or within any applicable **extended reporting period**; or

(2)  a **potential claim** that was first known about or discovered by an **insured** during the **policy period**, and reported to the **company**, in writing, during the **policy period** or within the automatic limited **extended reporting period**.

b.  All **claims** and **potential claims** for damages arising out of, or in connection with the same **health care event** will be deemed to have been first made on the date that the first of those **claims** is made against any **insured**, or the date the first of such **potential claims** is discovered by an **authorized insured**, whichever date is earlier. Only the policy in effect when the first such **claim** is made and reported to the **company**, or the first such **potential claim** is discovered and reported to the **company**, whichever is earlier, will apply to all related **claims** and **potential claims**, no matter when those related **claims** are made or reported, or **potential claims** are discovered and reported. If, prior to the effective date of this policy, the first such **claim** is made, or the first such **potential claim** is discovered, this policy will not apply to that **claim** or **potential claim**, nor to any related **claim** or **potential claim** made during this **policy period** or any **extended reporting period**.

2.  Occurrence:

If "Occurrence" is shown on the Declarations with respect to this Coverage Part, the following provisions apply:

a.  The **company** will pay on behalf of an **insured** all **loss** and **claims expense**, subject to any applicable Deductible or Self-Insured Retention, and up to the Limits of Liability shown on the Declarations with respect to this Coverage Part, arising from a **health care event** that occurred during the **policy period**.

b.  A **health care event** will be deemed to have occurred on the earliest date of any related acts or omissions that gave rise to or contributed to the **health care event**.

## II. **EXCLUSIONS**

The coverage provided under this Coverage Part does not apply to:

A.  CONTRACTUAL LIABILITY

Liability for the acts of another assumed by an **insured** under any contract or agreement, whether written, oral or implied. This exclusion does not apply to liability for damages that the **insured** would have in the absence of the contract or agreement.

B.  ELECTRONIC DATA

Any **claim** or **potential claim** arising out of, or in connection with, the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data. As used in this exclusion, "electronic data" means information, facts, or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices, or any other media that are used with electronically controlled equipment or by means of the internet.

C.  INTENTIONAL ACTS

Any **loss** for any **claim** or **potential claim** arising out of, or in connection with, any act listed below:

1.  any criminal, intentional, dishonest or fraudulent act;

2.  any romantic relationship, or any actual or threatened sexual conduct, with a current, former or prospective patient; or

3.  any willful violation of any law, statute, or regulation.

However, the **company** will pay **claims expense** to defend any **insured** against any **claim** or **potential claim** involving any excluded act listed above when intertwined with any other act triggering any insuring agreement.

This exclusion does not apply to any **claim** or **potential claim** brought against any **insured** who did not direct or act in concert to commit, directly participate in or direct another in connection with any of the acts excluded from coverage under this exclusion.

D.  PRIVACY

Any **claim** or **potential claim** arising out of, or in connection with, any disclosure of or access to any person's or organization's confidential, proprietary or personal information, including personally identifiable information, financial information, patents, trade secrets, processing methods, customer lists, credit card information, health information, or any other type of nonpublic information. This exclusion applies even if the **claim** or **potential claim** is for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other **loss**, **claims expense**, cost or expense incurred by an **insured** or others resulting from the excluded **claims** or **potential claims**.

E.  RESIDENTS' RIGHTS BROUGHT BY ANOTHER PERSON

Any **claim** or **potential claim** arising out of, or in connection with, any violation of any law relating to **residents' rights** brought by any person other than a **resident** or a **resident's** legal representative.

F.  RESIDENTS' RIGHTS BROUGHT BY MULTIPLE RESIDENTS

Any **claim** or **potential claim** arising out of, or in connection with, any violation of any law relating to **residents' rights** laws brought by multiple claimants, groups of claimants, multi-party actions, potential class actions or certified classes that allege the same or similar violations.

G.  TREATMENT BY AN ADMINISTRATOR OR COMMITTEE MEMBER

Any **claim** or **potential claim** arising out of, or in connection with, the rendering of, or failure to render, **treatment** by an administrator or committee member, unless it was provided in an emergency without an expectation of compensation.  As used in this exclusion:

1.  "administrator" means an owner, partner, stockholder, director, trustee, executive officer, medical director, department head, or faculty member of a **named insured**; and

2.  "committee member" means a person serving as a member of a committee or board formed or controlled by a **named insured**. It also includes any person executing the directives of such a committee or board.

                             © 2015 MedPro Group. All rights reserved.

## III. ADDITIONAL CONDITIONS

In addition to the conditions in the Common Policy Provisions and Conditions, the following conditions apply to this Coverage Part:

A. RETROACTIVE DATES

1. A **named insured** that has a date listed under the Retroactive Date column in a Schedule of Named Insureds will be considered as having "Claims-Made and Reported" coverage as shown on the Declarations with respect to the applicable Coverage Part.

2. A **named insured** that has "n/a" listed under the Retroactive Date column in a Schedule of Named Insureds will be considered as having "Occurrence" coverage as shown on the Declarations with respect to the applicable Coverage Part.

B. TERMINATION DATES

If a **named insured** has a date listed under the Termination Date column in a Schedule of Named Insureds, any **health care event** must have taken place before that date, and after any applicable Retroactive Date, to be covered under the applicable Coverage Part. However, coverage for such **named insured** shall automatically terminate in the event that the policy is canceled or nonrenewed, unless an **extended reporting period** is purchased for that **named insured** under the applicable Coverage Part.

C. LIMITS OF LIABILITY

1. A **named insured** that has "FNI" or the name of any other **named insured** listed under the Limits of Liability column in a Schedule of Named Insureds will share the Limits of Liability provided to that **first named insured** or **named insured**.

2. If any **named insured** has an amount listed under the Limits of Liability column in a Schedule of Named Insureds, and any other **named insured** lists that same **named insured** in its Limits of Liability column, all such **named insureds** will share Limits of Liability.

3. A **named insured** that has an amount listed under the Limits of Liability column in a Schedule of Named Insureds does not share the **first named insured's** or any other **named insured's** Limits of Liability as long as no other **named insured** lists that same **named insured** in its Limits of Liability column.

D. RETENTIONS

1. A **named insured** that has "FNI" or the name of any other **named insured** listed under the Retention column in a Schedule of Named Insureds is subject to any Deductible or Self-Insured Retention applicable to that **first named insured** or **named insured**.

2. If any **named insured** has an amount listed under the Retention column in a Schedule of Named Insureds, and any other **named insured** lists that same **named insured** in its Retention column, all such **named insureds** will share the Deductible or Self-Insured Retention.

3. A **named insured** that has an amount listed under the Retention column in a Schedule of Named Insureds does not share the **first named insured's** or any other **named insured's** Deductible or Self-Insured Retention as long as no other **named insured** lists that same **named insured** in its Retention column.

## IV. LIMITS OF LIABILITY

A. PER EVENT LIMIT

The Per Event Limit shown on the Declarations is the most the **company** will pay under this Coverage Part for **loss** and **claims expense**, if shown on the Declarations as "Defense Within Limits," for any **health care event** regardless of the number of:

1. **insureds** who share a Per Event Limit;

2. **claims** made or **potential claims** first discovered; or

3. persons or organizations making **claims** or **potential claims**.

B. AGGREGATE LIMIT

The Aggregate Limit shown on the Declarations is the most the **company** will pay under this Coverage Part for **loss** and **claims expense**, if shown on the Declarations as "Defense Within Limits," for all **health care events**

 © 2015 MedPro Group. All rights reserved.

regardless of the number of:

1. **health care events**;

2. **insureds** who share an Aggregate Limit;

3. **claims** made or **potential claims** first discovered; or

4. persons or organizations making **claims** or **potential claims**.



**Issuing Company:**
**National Fire & Marine Insurance Company**
**Omaha, Nebraska**

## *SENIOR CARE LIABILITY POLICY*
## *GENERAL LIABILITY COVERAGE PART*

### NOTICE:

**This Coverage Part may contain claims-made and reported coverage. Please read this Coverage Part carefully.**

## I.  <u>INSURING CLAUSES</u>

A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  <u>Claims-Made and Reported</u>

If "Claims-Made and Reported" is shown on the Declarations with respect to this Coverage Part, the following provisions apply:

a.  The **company** will pay on behalf of any **insured** all **loss** and **claims expense**, subject to any applicable Deductible or Self-Insured Retention, and up to the Limits of Liability shown on the Declarations with respect to this Insuring Clause, arising from an **event** resulting in **bodily injury** or **property damage** that took place on or after the applicable retroactive date shown on the Declarations. Moreover, to be covered under this policy, the **loss** or **claims expense** must arise from:

(1)  a **claim** that was first made against, and received by, an **insured** during the **policy period**, and reported to the **company**, in writing, during the **policy period** or within any applicable **extended reporting period**; or

(2)  a **potential claim** that was first known about or discovered by an **insured** during the **policy period**, and reported to the **company**, in writing, during the **policy period** or within the automatic limited **extended reporting period**.

b.  All **claims** and **potential claims** for damages arising out of, or in connection with, **bodily injury** to the same person, including damages claimed by any person or organization for care, loss of services, or death resulting at any time from **bodily injury**, will be deemed to have been first made on the date that the first of those **claims** is made against any **insured**, or the date the first of such **potential claims** is discovered by an **authorized insured**, whichever date is earlier. Additionally, all **claims** and **potential claims** for damages because of **property damage** causing **loss** to the same person or organization will be deemed to have been first made on the date that the first of those **claims** is made against any **insured**, or the date the first of the **potential claims** is discovered by an **authorized insured**, whichever date is earlier. Only the policy in effect when the first such **claim** is made and reported to the **company**, or the first such **potential claim** is discovered and reported to the **company**, whichever is earlier, will apply to all related **claims** and **potential claims**, no matter when those related **claims** are made or reported, or **potential claims** are discovered and reported. If, prior to the effective date of this policy, the first such **claim** is made, or the first such **potential claim** is discovered, this policy will not apply to that **claim** or **potential claim**, nor to any related **claim** or **potential claim** made during this **policy period** or any **extended reporting period**.

2.  <u>Occurrence</u>

If "Occurrence" is shown on the Declarations with respect to this Coverage Part, the following provisions apply:

a.  The **company** will pay on behalf of an **insured** all **loss** and **claims expense**, subject to any applicable Deductible or Self-Insured Retention, and up to the Limits of Liability shown on the Declarations with respect to this Insuring Clause, arising from an **event** resulting in **bodily injury** or **property damage** that occurred during the **policy period**.

 © 2015 MedPro Group. All rights reserved.

      b.  An **event** will be deemed to have occurred on the earliest date of any related acts or omissions that gave rise to or contributed to the **event**.

B.  PERSONAL AND ADVERTISING INJURY LIABILITY

    1.  <u>Claims-Made and Reported</u>

        If "Claims-Made and Reported" is shown on the Declarations with respect to this Coverage Part, the following provisions apply:

      a.  The **company** will pay on behalf of any **insured** all **loss** and **claims expense**, subject to any applicable Deductible or Self-Insured Retention, and up to the Limits of Liability shown on the Declarations with respect to this Insuring Clause, arising from an offense resulting in **personal and advertising injury** that took place on or after the applicable retroactive date shown on the Declarations. Moreover, to be covered under this policy, the **loss** or **claims expense** must arise from:

          (1)  a **claim** that was first made against, and received by, an **insured** during the **policy period**, and reported to the **company**, in writing, during the **policy period** or within any applicable **extended reporting period**; or

          (2)  a **potential claim** that was first known about or discovered by an **insured** during the **policy period**, and reported to the **company**, in writing, during the **policy period** or within the automatic limited **extended reporting period**.

      b.  All **claims** and **potential claims** for damages arising out of, or in connection with the same **personal and advertising injury** will be deemed to have been first made on the date that the first of those **claims** is made against an **insured**, or the date the first of such **potential claims** is discovered by an **authorized insured**, whichever date is earlier. Only the policy in effect when the first such **claim** is made and reported to the **company**, or the first such **potential claim** is discovered and reported to the **company**, whichever is earlier, will apply to all related **claims** and **potential claims**, no matter when those related **claims** are made or reported, or **potential claims** are discovered and reported. If, prior to the effective date of this policy, the first such **claim** is made, or the first such **potential claim** is discovered, this policy will not apply to that **claim** or **potential claim**, nor to any related **claim** or **potential claim** made during this **policy period** or any **extended reporting period**.

    2.  <u>Occurrence</u>

        If "Occurrence" is shown on the Declarations with respect to this Coverage Part, the following provisions apply:

      a.  The **company** will pay on behalf of an **insured** all **loss** and **claims expense**, subject to any applicable Deductible or Self-Insured Retention, and up to the Limits of Liability shown on the Declarations with respect to this Insuring Clause, arising from an offense resulting in **personal and advertising injury** that occurred during the **policy period**.

      b.  An offense will be deemed to have occurred on the earliest date of any related acts or omissions that gave rise to or contributed to the offense.

C.  MEDICAL PAYMENTS

    1.  <u>Claims-Made and Reported</u>

        If "Claims-Made and Reported" is shown on the Declarations with respect to this Coverage Part, the following provisions apply:

      a.  The **company** will pay on behalf of any **named insured**, **medical expenses** for **bodily injury** caused by an accident, regardless of fault, and up to the Limits of Liability shown on the Declarations with respect to this Insuring Clause. However, the **medical expenses** must have been caused by an accident that took place on or after the applicable Retroactive Date shown on the Declarations. Moreover, to be covered under this policy, the **medical expenses** must:

          (1)  arise from a **claim** that was first made against, and received by, a **named insured** during the **policy period**, and reported to the **company**, in writing, during the **policy period**;

          (2)  arise from an accident that occurred on a premises owned or occupied by, or on the ways next to premises owned or occupied by, a **named insured**; and

          (3)  result from the operations of a **named insured**.

b.  for damages arising out of, or in connection with the same accident will be deemed to have been first made on the date that the first of those **claims** is made against any **insured**, or the date the first of such **potential claims** is discovered by an **authorized insured**, whichever date is earlier. Only the policy in effect when the first such **claim** is made and reported to the **company**, or the first such **potential claim** is discovered and reported to the **company**, whichever is earlier, will apply to all related **claims** and **potential claims**, no matter when those related **claims** are made or reported, or **potential claims** are discovered and reported. If, prior to the effective date of this policy, the first such **claim** is made, or the first such **potential claim** is discovered, this policy will not apply to that **claim** or **potential claim**, nor to any related **claim** or **potential claim** made during this **policy period** or any **extended reporting period**.

2.  Occurrence

If "Occurrence" is shown on the Declarations with respect to this Coverage Part, the following provisions apply:

a.  the **company** will pay on behalf of a **named insured**, **medical expenses** for **bodily injury** caused by an accident, regardless of fault, and up to the Limits of Liability shown on the Declarations with respect to this Insuring Clause. However, the **medical expenses** must be caused by an accident that occurred during the **policy period**. Moreover, to be covered under this policy, the **medical expenses** must:

(1) be submitted to the **company**, in writing, within one year of the accident;

(2) arise from an accident that occurred on a premises owned or occupied by, or on the ways next to premises owned or occupied by, a **named insured**; and

(3) result from the operations of a **named insured**.

b.  An accident will be deemed to have occurred on the earliest date of any related acts or omissions that gave rise to or contributed to the accident.

However, payments for **medical expenses** shall not be subject to any Deductible or Self-Insured Retention.


## II. **EXCLUSIONS**

A.  EXCLUSIONS APPLICABLE TO THIS COVERAGE PART

The coverage provided under this Coverage Part does not apply to:

1.  Contractual Liability

Any **claim** or **potential claim** arising out of, or in connection with, an **insured's** obligation to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

a.  that the **insured** would have in the absence of the contract or agreement; or

b.  assumed in a contract or agreement that is an **insured contract**, provided the **bodily injury**, **property damage**, **personal and advertising injury** or **medical expenses** occurred subsequent to the execution of the contract or agreement. Only for the purposes of liability assumed in an **insured contract**, reasonable attorneys' fees and necessary litigation expenses incurred by or for a party, other than an **insured**, are deemed to be damages because of **bodily injury**, **property damage**, **personal and advertising injury** or **medical expenses**, provided:

(1) liability to or for that party's defense has also been assumed in the same **insured contract**; and

(2) attorneys' fees and litigation expenses are for the defense against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

2.  Contamination

Any **claim** or **potential claim** arising out of, or in connection with, a **superbug contamination**.

3.  Electronic Data

Any **claim** or **potential claim** arising out of, or in connection with, the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data. As used in this exclusion, "electronic data" means information, facts, or programs stored as or on, created or used on, or transmitted to or from

© 2015 MedPro Group. All rights reserved.

computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices, or any other media that are used with electronically controlled equipment or by means of the internet.

4. Employees

Any **claim** or **potential claim** arising out of, or in connection with, the acts or omissions of an **employee**, involving:

    a. **bodily injury**, **personal and advertising injury** or **medical expenses**:

        (1) to another **employee** or agent of a **named insured**;

        (2) to the spouse, relative or dependent as a consequence of subparagraph a.(1), above; or

        (3) for which there is any duty to share damages or loss with, or repay, another party liable for the loss as a consequence of subparagraphs a.(1) and a.(2), above.

    b. **property damage** to property:

        (1) owned, occupied, or used by an **insured**;

        (2) rented to an **insured**; or

        (3) in the care, custody, or control of an **insured**.

5. Privacy

Any **claim** or **potential claim** arising out of, or in connection with, any disclosure of or access to any person's or organization's confidential, proprietary or personal information, including personally identifiable information, financial information, patents, trade secrets, processing methods, customer lists, credit card information, health information, or any other type of nonpublic information. This exclusion applies even if the **claim** or **potential claim** is for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other **loss**, **claims expense**, cost or expense incurred by an **insured** or others resulting from the excluded **claims** or **potential claims**.

6. Professional Liability

Any **claim** or **potential claim** arising out of, or in connection with, a **health care event**.

7. Recording And Distribution Of Material Or Information In Violation Of Law

Any **claim** or **potential claim** arising out of, or in connection with, any act or omission that violates or is alleged to violate:

    a. the Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

    b. the CAN-SPAM Act of 2003, including any amendment of or addition to such law;

    c. the Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act; or

    d. any federal, state or local statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

8. Residents Rights

Any **claim** or **potential claim** arising out of, or in connection with, a violation of any law relating to **residents' rights**.

9. Sexual Acts

Any **claim** or **potential claim** arising out of, or in connection with, any actual or threatened sexual conduct by any person of another person while in the care, custody, or control of any **insured**.

Under this exclusion, the **company's** duty to defend the **insured** for such **claim** or **potential claim** will cease when it is established by trial or arbitration verdict, court ruling, regulatory ruling or legal admission that the **insured** engaged in any act excluded in this exclusion.

                © 2015 MedPro Group. All rights reserved.

This exclusion does not apply to any **claim** or **potential claim** brought against any **insured** who did not direct or act in concert to commit, directly participate in or direct another in connection with any of the acts excluded from coverage under this exclusion.

B.   EXCLUSIONS APPLICABLE TO THE BODILY INJURY AND PROPERTY DAMAGE LIABILITY INSURING CLAUSE AND THE MEDICAL PAYMENTS INSURING CLAUSE

The coverage provided under the Bodily Injury and Property Damage Liability Insuring Clause and the Medical Payments Insuring Clause does not apply to:

1.   Aircraft, Auto Or Watercraft

**Bodily injury**, **property damage** or **medical expenses** arising out of, or in connection with, the ownership, maintenance, use, or entrustment to others of any aircraft, **auto**, or watercraft owned or operated by or rented to or loaned to any **insured**. Use includes operation and **loading or unloading**.

a.   This exclusion applies even if the **claims** or **potential claims** against any **insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that **insured** if the **event** or accident which caused the **bodily injury**, **property damage** or **medical expenses** involved the ownership, maintenance, use, or entrustment to others of any aircraft, **auto**, or watercraft that is owned or operated by or rented or loaned to any **insured**.

b.   This exclusion does not apply to:

(1)   the loading or unloading of a patient;

(2)   a watercraft while on shore on premises owned or rented by the **insured**;

(3)   a watercraft that is:

a)   not owned by an **insured**;

b)   less than 26 feet long; and

c)   not being used to carry persons or property for a charge.

(4)   parking an **auto** on or next to a site owned or occupied by an **insured**, but only if the **auto** is not owned, rented, or being used by an **insured**;

(5)   liability assumed under an **insured contract** for the ownership, maintenance, or use of an aircraft or watercraft; or

(6)   **bodily injury**, **property damage** or **medical expenses** arising out of, or in connection with:

a)   the operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of **mobile equipment** if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

b)   the operation of any of the machinery or equipment listed in subparagraph 2.a or 2.b of the definition of **mobile equipment**.

2.   Asbestos

Any **claim** or **potential claim** arising out of, or in connection with, asbestos, or any materials containing asbestos in whatever form or quantity.

3.   Damage To Impaired Property Or Property Not Physically Injured

**Property damage** to **impaired property** or property that has not been physically injured arising out of, or in connection with:

a.   a defect, deficiency, inadequacy, or dangerous condition in the **insured's product** or **insured's work**; or

b.   a delay or failure by an **insured** to perform under the terms of a contract or agreement.

This exclusion does not apply to the loss of use of other property arising out of, or in connection with, sudden and accidental physical injury to the **insured's product** or the **insured's work** after it has been put to its intended use.

4. <u>Damage To The Insured's Product</u>

   **Property damage** to the **insured's product** arising out of, or in connection with, it or any part of it.

5. <u>Damage To The Insured's Work</u>

   **Property damage** to the **insured's work** arising out of, or in connection with, the **insured's work** or any part of it, and included in the **products completed operations hazard**. This exclusion does not apply if the damaged work, or the work out of which the damage arises, was performed by a subcontractor on behalf of the **insured**.

6. <u>Damage To Property</u>

   **Property damage** to:

   a. property an **insured** owns, rents, or occupies, including any costs or expenses incurred by an **insured**, or any other person or organization for repair, replacement, enhancement, restoration, or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

   b. premises an **insured** sells, gives away, or abandons if the **property damage** arises out of, or in connection with, any part of those premises;

   c. property loaned to an **insured**;

   d. personal property in the care, custody, or control of an **insured**;

   e. that particular part of real property on which an **insured** or any contractors or subcontractors, working directly or indirectly on behalf of an **insured**, are performing operations if the **property damage** arises out of those operations; or

   f. that particular part of any property that must be restored, repaired, or replaced because the **insured's work** was incorrectly performed on it.

   Subparagraphs a, c, and d of this exclusion do not apply to **property damage** (other than damage by fire) to a premises, including the contents of such premises, rented to an **insured** for a period of 7 or fewer consecutive days. A separate limit of liability applies to the Damage to Premises Rented to an Insured as described in the Limits of Liability provision.

   Subparagraph b of this exclusion does not apply if the premises are the **insured's work** and were never occupied, rented, or held for rental by an **insured**.

   Subparagraph f of this exclusion does not apply to **property damage** included in the **products completed operations hazard**.

7. <u>Expected Or Intended Injury</u>

   **Bodily injury**, **property damage** or **medical expenses** arising out of, or in connection with, any act expected or intended by an **insured** to cause **bodily injury**, **property damage** or **medical expenses**. This exclusion applies even if an **insured's** act causes **bodily injury**, **property damage** or **medical expenses**:

   a. of a different type or degree than expected or intended; or

   b. to a different person or organization than expected or intended.

   However, this exclusion does not apply to **bodily injury** or **medical expenses** arising out of, or in connection with, an **insured's** use of reasonable force to protect persons or property.

8. <u>Fungi And Bacteria</u>

   a. **Bodily injury**, **property damage** or **medical expenses** arising out of, or in connection with, the actual, alleged or threatened inhalation of, injection of, contact with, exposure to, existence of, or presence of any fungi or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

   b. Any **loss**, cost or expense arising out of, or in connection with, the abating, testing, monitoring, cleaning, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to, or assessing the effects of, fungi or bacteria, by any **insured** or by any other person or organization.

   This exclusion shall not apply to any fungi or bacteria contained in a good or product intended for bodily

consumption. For the purposes of this exclusion, the term fungi includes any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents, or byproducts produced or released by fungi.

9. <u>Liquor Liability</u>

**Bodily injury**, **property damage** or **medical expenses** arising out of, or in connection with, any **insured's** liability by reason of:

a. causing or contributing to the intoxication of any person;

b. the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

c. any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if the **insured** is in the business of manufacturing, distributing or selling alcoholic beverages.

10. <u>Mobile Equipment</u>

**Bodily injury**, **property damage** or **medical expenses** arising out of, or in connection with:

a. the transportation of **mobile equipment** by an **auto** owned or operated by or rented or loaned to an **insured**; or

b. the use of **mobile equipment** in, while in practice for, or while being prepared for any prearranged racing, speed, demolition, or stunting activity.

11. <u>Personal And Advertising Injury</u>

**Bodily injury** arising out of, or in connection with, **personal and advertising injury**.

12. <u>Pollution</u>

a. Any **bodily injury**, **property damage** or **medical expenses** arising out of, or in connection with, the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **pollutants**:

(1) at or from any premises, site, or location that is or was at any time owned or occupied by or rented or loaned to any **insured**. However, this does not apply to:

a) **bodily injury** if sustained within a building and caused by smoke, fumes, vapor, or soot produced by or originated from equipment that is used to heat, cool, or dehumidify the building or equipment that is used to heat water for personal use by the building's occupants or guests;

b) **bodily injury**, **property damage** or **medical expenses** for which an **insured** may be held liable, if it is a contractor, and the owner or lessee of such premises, site, or location has been added to the policy as an **additional insured** with respect to an **insured's** ongoing operations performed for that **additional insured** at that premises, site, or location, and such premises, site, or location is not or never was owned or occupied by or rented or loaned to any **insured**, other than that **additional insured**; or

c) **bodily injury**, **property damage** or **medical expenses** arising out of, or in connection with, heat, smoke, or fumes from a fire that becomes uncontrollable or breaks out from where it was intended to be.

(2) at or from any premises, site, or location that is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing, or treatment of waste.

(3) which are or were at any time transported, handled, stored, treated, disposed of or processed as waste by or for any **insured** or any other person or organization for whom an **insured** may be legally responsible.

(4) at or from any premises, site, or location on which any **insured** or any contractors or subcontractors, working directly or indirectly on any **insured's** behalf, are performing operations if the **pollutants** were brought on or to the premises, site, or location in connection with such operations by such **insured**, contractor, or subcontractor. However, this subparagraph does not apply to:

a) **bodily injury**, **property damage** or **medical expenses** arising out of, or in connection with, the escape of fuels, lubricants, or other operating fluids, which are needed to perform the normal

electrical, hydraulic, or mechanical functions necessary for the operation of **mobile equipment** or its parts, if such fuels, lubricants, or other operating fluids escape from a vehicle part designed to hold, store, or receive them. This exception does not apply if the **bodily injury**, **property damage** or **medical expenses** arises out of the intentional discharge, dispersal, or release of fuels, lubricants, or other operating fluids or if such fuels, lubricants, or other operating fluids are brought on or to the premises, site, or location with the intent that they be discharged, dispersed, or released as part of the operations being performed by such **insured**, contractor, or subcontractor;

    b)  **bodily injury**, **property damage** and **medical expenses** sustained within a building and caused by the release of gases, fumes, or vapors from materials brought into the building in connection with operations being performed by an **insured**, or on its behalf by a contractor or subcontractor; or

    c)  **bodily injury**, **property damage** or **medical expenses** arising out of, or in connection with, heat, smoke, or fumes from a fire that becomes uncontrollable or breaks out from where it was intended to be.

(5)  arising out of, or in connection with, any premises, site, or location on which any **insured** or any contractors or subcontractors, working directly or indirectly on any **insured's** behalf, are performing operations if such operations are to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any other way respond to or assess the effects of, **pollutants**.

Subparagraphs (a)(1) and (a)(4) do not apply with respect to the application or storage of fertilizers, fungicides, herbicides, or pesticides in the normal maintenance of an **insured's** location, but only if:

i.  the storage and application of such fertilizers, fungicides, herbicides, or pesticides complies with all applicable federal, state or local government laws;

ii.  the **insured** meets all license or certification requirements under any federal, state or local laws in order to perform the application of any such fertilizers, fungicides, herbicides, or pesticides;

iii.  the fertilizers, fungicides, herbicides, or pesticides does not include mercury or any mercury compounds; and

iv.  the **pollutants** related to such fertilizers, fungicides, herbicides, or pesticides emanate from the **insured's** location.

b.  Any damages, **loss**, cost, or expense arising out of, or in connection with, any:

(1)  request, demand, order, or statutory or regulatory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize , or in any way respond to or assess the effects of, **pollutants**; or

(2)  **claim** or **potential claim** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to or assessing the effects of **pollutants**.

However, this subparagraph does not apply to liability for damages because of **property damage** that an **insured** would have in the absence of such request, demand, order, or statutory or regulatory requirement, or such **claim** or **potential claim** by or on behalf of a governmental authority.

13.  <u>Recall Of Products, Work, Or Impaired Property</u>

Any **claim** or **potential claim** arising out of, or in connection with, any **loss**, cost, or expense incurred by an **insured** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of:

a.  the **insured's product**;

b.  the **insured's work**; or

c.  **impaired property**

if such product, work, or property is withdrawn or recalled from the market or from use due to a known or suspected defect, deficiency, inadequacy, or dangerous condition to it.

14. Silica

Any **claim** or **potential claim** arising out of, or in connection with, silica, including, but not limited to:

a.  inhaling, ingesting or physical exposure to silica directly or through any goods, products, structures, real estate or land containing silica;

b.  the use or presence of silica in any process or operation of any type, including but not limited to construction, manufacturing, sandblasting, cleaning, drilling, farming or mining;

c.  the use or presence of silica in any good, product, structure, real estate or land, or any component part of any good, product, structure, real estate or land; or

d.  the manufacture, sale, transportation, handling, storage or disposal of silica or any goods, products, structures, real estate or land containing silica;

e.  any disease actually or allegedly caused by, contributed to or aggravated by silica, including but not limited to silicosis, chronic silicosis, accelerated silicosis, acute silicosis, conglomerate silicosis, any auto-immune disorder, tuberculosis, silicoproteinosis, cancer, scleroderma, emphysema, pneumoconiosis, pulmonary fibrosis, progressive massive fibrosis, any lung disease or any other ailment actually or allegedly caused by, contributed to or aggravated by silica;

f.  any costs of medical or other testing, monitoring or diagnosis arising out of, or in connection with, any actual, alleged, threatened or feared **bodily injury** arising in whole or in part, directly or indirectly, out of silica; or

g.  any costs of investigations, feasibility studies, cleaning, removal or remediation of the actual or alleged presence of silica in or on any goods, products structures, real estate or land.

As used in this exclusion, "silica" means silica in any form and any of its derivatives, including but not limited to silica dust, silica, silicon dioxide ($SiO_2$), crystalline silica, quartz, or non-crystalline (amorphous) silica.

The exclusions for "AIRCRAFT, AUTO OR WATERCRAFT," "DAMAGE TO IMPAIRED PROPERTY OR PROPERTY NOT PHYSICALLY INJURED," "DAMAGE TO THE INSURED'S PRODUCT," "DAMAGE TO THE INSURED'S WORK," "DAMAGE TO PROPERTY," "LIQUOR LIABILITY," "MOBILE EQUIPMENT," "POLLUTION," and "RECALL OF PRODUCTS, WORK, OR IMPAIRED PROPERTY" do not apply to damage by fire to premises while rented to an **insured** or temporarily occupied by an **insured** with the permission of its owner. A separate limit of liability applies to Damage to Premises Rented to an Insured as described in the Limits of Liability.

C.  EXCLUSIONS APPLICABLE TO PERSONAL AND ADVERTISING INJURY LIABILITY INSURING CLAUSE

The coverage provided under the Personal and Advertising Injury Liability Insuring Clause does not apply to:

1.  Breach Of Contract

    **Personal and advertising injury** arising out of, or in connection with, a breach of contract, except an implied contract to use another's advertising idea in an **insured's advertisement**.

2.  Electronic Chatrooms Or Bulletin Boards

    **Personal and advertising injury** arising out of, or in connection with, an electronic chatroom or bulletin board an **insured** hosts, owns, or over which an **insured** exercises control.

3.  Infringement Of Copyright, Patent, Trademark, Or Trade Secret

    **Personal and advertising injury** arising out of, or in connection with, the infringement of copyright, patent, trademark, trade secret, or other intellectual property rights. However, this exclusion shall not apply to the infringement of copyright, trade, dress, or slogan in an **insured's advertisement**.

4.  Insureds In Media And Internet Type Businesses

    **Personal and advertising injury** committed by an **insured** whose business is:

    a.  advertising, broadcasting, publishing, or telecasting;

    b.  designing or determining content for the websites of others; or

    c.  an internet search, access, content, or service provider.

    However, this exclusion does not apply to **claims** arising from false arrest, detention or imprisonment, malicious

prosecution, or the wrongful eviction from, or wrongful entry into, or invasion of the private occupancy of a room dwelling or premises occupied by, or on behalf of, its owner, landlord, or lessor.

For the purposes of this exclusion, the placing of frames, borders, or links, or advertising for an **insured** or others is not considered, by itself, to be the business of advertising, broadcasting, publishing, or telecasting.

5. Knowing Violation Of Rights Of Others

**Personal and advertising injury** caused by, or at the direction of, an **insured** with the knowledge that the act would violate the rights of another and would inflict **personal and advertising injury**.

6. Material Published Prior To Policy – Claims-Made and Reported Only

Only with respect to any Coverage Part shown on the Declarations as "Claims-Made and Reported," **personal and advertising injury** arising out of, or in connection with, oral or written publication of material whose first publication took place before the applicable retroactive date shown on the Declarations.

7. Material Published Prior To Policy – Occurrence Only

Only with respect to any Coverage Part shown on the Declarations as "Occurrence," **personal and advertising injury** arising out of, or in connection with, oral or written publication of material whose first publication took prior to the **policy period**.

8. Material Published With Knowledge Of Falsity

**Personal and advertising injury** arising out of, or in connection with, oral or written publication of material if done by, or at the direction of, an **insured** with knowledge of its falsity.

9. Quality Or Performance Of Goods – Failure To Conform To Statements

**Personal and advertising injury** arising out of, or in connection with, the failure of goods, products, or services to conform to any statement of quality or performance in an **insured's advertisement**.

10. Unauthorized Use Of Another's Name Or Product

**Personal and advertising injury** arising out of, or in connection with, the unauthorized use of another's name or product in an **insured's** email address, domain name, or metatag, or other similar tactics to mislead another's potential customers.

11. Wrong Description Of Prices

**Personal and advertising injury** arising out of, or in connection with, the wrong description of the price of the goods, products, or services in an **insured's advertisement**.

D. EXCLUSIONS APPLICABLE TO MEDICAL PAYMENTS INSURING CLAUSE

1. Medical Expenses

The coverage provided under Medical Payments Insuring Clause does not apply to **medical expenses** arising out of, or in connection with, **bodily injury**:

a. to an **insured**, except volunteers;

b. to a person hired to do work for, or on behalf of, an **insured** or tenant of an **insured**;

c. to a person injured on that part of a premises owned or rented by an **insured** that the injured person normally occupies;

d. to any person, whether or not an **employee**, who is eligible for benefits under a workers' compensation, occupational disease, disability benefits, or similar law;

e. to a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests;

f. covered as a **products completed operations hazard**; or

g. to any inmate, patient, or prisoner, who is being treated, cared for, detained, or imprisoned by any **insured** or in any premises of any **insured**.

## III. **LIMITS OF LIABILITY**

A. GENERAL RESTRICTIONS

The Limits of Liability shown on the Declarations is the most the **company** will pay regardless of the number of:

1. **insureds**;

2. **claims** made or **potential claims** first discovered; or

3. persons or organizations making **claims** or **potential claims**.

B. GENERAL AGGREGATE LIMIT

The General Aggregate Limit shown on the Declarations is the most the **company** will pay for **loss**, **claims expense**, if shown on the Declarations as "Defense Within Limits," and **medical expenses** under this Coverage Part except for **loss** and **claims expense** included in the **products completed operations hazard**.

C. PRODUCTS COMPLETED OPERATIONS HAZARD AGGREGATE LIMIT

The Products Completed Operations Hazard Aggregate Limit shown on the Declarations is the most the **company** will pay under the Bodily Injury and Property Damage Liability Insuring Clause for **loss** and **claims expense**, if shown on the Declarations as "Defense Within Limits," because of **bodily injury** and **property damage** included in the **products completed operations hazard**.

D. PERSONAL AND ADVERTISING INJURY LIABILITY LIMIT

Subject to subparagraph B. above, the Personal and Advertising Injury Liability Limit shown on the Declarations is the most the **company** will pay for **loss** and **claims expense**, if shown on the Declarations as "Defense Within Limits," under the Personal and Advertising Injury Liability Insuring Clause because of **personal and advertising injury** sustained by any one person or organization.

E. PER EVENT LIMIT

Subject to subparagraphs B. or C. above, whichever applies, the Per Event Limit shown on the Declarations is the most the **company** will pay for:

1. **loss** and **claims expense**, if shown on the Declarations as "Defense Within Limits," under the Bodily Injury and Property Damage Liability Insuring Clause; and

2. **medical expenses** under the Medical Payments Insuring Clause;

because of all **bodily injury** and **property damage** arising out of any one **event**.

F. DAMAGE TO PREMISES RENTED TO AN INSURED LIMIT

Subject to subparagraph E. above, the Damage to Premises Rented to an Insured Limit shown on the Declarations is the most the **company** will pay under the Bodily Injury and Property Damage Liability Insuring Clause for **loss** or **claims expense**, if shown on the Declarations as "Defense Within Limits," because of **property damage** to any one premises, while rented to a **named insured** or temporarily occupied by a **named insured** with permission of the owner.

G. MEDICAL EXPENSE LIMIT

Subject to subparagraph E. above, the Medical Expense Limit shown on the Declarations is the most the **company** will pay under the Medical Payments Insuring Clause for **medical expenses** because of **bodily injury** sustained by any one person.

© 2015 MedPro Group. All rights reserved.



**Issuing Company:**
**National Fire & Marine Insurance Company**
**Omaha, Nebraska**

### SENIOR CARE LIABILITY POLICY

### CYBER LIABILITY AND BREACH RESPONSE COVERAGE PART

#### NOTICE:

**This Coverage Part contains Claims-Made and Reported coverage. If designated as "Claims-Made" in the title of the particular Insuring Clause, the coverages provided by that Insuring Clause will only cover claims first made against an insured during the policy period, and reported to the company during the policy period or during any applicable extended reporting period. All claims are subject to the applicable Limits of Liability and the applicable Retention(s) as shown on the Declarations. Note that the Limits of Liability for Coverages A, B, C and H include claim expenses. Please read this Coverage Part carefully.**

## I.  **INSURING CLAUSES**

A.  COVERAGE A - MULTIMEDIA LIABILITY - CLAIMS-MADE

The **company** will pay on behalf of an **insured** all amounts in excess of the **retention** and within the applicable Limits of Liability that such **insured** becomes legally obligated to pay as **damages**, including liability **assumed under contract**, and related **claim expenses**, resulting from a **claim** for a **multimedia peril** committed by an **insured**, provided that:

1.  the **multimedia peril** is committed on or after the **retroactive date**;

2.  the **claim** is first made against an **insured** during the **policy period**; and

3.  the **claim** is reported to the **company**, in writing, during the **policy period**, or within 30 days thereafter.

B.  COVERAGE B - SECURITY AND PRIVACY LIABILITY - CLAIMS-MADE

The **company** will pay on behalf of an **insured** all amounts in excess of the **retention** and within the applicable Limits of Liability that such **insured** becomes legally obligated to pay as **damages** and related **claim expenses**, resulting from a **claim** for a **security and privacy wrongful act** committed by an **insured** resulting from a **security breach**, **privacy breach** or **breach of privacy regulations**, provided that:

1.  the **security breach**, **privacy breach** or **breach of privacy regulations** and the resulting **security and privacy wrongful act** takes place on or after the **retroactive date**;

2.  the **claim** is first made against an **insured** during the **policy period**; and

3.  the **claim** is reported to the **company**, in writing, during the **policy period**, or within 30 days thereafter.

C.  COVERAGE C - PRIVACY REGULATORY DEFENSE AND PENALTIES - CLAIMS-MADE

The **company** will pay on behalf of an **insured** all amounts in excess of the **retention** and within the applicable Limits of Liability that such **insured** becomes legally obligated to pay as a **regulatory compensatory award** or **regulatory fines and penalties** (to the extent insurable by law), and related **claim expenses**, resulting from a **privacy regulatory proceeding** instituted against an **insured** resulting from a **security breach**, **privacy breach** or **breach of privacy regulations**, provided that:

1.  the **security breach**, **privacy breach** or **breach of privacy regulations** takes place on or after the **retroactive date**;

2.  the **privacy regulatory proceeding** is first instituted against an **insured** during the **policy period**; and

3.  the **privacy regulatory proceeding** is reported to the **company**, in writing, during the **policy period**, or within 30 days thereafter.

D. **COVERAGE D - PRIVACY BREACH RESPONSE COSTS, CUSTOMER NOTIFICATION EXPENSES, AND CUSTOMER SUPPORT AND CREDIT MONITORING EXPENSES**

The **company** will indemnify an **insured** for all amounts in excess of the **retention** and within the applicable Limits of Liability that such **insured** incurs during the **policy period** as **privacy breach response costs**, **customer notification expenses** and/or **customer support and credit monitoring expenses** resulting from a **security breach**, a **privacy breach** or **breach of privacy regulations**, provided that:

1. the **security breach**, **privacy breach** or **breach of privacy regulations** takes place during the **policy period**;

2. the **security breach**, **privacy breach** or **breach of privacy regulations** is reported to the **company**, in writing, no later than 60 days after the date the **security breach**, **privacy breach** or **breach of privacy regulations** is discovered; and

3. the **privacy breach response costs**, **customer notification expenses** and/or **customer support and credit monitoring expenses** are incurred with the **company's** consent.

E. **COVERAGE E - NETWORK ASSET PROTECTION**

1. <u>Loss of Digital Assets</u>

   The **company** will reimburse an **insured business** for all amounts in excess of the **retention** and within the applicable Limits of Liability that such **insured business** incurs as **digital assets loss** and **special expenses** due to damage, alteration, corruption, distortion, theft, misuse or destruction of an **insured business's digital assets** directly caused by a **covered cause of loss**, provided that:

   a. the **covered cause of loss** first occurs and is discovered by the Chief Information Officer, Chief Technology Officer, Chief Security Officer, Risk Manager or General Counsel of the **insured business** during the **policy period**; and

   b. the **covered cause of loss** is reported to the **company**, in writing, no later than 60 days after the date the **covered cause of loss** is discovered.

   **Digital assets loss** and **special expenses** will be reimbursed for a period of up to 12 months following the discovery of the damage, alteration, corruption, distortion, theft, misuse or destruction of **digital assets**, unless specified otherwise by endorsement. **Digital assets loss** and **special expenses** will only be paid where there is clear evidence provided by an **insured business** that such **digital assets loss** and **special expenses** resulted from a **covered cause of loss**.

2. <u>Non-Physical Business Interruption and Extra Expense</u>

   The **company** will reimburse an **insured business** for all amounts in excess of the **retention** and within the applicable Limits of Liability that such **insured business** incurs as **income loss**, **interruption expenses**, and **special expenses** resulting from the total or partial interruption, degradation in service or failure of the **insured business's computer system** directly caused by a **covered cause of loss**, provided that:

   a. the **covered cause of loss** first occurs and is discovered by the Chief Information Officer, Chief Technology Officer, Chief Security Officer, Risk Manager or General Counsel of the **insured business** during the **policy period**;

   b. the **covered cause of loss** is reported to the **company**, in writing, no later than 60 days after the date the **covered cause of loss** is discovered;

   c. the **income loss**, **interruption expenses** and/or **special expenses** are incurred during the **period of restoration**; and

   d. the total or partial interruption, degradation in service or failure of the **insured business's computer system** exceeds the **time retention**.

F. **COVERAGE F - CYBER EXTORTION**

The **company** will indemnify an **insured business** for all amounts in excess of the **retention** and within the applicable Limits of Liability that such **insured business** pays as **cyber extortion expenses** and/or **cyber extortion monies** directly caused by a **cyber extortion threat** or series of **cyber extortion threats**, including

a demand for **cyber extortion monies**, provided that:

1. the **cyber extortion threat** is first made against an **insured business** during the **policy period**; and

2. the **cyber extortion threat** is reported to the **company**, in writing, no later than 60 days after the date the **cyber extortion threat** is received by an **insured**.

**Cyber extortion expenses** and **cyber extortion monies** shall not be paid without prior consultation with the **company** and the **company's** express agreement. An **insured business** must make every reasonable effort to notify the local law enforcement authorities and the Federal Bureau of Investigation or similar equivalent foreign agency before surrendering any **cyber extortion monies** in response to a **cyber extortion threat**.

G.  COVERAGE G - CYBER TERRORISM

The **company** will reimburse an **insured business** for all amounts in excess of the **retention** and within the applicable Limits of Liability that such **insured business** incurs as **income loss**, **interruption expenses** and **special expenses** resulting from the total or partial interruption, degradation in service or failure of an **insured business's computer system** directly caused by an **act of terrorism**, provided that:

1. the **act of terrorism** takes place during the **policy period**;

2. the **act of terrorism** is reported to the **company**, in writing, no later than 60 days after the date the **act of terrorism** is discovered;

3. the **income loss**, **interruption expenses** and/or **special expenses** are incurred during the **period of restoration**; and

4. the total or partial interruption, degradation in service or failure of an **insured business's computer system** exceeds the **time retention**.

H.  COVERAGE H - REGULATORY PROCEEDING - CLAIMS-MADE

The **company** will reimburse an **insured** for all amounts in excess of the **retention** and within the applicable Limits of Liability that such **insured** becomes legally obligated to pay as **regulatory fines and penalties** (to the extent insurable by law) and **claims expenses** and/or **shadow audit expenses** (where applicable) resulting from a **regulatory proceeding**, provided that:

1. the wrongful act, error or omission giving rise to the **regulatory proceeding** is committed on or after the **retroactive date**;

2. the **regulatory proceeding** is first instituted against an **insured** during the **policy period**; and

3. the **regulatory proceeding** is reported to the **company**, in writing, during the **policy period**, or within 30 days thereafter.

The **company** shall have no duty to defend an **insured** under Coverage H, but only to reimburse an **insured** for covered **claim expenses**, **shadow audit expenses**, and/or **regulatory fines and penalties**. An **insured** shall have complete freedom of choice with respect to the selection of the licensed attorney who provides legal services in connection with any **regulatory proceeding** triggering coverage under Coverage H. Upon receiving notice from an **insured** of a **regulatory proceeding**, the **company** or its authorized agent will provide the **insured** with the name(s) of panel counsel. If an **insured** retains panel counsel, the **company** will, subject to all other provisions of this Coverage Part, pay 100% of covered **claim expenses**, **shadow audit expenses**, and/or **regulatory fines and penalties** in excess of the **retention**, up to the applicable Limits of Liability under Coverage H. If an **insured** retains non-panel counsel, the **insured** must pay a co-payment of 25%, and the **company** will pay the remaining 75% of covered **claim expenses**, **shadow audit expenses**, and/or **regulatory fines and penalties** in excess of the **retention**, up to the applicable Limits of Liability under Coverage H.

I.  COVERAGE I - EVACUATION EXPENSE REIMBURSEMENT

The **company** will reimburse an **insured business** for all amounts in excess of the **retention** and within the applicable Limits of Liability that such **insured business** incurs as **evacuation expense** directly caused by an **evacuation**, provided that:

1. the **evacuation** occurs during the **policy period**;

2. the **evacuation** is reported to the **company**, in writing, during the **policy period**, or within 30 days

thereafter;

3. written notice to the **company** includes details regarding the time, date and place of the **evacuation**; description of the **evacuation expense** incurred by an **insured business**; and documented proof of such **evacuation expense**; and

4. no other valid and collectible insurance providing **evacuation expense** coverage is available to any **insured business**, whether that other insurance is provided on a primary, excess, contingent or any other basis.

J. COVERAGE J - DISINFECTION EXPENSE REIMBURSEMENT

The **company** will reimburse an **insured business** for all amounts in excess of the **retention** and within the applicable Limits of Liability that such **insured business** incurs as **disinfection expense** directly caused by a **disinfection event**, provided that:

1. the **disinfection event** occurs during the **policy period**;

2. the **disinfection event** is reported to the **company**, in writing, during the **policy period**, or within 30 days thereafter;

3. written notice to the **company** includes details regarding the time, date and place of the **disinfection event**; description of the **disinfection expense** incurred by an **insured business**; and documented proof of such **disinfection expense**; and

4. no other valid and collectible insurance providing **disinfection expense** coverage is available to any **insured business**, whether that other insurance is provided on a primary, excess, contingent or any other basis.

K. COVERAGE K - PUBLIC RELATIONS EXPENSE REIMBURSEMENT

The **company** will reimburse an **insured business** for all amounts in excess of the **retention** and within the applicable Limits of Liability that such **insured business** incurs as **public relations expenses** directly caused by a **public relations event**, provided that:

1. the **public relations event** occurs during the **policy period**;

2. the **public relations event** is reported to the **company**, in writing, during the **policy period**, or within 30 days thereafter;

3. the **public relations expenses** are incurred with the **company's** consent;

4. written notice to the **company** includes details regarding the time, date and place of the **public relations event**; description of the **public relations expenses** incurred by an **insured business**; and documented proof of such **public relations expenses**; and

5. no other valid and collectible insurance providing **public relations expenses** coverage is available to any **insured business**, whether that other insurance is provided on a primary, excess, contingent or any other basis.

L. COVERAGE L - E-DISCOVERY CLAIM EXPENSES AND E-DISCOVERY REGULATORY INVESTIGATION EXPENSES - CLAIMS-MADE

The **company** will:

1. indemnify an **insured** for all amounts in excess of the **retention** and within the applicable Limits of Liability that such **insured** incurs as **e-discovery claim expenses** and/or **e-discovery regulatory investigation expenses** resulting from a **regulatory proceeding**; and

2. provide **e-discovery consulting services** to an **insured** during the **policy period**, provided that:

   a. the wrongful act, error or omission giving rise to the **regulatory proceeding** is committed on or after the **retroactive date**;

   b. the **regulatory proceeding** is first instituted against an **insured** during the **policy period**; and

   c. the **regulatory proceeding** is reported to the **company**, in writing, during the **policy period**, or within 30 days thereafter.

M. COVERAGE M - DATA PROTECTION REPUTATIONAL HARM

The **company** will reimburse an **insured business**, in excess of the **retention** and within the applicable Limits of Liability, for the net ascertained loss of value to such **insured business's reputation**, being the loss of **net profit** suffered by the **insured business** during the **period of indemnity** and/or any **recoverable costs** and/or any **increase in cost of working** incurred by the **insured business** during the **period of indemnity**, solely and directly caused by a **data protection breach**, provided, that:

1.  the **data protection breach** first occurs and is discovered by the Chief Information Officer, Chief Technology Officer, Chief Security Officer, Risk Manager or General Counsel of the **insured business** during the **policy period**; and

2.  the Chief Information Officer, Chief Technology Officer, Chief Security Officer, Risk Manager or General Counsel of the **insured business** reports the **data protection breach** to the **company**, in writing, within 60 days of any **adverse media report**.


## II. <u>ADDITIONAL EXCLUSIONS</u>

This insurance does not apply to:

A.  any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to:

1.  any **multimedia peril** under Coverage A;

2.  any **security and privacy wrongful act** under Coverage B;

3.  any **security breach**, **privacy breach** or **breach of privacy regulations** under Coverage C;

4.  any **covered cause of loss** under Coverage E;

5.  any **cyber extortion threat** under Coverage F;

6.  any **act of terrorism** under Coverage G;

7.  any acts, errors or omissions under Coverages H and L;

8.  any **evacuation** under Coverage I;

9.  any **disinfection event** under Coverage J;

10. any **public relations event** under Coverage K; or

11. any **data protection breach** under Coverage M;

committed, allegedly committed or that occurred, in whole or in part, prior to the applicable **retroactive date**.

B.  any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to:

1.  any **multimedia peril** under Coverage A;

2.  any **security and privacy wrongful act** under Coverage B;

3.  any **security breach**, **privacy breach** or **breach of privacy regulations** under Coverages C or D;

4.  any **covered cause of loss** under Coverage E;

5.  any **cyber extortion threat** under Coverage F;

6.  any **act of terrorism** under Coverage G;

7.  any acts, errors or omissions under Coverages H and L;

8.  any **evacuation** under Coverage I;

9.  any **disinfection event** under Coverage J;

10. any **public relations event** under Coverage K; or

11. any **data protection breach** under Coverage M;

that any **insured** knew, or could have reasonably foreseen, prior to the effective date of this Coverage Part, could be the basis of a **claim**.

© 2015 MedPro Group. All rights reserved.

C.  any **claim** or circumstance involving the Coverages available under this Coverage Part notified to a previous insurer prior to the effective date of this Coverage Part.

D.  any **claim** made by or on behalf of an **insured** against another **insured**; however, this exclusion shall not apply to:

1.  an otherwise covered **claim** under Coverage B made by any past, present or future **employee** for a **security and privacy wrongful act**, but only if such **employee** did not commit, participate in or contribute to such **security and privacy wrongful act** or a **security breach**, **privacy breach**, or **breach of privacy regulations**; or

2.  any **billing errors proceeding** instituted by an **insured** against an **insured** as a **qui tam plaintiff** or brought by an **insured** under the United States False Claims Act.

E.  any **claim** alleging or arising out of any willful, deliberate, malicious, fraudulent, dishonest or criminal act, error or omission, or any intentional violation of the law or of an **insured business's** privacy policy, or the gaining of any profit or advantage to which any **insured** is not legally entitled, if any of the aforementioned is committed by an **insured**, whether acting alone or in collusion with other persons. However, the insurance afforded by this Coverage Part shall apply to **claims expenses** incurred in defending any such **claim**, but shall not apply to any **damages**, **regulatory fines and penalties** or other **loss** that an **insured** might become legally obligated to pay. The **company** will have the right to recover those **claims expenses** incurred from those parties found to have committed criminal, dishonest, fraudulent or malicious acts, errors or omissions by a court, jury or arbitrator. This exclusion shall not apply to a **claim** under Coverage E for **employee** sabotage.

F.  any **claim** arising out of any **insured's** activities as a trustee, partner, officer, director, or **employee** of any employee trust, charitable organization, corporation, company, or business other than that of an **insured business**.

G.  any **claim** arising out of an **insured's** insolvency or bankruptcy or the insolvency or bankruptcy of any other entity including, but not limited to, the failure, inability, or unwillingness to make payments because of the insolvency, liquidation, or bankruptcy of any individual or entity.

H.  **bodily injury**, except that this exclusion shall not apply to negligent infliction of emotional distress or mental anguish arising out of any actual or alleged **multimedia peril**, **security and privacy wrongful act**, **privacy breach**, **security breach** or **breach of privacy regulations**.

I.  any **claim** for **property damage**.

J.  any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to:

1.  satellite failures;

2.  electrical or mechanical failures and/or interruption, including, but not limited to, electrical disturbance, spike, brownout, or blackout; or

3.  outages to gas, water, telephone, cable, telecommunications or other infrastructure, unless such infrastructure is under an **insured business's** operational control and unless such **claim** otherwise triggers coverage under Coverage E or G.

K.  any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to the wear and tear, drop in performance, progressive deterioration or aging of electronic equipment and other property or **computer hardware** used by an **insured**.

L.  any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to failure of overhead transmission and distribution lines.

M.  any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to gradual deterioration of subterranean insulation.

N.  any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to fire, smoke, explosion, lightning, wind, water, flood, earthquake, volcanic eruption, tidal wave, landslide, hail, force majeure, or any other physical event however caused, unless such **claim** otherwise triggers coverage under Coverages E or G.

O.  any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to coupons, prize discounts, prizes, awards or any other valuable consideration given in excess of the total contracted or expected amount.

P.  any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to the actual or alleged inaccurate, inadequate, or incomplete description of the price of goods, products, or services.

Q.  any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to an **insured's** cost guarantees, cost representations, contract price or cost estimates being exceeded.

R.  any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to the violation of any economic or trade sanctions by the United States government including, but not limited to, sanctions administered and enforced by the United States Treasury Department's Office of Foreign Assets Control ('OFAC').

S.  any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to any breach of any express, implied, actual or constructive contract, warranty, guarantee or promise. This exclusion shall not apply to:

1.  any liability or obligation that any **insured** would have in the absence of such contract or agreement;

2.  unintentional breach of contract; or

3.  a breach of an **insured business's** privacy policy.

T.  any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to the liability of others assumed by an **insured** under any contract or agreement, either oral or written. This exclusion shall not apply:

1.  to the extent such **insured** would have been liable in the absence of such contract or agreement; or

2.  with respect to any **multimedia peril**, **security and privacy wrongful act**, **security breach**, **privacy breach** or **breach of privacy regulations**, to the extent an **insured business** has assumed such liability in the form of a written hold harmless or indemnity agreement that predates the first **multimedia peril**, **security and privacy wrongful act**, **security breach**, **privacy breach** or **breach of privacy regulations**.

U.  any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to:

1.  any presence of **pollutants** or contamination of any kind;

2.  any actual, alleged, or threatened discharge, dispersal, release, or escape of **pollutants** or contamination of any kind including, but not limited to, solid, liquid, gaseous, or thermal irritants or contaminants including asbestos, smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste (waste includes materials to be recycled, reconditioned, or reclaimed), wherever such occurs, whether or not such results from an **insured's** activities or the activities of others, is sudden or gradual, and is accidental, intended, foreseeable, expected, fortuitous, or inevitable;

3.  any governmental or regulatory directive or request that an **insured business** or anyone acting under an **insured business's** direction or control test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize said **pollutants**; or

4.  any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize **pollutants** or in any way respond to or assess the effects of **pollutants** or contamination of any kind.

V.  any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to the actual or alleged loss of value of any securities.

W.  any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to caused by or resulting from unauthorized trading. "Unauthorized trading" means trading by an **insured**, which at the time of the trade is:

1.  in excess of permitted financial limits; or

2.  outside of permitted product lines.

X.  any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to the actual or alleged purchase, sale, offer of, or solicitation of an offer to purchase or sell securities, or violation of any securities law including, but not limited to, the provisions of the Securities Act of 1933, the Securities Exchange Act of 1934, the Sarbanes-Oxley Act of 2002, or any regulation promulgated under the foregoing statutes, or any federal, state, local, or foreign laws similar to the foregoing statutes, including 'Blue Sky' laws, whether such law is statutory, regulatory, or common law.

Y.  any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to the actual or alleged government enforcement of any state or federal regulation including, but not limited to, regulations promulgated by the United States Federal Trade Commission, Federal Communications Commission, or the Securities and Exchange Commission. This exclusion does not apply to any **claim** triggering coverage under Coverage C.

Z.  any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to any employer-**employee** relations, policies, practices, acts or omissions; any actual or alleged refusal to employ any person; or any misconduct with respect to **employees**.

AA. any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to any actual or alleged harassment or discrimination of any kind including, but not limited to, age, color, race, gender, creed, national origin, marital status, sexual preferences, disability or pregnancy.

BB. any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to the violation of any pension, healthcare, welfare, profit sharing, mutual, or investment plans, funds, or trusts; or any violation of any provision of the Employee Retirement Income Security Act of 1974 and its amendments and/or the Pension Protection Act of 2006 and its amendments, or any regulation, ruling, or order issued pursuant thereto.

CC. any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to:

   1.  strikes or similar labor actions;

   2.  war, invasion, act of foreign enemy, hostilities or warlike operations (whether declared or not), civil war, mutiny, civil commotion assuming the proportions of, or amounting to, a popular uprising, military uprising, insurrection, rebellion, revolution, military or usurped power, or any action taken to hinder or defend against these actions;

   3.  confiscation or nationalization or requisition or destruction of, or damage to, property by or under the order of any government or public or local authority; or

   4.  any action taken in controlling, preventing, suppressing or in any way relating to any of 1. through 3. Above.

   This exclusion shall not apply to an **act of terrorism**.

DD. any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to an **insured's** commercial decision to cease providing a particular product or service, but only if the **insured** is contractually obligated to continue providing such products or services.

EE. any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to gambling or pornography or the sale or provision of prohibited, restricted or regulated items including, but not limited to, alcoholic beverages, tobacco or drugs.

FF. any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to:

   1.  any fine or penalty arising out of any agreement by an **insured** to comply with or follow the Payment Card Industry Standard or any Payment Card Company Rules; or

   2.  the implementation, maintenance, or compliance with any security measures or standards relating to any payment card data including, but not limited to, any fine or penalty imposed by a payment card company on a merchant bank or payment processor that an **insured** has paid or agreed to reimburse or indemnify.

   This exclusion shall not apply to civil penalties and fines to the extent insurable by law arising out of an otherwise covered **claim** under Coverage C.

GG. any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to any actual or alleged unfair competition, price fixing, antitrust violations, deceptive trade practices, or restraint of trade or antitrust statute, legislation, or regulation.

HH. any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to any actual or alleged infringement of any patent or the misappropriation, theft, copying, display or publication of any trade secret by, or with the active cooperation, participation or assistance of any **insured**.

II. any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to:

1. any wear or tear, latent or time-delayed damage arising from services an **insured** provided prior to the **policy period**;

2. gradual deterioration of an **insured business's computer system**; or

3. an **insured business's** failure, or the failure of those acting on an **insured business's** behalf, to maintain any **computer system** or network, computer software or any other equipment.

JJ. any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to the manufacturing, mining, use, sale, installation, removal, distribution of, or exposure to, asbestos, materials or products containing asbestos or asbestos fibers or dust or any **claim** alleging **bodily injury** or **property damage** arising out of asbestos or asbestos containing materials including, but not limited to:

1. inhaling, ingesting, or being physically exposed to asbestos or goods or products containing asbestos;

2. the use of asbestos in constructing or manufacturing any goods, products, or structures;

3. the removal of asbestos from any goods, products or structures;

4. the manufacture, encapsulation, transportation, storage, handling, distribution, sale, application, mining, consumption, or disposal of asbestos or goods or products containing asbestos;

5. any governmental direction or request that the **insured** or any other party, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize asbestos or asbestos containing products; or

6. manufacturing or mining or the use, sale, installation, removal, distribution of or exposure to asbestos, materials, or products containing asbestos, asbestos fibers or dust.

KK. any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to the use of programs that are not **operational programs**.

LL. any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to the use of programs that are not **delivered programs**.

MM. any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to any **insured's** intentional use of illegal or unlicensed programs that are in violation of the provisions or laws referring to software protection.

NN. any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to the confiscation, commandeering, requisition, destruction of, or damage to, **computer hardware** by order of a government de jure or de facto, or by any public authority for whatever reason.

OO. any **claim** alleging **bodily injury** or **property damage** resulting from exposure to or the manifestation, release, dispersal, seepage, migration, discharge, appearance, presence, reproduction or growth of mold, mildew, spores, mycotoxins, fungi, organic pathogens, or other micro organisms of any type, nature, or description, including:

1. any cost, expense, or charge to test, monitor, clean up, remediate, remove contain, treat, detoxify, neutralize, rehabilitate, or in any way respond to or assess the effects of mold, mildew, spores, mycotoxins, fungi, organic pathogens, or other micro organisms of any type, nature, or description; or

2. any resulting cost, expense, charge, fine or penalty, incurred, sustained, or imposed by order, direction, request, or agreement of any court, governmental agency, or any civil, public, or military authority.

With respect to this exclusion, 'organic pathogens' means any organic irritant or contaminant including, but not limited to, mold, fungus, bacteria, virus, or their byproducts such as mycotoxins, mildew, or biogenic aerosol. 'Organic pathogens' include, but are not limited to, Aspergillus, Penicillium, Stachybotrys Chartarum, Stachybotrys Atra, Trichodema, and Fusarium Memnoniella.

PP. any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to the existence, emission or discharge of any electromagnetic field, electromagnetic radiation, or electromagnetism

that actually or allegedly affects the health, safety or condition of any person or the environment or that affects the value, marketability, condition or use of any property.

QQ. any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to any legal liability directly or indirectly caused by, involving, attributed to, arising from:

1. ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel; or

2. the radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof.

RR. any **claim** based upon, arising out of, directly or indirectly resulting from, in any way involving or attributable to any criminal prosecution against an **insured**. For purposes of this exclusion, "criminal prosecution" shall mean any governmental action for enforcement of criminal laws, including those offenses for which conviction could result in imprisonment and/or criminal fine.

SS. with respect to Coverage E.1. Loss of Digital Assets:

1. any amount incurred in restoring, updating or replacing **digital assets** to a level beyond that which existed prior to the **covered cause of loss**;

2. physical damage to the **computer hardware** or data center, other than that covered under **covered cause of loss**, under paragraph E.1.a.;

3. contractual penalties or consequential damages;

4. any liability to third parties for whatever reason, including legal costs and expenses of any type;

5. fines or penalties imposed by law;

6. the economic or market value of **digital assets**, unless the **company** has agreed by endorsement to reimburse an **insured business** based upon an agreed value amount for defined categories or specific **digital assets**;

7. costs or expenses incurred to identify, patch or remediate software program errors or **computer system** vulnerabilities;

8. costs to upgrade, redesign, reconfigure or maintain an **insured business's computer system** to a level of functionality beyond that which existed prior to the **covered cause of loss**; or

9. any losses paid under Coverage E.2. Non-Physical Business Interruption and Extra Expense.

TT. with respect to Coverage E.2. Non-Physical Business Interruption and Extra Expense:

1. any loss arising out of a physical cause or natural peril, including, but not limited to fire, wind, water, flood, subsidence or earthquake, which results in physical damage to **computer hardware** and/or any data center;

2. any loss expense arising out of updating or replacing **digital assets** to a level beyond that which existed prior to the **covered cause of loss**;

3. contractual penalties or consequential damages;

4. any liability to third parties for whatever reason, including legal costs and expenses of any type;

5. fines or penalties imposed by law;

6. costs or expenses incurred to identify, patch or remediate software program errors or **computer system** vulnerabilities;

7. loss of goodwill and reputational harm;

8. costs to upgrade, redesign, reconfigure or maintain an **insured business's computer system** to a level of functionality beyond that which existed prior to the **covered cause of loss**; or

9. any losses paid under Coverage E.1. Loss of Digital Assets.

UU. with respect to Coverage H:

1. any amounts incurred in connection with a **shadow audit** not previously approved by the **company**;

 © 2015 MedPro Group. All rights reserved.

2. **restitution** or repayment of monies received by an **insured**, to which the **insured** was not entitled as a result of billing errors made by such **insured**;

3. any amounts incurred by a consulting professional whose services were not previously approved by the **company**; or

4. billing errors for medical services or items which are not provided or prescribed by the **First Named Insured** or any subsidiary.

VV. with respect to Coverage M:

1. any loss, cost, liability or expense incurred by the **insured business** in an effort to re-establish the **reputation** of the **insured business**, other than **public relations expenses**;

2. any loss, cost, liability or expense incurred in any **claim** that is insured by any other insurance, except excess insurance;

3. any loss, cost, liability or expense incurred in connection with an **adverse media report** that also affects or refers in similar terms to a general security issue, an industry or specific competitors of an **insured business**, without any specific allegations regarding an **insured business's** breach of data protection of its customers;

4. any civil or regulatory liability to third parties for whatever reason, including legal costs and expenses of any type;

5. contractual penalties or consequential damages;

6. **customer notification expenses**;

7. fines or penalties imposed by law or regulation; or

8. any losses paid under Coverage D.


## III.LIMITS OF LIABILITY AND RETENTIONS

A. The Limits of Liability applicable to each Coverage of this Coverage Part is the **company's** maximum Limit of Liability, including **claim expenses** where applicable, for each **claim** first made during the **policy period** under each Coverage and in the aggregate for all **claims** first made during the **policy period** under each Coverage, regardless of the number of:

1. claimants;

2. **claims**; or

3. **insureds** involved.

B. The Aggregate Limit for this Coverage Part is the **company's** maximum Limit of Liability, including **claim expenses** where applicable, for all **claims** first made during the **policy period** under this Coverage Part, regardless of the number of:

1. claimants;

2. **claims**;

3. **insureds** involved; or

4. Coverages under this Coverage Part.

C. All payments made under this Coverage Part will reduce the Aggregate Limit for this Coverage Part. In no event will the **company** pay more than the Aggregate Limit for this Coverage Part.

D. All **claims** made under any one Coverage, which arise out of the same, related or continuing acts, facts, events or circumstances, without regard to the number of **insureds**, **claims**, or claimants, shall be considered a single **claim** and only one Limit of Liability and **retention** will apply to such **claim**. Such **claim** shall be deemed to be first made at the earliest of the following times:

1. the time at which the earliest **claim** arising out of the same, related or continuing acts, facts, events or circumstances is first made; or

                   © 2015 MedPro Group. All rights reserved.

2. the time at which the **claim** arising out of the same, related or continuing acts, facts, events or circumstances shall be deemed to have been made pursuant to Section IV., A.2. of this Coverage Part.

E. In the event that any **claim** shall be covered, in whole or in part, under two or more Coverages of this Coverage Part, the total applicable Limit of Liability shall not exceed the single largest applicable Limit of Liability. Such largest applicable Limit of Liability shall apply only once to such **claim**. The **company** has the sole discretion to allocate **claims** paid, if any, against the appropriate Limit of Liability.

F. The Limits of Liability for the **extended reporting period**, if exercised, shall be part of, and not in addition to, the Limits of Liability applicable to this Coverage Part. The exercise of the **extended reporting period** shall not in any way increase or reinstate the Limits of Liability applicable to this Coverage Part.

G. The applicable **retention** amount for each Coverage of this Coverage Part shall apply separately to each **claim**. The **retention** shall be satisfied by an **insured's** monetary payments of any amounts covered under this Coverage Part, including **claim expenses** where applicable. If a **claim** attaches to more than one Coverage of this Coverage Part, only the highest **retention** applies.

H. An **insured's** payment of the applicable **retention** is a condition precedent to payment by the **company** of any amounts covered under this Coverage Part, and the **company** shall only be liable for the amount in excess of such **retention**, not to exceed the total applicable Limit of Liability. The **insured** shall make direct payments within the **retention** to the appropriate parties designated by the **company**.

I. With respect to Coverages E.1. and G, the **time retention** shall apply to each **period of restoration**. Once the **time retention** is met, the **insured** will be responsible to pay any co-insurance percentage or **retention** applicable to Coverages E.1. and G.

## IV. <u>ADDITIONAL CONDITIONS</u>

In addition to the terms contained in the Conditions section of the Common Policy Provisions and Conditions, the following conditions apply to this Coverage Part:

A. NOTICE PROVISIONS

1. <u>Notice of Claim.</u>

   Except as otherwise provided in any Coverage of this Coverage Part, the Chief Information Officer, Chief Technology Officer, Chief Security Officer, Risk Manager or General Counsel of the **insured business** shall give to the **company** written notice of any **claim** during the **policy period**, but in no event later than 30 days after expiration of the **policy period**.

2. <u>Notice of Potential Claim.</u>

   If, during the **policy period**, an **insured** first becomes aware of any acts, facts or circumstances that could reasonably be the basis for a **claim**, and if the Chief Information Officer, Chief Technology Officer, Chief Security Officer, Risk Manager or General Counsel of the **insured business** gives the **company** written notice during the **policy period**, of:

   a. specific details of the acts, facts or circumstances that could reasonably be the basis for a **claim**;

   b. possible **damages**, penalties or other amounts potentially covered under this Coverage Part that may result or that have resulted from the acts, facts or circumstances; and

   c. details regarding how the **insured** first became aware of the acts, facts or circumstances,

   then any **claim** made subsequently arising out of such acts, facts or circumstances shall be deemed to have been made at the date the written notice complying with the above requirements was first given to the **company**.

B. LOSS DETERMINATION UNDER COVERAGE E

1. <u>Loss Determination under Coverage E.1.</u>

   For any and all coverage(s) provided under Coverage E.1., **digital assets loss** will be determined as follows:

   a. if the impacted **digital asset** was purchased from a third party, the **company** will pay only the lesser of

 © 2015 MedPro Group. All rights reserved.

the original purchase price of the **digital asset** or the reasonable and necessary **digital assets loss**; or

b. if it is determined that the **digital assets** cannot be replaced, restored or recreated, then the **company** will only reimburse the actual and necessary **digital assets loss** incurred up to such determination.

2. <u>Loss Determination under Coverage E.2.</u>

For any and all coverage(s) provided under Coverage E.2., **income loss** will be determined as the reduction of the **insured business's income** during the **period of restoration**, which is:

a. an **insured business's** net **income** (**net profit** or loss before income taxes) that would have been reasonably projected, but which has been lost directly as a result of total or partial interruption, degradation in service or failure of the **insured business's computer system** caused directly by a **covered cause of loss**. The revenue projection will take into account the prior experience of the **insured business's** business during the previous 12 months immediately before the date of the **covered cause of loss** and the probable experience had no **covered cause of loss** occurred. Revenues include the amount of money paid or payable to the **insured business** for goods, products or services sold, delivered or rendered in the normal course of the **insured business's** business. Revenue projection will be reduced by the extent to which the **insured business** uses substitute methods, facilities or personnel to maintain its revenue stream. The **company** will take into consideration the **insured business's** documentation of the trends in the business and for variations in or other circumstances affecting the business before or after the **covered cause of loss**, which would have affected the **insured business's** business had no **covered cause of loss** occurred; and

b. any fixed operating expenses (including ordinary payroll) incurred, but only to the extent that such operating expenses must continue during the **period of restoration**.

C. LOSS DETERMINATION UNDER COVERAGE M

For any and all coverage(s) provided under Coverage M, the net loss of value suffered by the **insured business** during a **period of indemnity** shall be assessed and ascertained by auditors or adjusters appointed by the **company**. Their assessment in respect of the loss of **net profit** shall be based upon the difference between the anticipated **net profit** for the **period of indemnity**, as established during the pre-bind underwriting process, and the actual **net profit** for the **period of indemnity**. An **insured business** will provide accounting information to identify the potential loss of the **insured business's reputation** insured hereunder following an **adverse media report**.

D. EXTENDED REPORTING PERIOD

1. If this Coverage Part is cancelled or non-renewed by the **First Named Insured** or if the **company** refuses to renew the policy for reasons other than non-payment of premium or noncompliance with the terms and conditions of this Coverage Part, then the **First Named Insured** shall have the right, upon payment of an additional premium, to an extension of the coverage granted by this Coverage Part with respect to any **Claim** first made during the period of time elected after the effective date of such cancellation or, in the event of such refusal to renew, after the policy's expiration date, but only with respect to:

a. any **multimedia peril** under Coverage A;

b. any **security and privacy wrongful act** under Coverage B;

c. any **security breach**, **privacy breach** or **breach of privacy regulations** under Coverage C;

d. any **covered cause of loss** under Coverage E;

e. any **cyber extortion threat** under Coverage F;

f. any **act of terrorism** under Coverage G;

g. any acts, errors or omissions under Coverages H and L;

h. any **evacuation** under Coverage I;

i. any **disinfection event** under Coverage J;

j. any **public relations event** under Coverage K; or

**Page 73 of 104**

k.   any **data protection breach** under Coverage M;

committed before the effective date of cancellation or, in the event of a refusal to renew, before the policy's expiration date.

2.   The quotation of a different premium, **retention** or Limits of Liability for renewal does not constitute a cancellation or refusal to renew.

3.   As a condition precedent to the right to purchase the **extended reporting period**, the total premium for the policy must have been paid. The right to purchase the **extended reporting period** shall terminate unless written notice, together with full payment of the premium for the **extended reporting period**, is received by the **company** within 30 days after the effective date of cancellation, or, in the event of a refusal to renew, within 30 days after the Policy expiration date. If such notice and premium payment is not so given to the **company**, there shall be no right to purchase the **extended reporting period**.

4.   In the event of the purchase of the **extended reporting period**, the entire premium therefore shall be deemed earned at its commencement.

5.   The exercise of the **extended reporting period** shall not in any way increase the **company's** Limits of Liability under this Coverage Part.


## V.   ADDITIONAL DEFINITIONS

Only with respect to coverage provided under this Coverage Part, the following additional definitions apply:

A.   **Act of terrorism** means an act, including but not limited to, the use of force or violence and/or the threat thereof, by any person or group(s) of persons, whether acting alone or on behalf of, or in connection with any organization(s) or government(s), which is committed for political, religious, ideological, or similar purposes including the intention to influence any government and/or put the public, or any section of the public, in fear.

B.   **Administrator** means an owner, partner, stockholder, director, trustee, executive officer, medical director, department head or faculty member of an **insured business**.

C.   **Adverse media report** means:

1.   with respect to Coverage D, any unpredictable report or communication of an actual or potential **security breach**, **privacy breach** or **breach of privacy regulations**, which has been publicized through any media channel including, but not limited to, television, **print media**, radio or electronic networks, the **internet**, and/or electronic mail, that threatens material damage to an **insured business's reputation** and which results in the incurring of **privacy breach response costs**;

2.   with respect to Coverage M, extracts or completed versions of communications, which have been publicized through any media channel including, but not limited to, television, **print media**, radio or electronic networks, the **internet**, and/or electronic mail, that cause negative perception or harm to an **insured business's reputation**, leading to **income loss**.

D.   **Assumed under contract** means liability for **damages** resulting from a **multimedia peril** where such liability has been assumed by an **insured** in the form of a written hold harmless or indemnity agreement that predates the first **multimedia peril**.


E.   **Billing errors proceeding** means:

1.   civil or administrative investigations or other civil or administrative proceedings instituted against an **insured** by a **qui tam plaintiff**, **government entity** or **commercial payer** alleging the presentation of, causing or allowing to be presented, or being liable for the presentation of any actual or alleged erroneous billings by an **insured** to a government health benefit payer or **commercial payer** from which the **insured** seeks and/or has received payment or reimbursement for medical services or items provided or prescribed by the **insured**; or

2.   any of 1. above instituted against an **insured** as a result of **voluntary self disclosure**.

F.   **BPO service provider** means any third party independent contractor that provides business process outsourcing

services for the benefit of an **insured business** under a written contract with the **insured business**, including, but not limited to, call center services, fulfillment services, and logistical support.

G. **Breach of privacy regulations** means a breach by an **insured**, a **BPO service provider** or **outsourced IT service provider** of any of the following regulations as well as similar statutes and regulations, as they currently exist and as amended, associated with the confidentiality, access, control, and use of personally identifiable, non-public information:

1. Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191), known as HIPAA, and related state medical privacy laws;

2. Gramm-Leach-Bliley Act of 1999 (G-L-B), also known as the Financial Services Modernization Act of 1999;

3. state and Federal statutes and regulations regarding the security and privacy of consumer information;

4. governmental privacy protection regulations or laws associated with the control and use of personal information;

5. privacy provisions of consumer protection laws, including the Federal Fair Credit Reporting Act (FCRA) and similar state laws;

6. Children's Online Privacy Protection Act or similar laws; and

7. the EU Data Protection Act or other similar privacy laws worldwide.

H. **Claim** means:

1. with respect to Coverages A or B:

   a. a written demand received by an **insured** for monetary damages or non-monetary relief against any **insured**;

   b. a written request to toll or waive a statute of limitations relating to a potential **claim** against an **insured**;

   c. the service of a civil suit or the institution of arbitration proceedings against an **insured** seeking **damages** or a temporary restraining order or a preliminary or permanent injunction against an **insured**

   A **claim** under Coverages A or B will be deemed to be first made when notice of any of the foregoing is first received by an **insured**.

2. with respect to Coverage C, a **privacy regulatory proceeding** instituted against an **insured**. A **claim** under Coverage C will be deemed to be first made when it is first received by an **insured**.

3. with respect to Coverage D, a written report by an **insured** to the **company** of an **adverse media report**, **security breach**, **privacy breach** or **breach of privacy regulations**. A **claim** under Coverage D will be deemed to be first made when such written report is received by the **company**;

4. with respect to Coverage E, a written report by an **insured** to the **company** of the occurrence of a **covered cause of loss**. A **claim** under Coverage E will be deemed to be first made when such written report is received by the **company**.

5. with respect to Coverage F, a written report by an **insured** to the **company** of a **cyber extortion threat**. A **claim** under Coverage F will be deemed to be first made when such written report is received by the **company**.

6. with respect to Coverage G, a written report by an **insured** to the **company** of an **act of terrorism**. A **claim** under Coverage G will be deemed to be first made when such written report is received by the **company**.

7. with respect to Coverages H and L, a **regulatory proceeding** instituted against an **insured**. A **claim** under Coverage H will be deemed to be first made when it is first received by an **insured**.

8. with respect to Coverages I, J, K and M, a written report by an **insured** to the **company** of an **evacuation**, a **disinfection event**, a **public relations event** or **data protection breach**. A **claim** under Coverages I, J, K and M will be deemed to be first made when such written report is received by the **company**.

I. **Claims expenses** means:

1. reasonable and necessary fees incurred with the **company's** consent and charged by an attorney(s) designated by the **company** to defend a **claim**; and

2. all other reasonable and necessary fees, costs, and expenses resulting from the investigation, adjustment, defense, and appeal of a **claim**, if incurred by the **company**, or by an **insured** with the **company's** prior written consent.

**Claims expenses** do not include any wages, salaries, fees, overhead or other charges incurred by, or paid to, any **insured** for any time spent in cooperating in the defense and investigation of any **claim** or any circumstance which might lead to a **claim** notified under this Coverage Part. With respect to Coverage H, **claim expenses** do not include the costs associated with the adoption and implementation of any corporate integrity agreement, compliance program or similar provision regarding the operations of an **insured's** business, negotiated as part of a settlement with or by order of a **government entity**.

J. **Commercial payer** means ay private health insurance company.

K. **Committee member** means a person serving as a member of a committee or board formed or controlled by an **insured business**. **Committee member** also includes any person executing the directives of such a committee or board.

L. **Computer hardware** means the physical components of any **computer system** including CPU's, memory, storage devices, storage media, and input/output devices and other peripheral devices and components, including, but not limited to, cable, connectors, fiber optics, wire, power supply units, keyboards, display monitors and audio speakers.

M. **Computer program(s)** means an organized set of instructions that, when executed, causes a computer to behave in a predetermined manner. **Computer program(s)** include, but are not limited to, communications, networking, operating system and related **computer programs** used to create, maintain, process, retrieve, store and/or transmit electronic **data**.

N. **Computer system(s)** means interconnected electronic, wireless, web or similar systems (including all **computer hardware** and software) used to process and store **data** or information in an analogue, digital, electronic or wireless format including, but not limited to, **computer programs**, electronic data, operating systems, **firmware**, servers, media libraries, associated input and output devices, mobile devices, networking equipment, websites, extranets, off line storage facilities (to the extent that they hold electronic **data**), and electronic backup equipment.

O. **Computer virus** means a program that possesses the ability to create replicas of its self (commonly known as 'auto-reproduction' program) within other programs or operating system areas or which is capable of spreading copies of its self wholly or partly to other **computer systems**.

P. **Counseling** means formal therapy rendered to a patient by a licensed professional approved and credentialed by the **insured** to provide such therapy.

Q. **Covered causes of loss** means:

1. Accidental Damage or Destruction

    a. accidental physical damage or destruction of **electronic media**, so that stored **digital assets** are no longer machine-readable;

    b. accidental damage or destruction of **computer hardware**, so that stored **data** is no longer machine-readable;

    c. failure in power supply or under/over voltage only if such power supply is under the direct operational control of an **insured business**. Direct operational control includes back-up generators;

    d. **programming error** of **delivered programs**; or

    e. electrostatic build-up and static electricity.

2. Administrative or Operational Mistakes

    An accidental, unintentional or negligent act, mistake, error or omission by an **insured**, a **BPO service provider** or **outsourced IT service provider** in:

    a. the entry, or modification of an **insured business's** electronic **data**, which causes damage to such **data**;

    b. the creation, handling, development, modification or maintenance of an **insured business's digital assets**; or

    c.  on-going operation or maintenance of an **insured business's computer system**, excluding the design, architecture, or configuration of an **insured business's computer system**;

3.  <u>Computer Crime and Computer Attacks</u>

An act, mistake, negligent error or omission by an **insured**, a **BPO service provider** or **outsourced IT service provider** in the operation of an **insured business's computer system** or in the handling of an **insured business's digital assets**, which fails to prevent or hinder any of the following attacks intended to maliciously cause harm to an **insured business's computer system**:

    a.  a **denial of service attack**;

    b.  **malicious code**;

    c.  **unauthorized access**; or

    d.  **unauthorized use**.

R.  **Customer notification expenses** means those reasonable and necessary legal expenses, forensic and investigation fees, **public relations expenses**, postage expenses, and related advertising expenses an **insured** incurs, with the **company's** prior written consent, to comply with governmental privacy legislation mandating customer notification in the event of a **security breach**, **privacy breach**, or **breach of privacy regulations**.

S.  **Customer support and credit monitoring expenses** means those reasonable and necessary expenses an **insured** incurs, with the **company's** prior written consent, for the provision of customer support activity, including the provision of credit file monitoring services and identity theft education and assistance for up to a period of 12 months from the date of enrollment in such credit file monitoring services, in the event of a **privacy breach**.

T.  **Cyber extortion expenses** means all reasonable and necessary costs and expenses an **insured business** incurs, with the **company's** prior written consent, as a direct result of a **cyber extortion threat**, other than **cyber extortion monies**.

U.  **Cyber extortion monies** means any funds or property paid by an **insured business**, with the **company's** prior written consent, to a person(s) or entity(ies) reasonably believed to be responsible for a **cyber extortion threat**, for the purpose of terminating such a **cyber extortion threat**.

V.  **Cyber extortion threat** means a credible threat or series of related credible threats, including, but not limited to, a demand for **cyber extortion monies**, directed at an **insured business** to:

1.  release, divulge, disseminate, destroy or use the confidential information of a third party taken from an **insured** as a result of **unauthorized access** to, or **unauthorized use** of, an **insured business's computer system**;

2.  introduce **malicious code** into an **insured business's computer system**;

3.  corrupt, damage or destroy an **insured business's computer system**;

4.  restrict or hinder access to an **insured business's computer system**, including, but not limited to, the threat of a **denial of service attack**; or

5.  electronically communicate with an **insured business's** customers and falsely claim to be the **insured business** or to be acting under the **insured business's** direction in order to falsely obtain personal confidential information of the **insured business's** customers (also known as "pharming," "phishing," or other types of false communications).

W.  **Damages** mean a monetary judgment, award or settlement, including prejudgment and post judgment interest and punitive **damages** to the extent insurable under the law pursuant to which this Coverage Part is construed.

**Damages** do not include:

1.  any **insured's** future profits or royalties, restitution or disgorgement of any **insured's** profits;

2.  the costs to comply with orders granting injunctive or non-monetary relief, including specific performance, or any agreement to provide such relief;

3.  loss of any **insured's** fees or profits, return or offset of any **insured's** fees or charges or any **insured's** commissions or royalties provided or contracted to be provided;

4.   taxes, fines or penalties or sanctions;

5.   the multiple portion of any multiplied **damages**;

6.   liquidated **damages**;

7.   any amount which an **insured** is not financially or legally obligated to pay;

8.   disgorgement of any remuneration or financial advantage to which an **insured** was not legally entitled;

9.   settlements negotiated without the **company's** consent; or

10.  monetary judgments, awards, settlements or any other amounts which are uninsurable under the law pursuant to which this Coverage Part is construed or any legal fees and costs awarded pursuant to such judgments, awards or settlements.

X.  **Data** means any machine readable information, including ready for use programs, applications, account, customer, health and medical information or electronic information subject to back up procedures, irrespective of the way it is used and rendered including, but not limited to, text or digital media.

Y.  **Data protection breach** means the appearance of any **adverse media report** that there has been a failure, error, omission, neglect or breach of duty by an **insured**, a **BPO service provider** or **outsourced IT service provider** to protect the security and confidentiality of non-public proprietary corporate information, personally identifiable non-public information of customers or other personal or confidential paper records of customers.

Z.  **Delivered programs** means programs, applications, and software where the development stage has been finalized, having passed all test-runs and been proven successful in a live environment.

AA. **Denial of service attack** means an event caused by unauthorized or unexpected interference or a malicious attack intended by the perpetrator to overwhelm the capacity of a **computer system** by sending an excessive volume of electronic **data** to such **computer system** in order to prevent authorized access to such **computer system**.

BB. **Digital assets** mean **data** and **computer programs** that exist in a **computer system**. **Digital assets** do not include **computer hardware**.

CC. **Digital assets loss** means reasonable and necessary expenses and costs an **insured business** incurs to replace, recreate or restore **digital assets** to the same state and with the same contents immediately before it was damaged, destroyed, altered, misused or stolen, including expenses for materials and machine time as well as costs associated with restoration, recreation and replacement. **Digital Assets Loss** also includes amounts representing **employee** work time to replace, recreate or restore **digital assets** which shall be determined on a predefined billable hours or per hour basis as based upon the **first named insured's** schedule of **employee** billable hours.

DD. **Disinfection event** means any case or series of cases of hospital-borne infectious bacteria, virus or disease that requires reporting of such case or series of cases to any local, state or federal governmental or healthcare oversight agency or entity.

EE. **Disinfection expense** means reasonable fees and costs incurred by an **insured business** to clean and disinfect such **insured business** as a result of any **disinfection event**. **Disinfection expense** includes costs to:

1.   engage third party providers of cleaning/disinfection services; and

2.   notify patients, visitors or other potentially affected persons.

   **Disinfection expense** does not include any salaries, overhead, fees, loss of earnings or benefit expenses incurred by, or paid to, any **insured** or the cost of cleaning and/or disinfecting supplies or products.

FF. **E-Discovery claim expenses** means **claim expenses** relating to the collection, processing, converting, reviewing and producing electronically stored information, which is performed solely by an e-discovery service provider designated by the **company** in connection with the investigation and defense of any **regulatory proceeding**.

GG. **E-Discovery consulting services** means e-discovery readiness assessment and consulting services rendered solely by an e-discovery service provider designated by the **company** in connection with the investigation and

© 2015 MedPro Group. All rights reserved.

defense of any **regulatory proceeding**.

HH. **E-Discovery regulatory investigation expenses** means **claim expenses** incurred by an **insured business** for services rendered solely by an e-discovery service provider designated by the **company** in the collection, processing, converting, reviewing and producing electronically stored information in connection with any **regulatory proceeding**.

II. **Electronic media** means floppy disks, CD ROMs, hard drives, magnetic tapes, magnetic discs, or any other media on which electronic **data** is recorded or stored.

JJ. **Employee(s)** means any person employed by, or under contract with, an **insured business** at the time of a **claim**. **Employees** include:

1. any authorized volunteer worker;

2. any physician or dentist, including residents; and

3. any certified registered nurse anesthetist, nurse midwife, nurse practitioner, physician's assistant, podiatrist or surgical assistant.

**Employees** do not include any **administrator**, **committee member** or **student**.

KK. **EMTALA proceeding** means proceedings instituted against an **insured** by a **government entity** alleging violations of the Emergency Medical Treatment and Labor Act (EMTALA).

LL. **Evacuation** means:

1. the removal of 25% or more of an **insured business's** patients away from the **insured business's** premises to any other premises as a result of any natural or man-made occurrence that, in the reasonable judgment of the **insured business's** management staff, causes or could potentially cause such **insured business** to be unsafe for such patients; and

2. solely with respect to an **insured business's** patients as described in 1. above, the return of such patients to the **insured business's** premises when such premises are deemed safe for occupancy.

MM. **Evacuation expense** means reasonable costs incurred in connection with an **evacuation**, including the costs of transporting and lodging patients. **Evacuation expense** does not include any salaries, overhead, fees, loss of earnings or benefit expenses incurred by, or paid to, any **insured**.

NN. **Firmware** means the fixed programs that internally control basic low-level operations in a device.

OO. **Government entity** means:

1. any department, agency, task force or other organization created by any U.S. federal or state law, regulation, rule or executive order;

2. any department, agency, task force or other organization operated, funded or staffed, in whole or in part, by the U.S. federal government or any state government; or

3. any organization operating as a Medicare Integrity Program Contractor.

PP. **Income** means all income of an **insured business** within any given period which is derived from the exploitation of the **insured business's reputation** and/or from the **insured business's** business activities, products or services.

QQ. **Income loss** means financial loss sustained by an **insured business**, as determined in accordance with the provisions of Coverage E.2., Non-Physical Business Interruption and Extra Expense.

RR. **Increase in cost of working** means the additional expenditure (other than any advertising or marketing costs or the like undertaken to rehabilitate an **insured business's reputation** and/or any legal costs or expenses) necessarily and reasonably incurred by an **insured business** for the sole purpose of avoiding or minimizing a net trading loss or a reduction in **net profit** which would otherwise have occurred during the **policy period** as a consequence of a **data protection breach**. The amount of such additional expenditure recoverable hereunder shall in no case exceed the amount of the net trading loss or reduction in **net profit** thereby avoided.

SS. **Insured business** means any corporation, entity, partnership or professional association shown on the Declarations or listed in a Schedule of Named Insureds applicable to this Coverage Part.

TT. **Insured business's computer system** means:

1. a **computer system** operated by and either owned by, or leased to an **insured business**;

2. with respect to Coverage B only, a **computer system** operated by a **BPO service provider** or **outsourced IT service provider** and used for the purpose of providing hosted computer application services to an **insured business** or for processing, maintaining, hosting or storing an **insured business's** electronic **data**, pursuant to a written contract with the **insured business** for such services.

UU. **Internet** means the worldwide public network of computers which enables the transmission of electronic **data** between different users, including a private communications network existing within a shared or public network platform.

VV. **Interruption expenses** means those expenses, excluding **special expenses**, incurred by an **insured business**, in accordance with the provisions of Coverage E.2., Non-Physical Business Interruption and Extra Expense, to:

1. avoid or minimize the suspension of business as a result of the total or partial interruption, degradation in service or failure of an **insured business's computer system** caused directly by a **covered cause of loss**, which the **insured business** would not have incurred had no **covered cause of loss** occurred. **Interruption expenses** include, but are not limited to, the use of rented/leased external equipment, substitution of other work or production procedures, use of third party services or additional staff expenditures or labor costs; and/or

2. minimize or avoid a **covered cause of loss** and continue an **insured business's** business.

The amount of **interruption expenses** recoverable under subparagraph 1 above shall in no case exceed the amount by which the covered **income loss** is reduced by such incurred **interruption expenses**.

WW. **Malicious code** means software intentionally designed to insert itself and damage a **computer system** without the owner's informed consent by a variety of forms including, but not limited to, virus, worm, Trojan horses, spyware, dishonest adware, and crime-ware.

XX. **Multimedia perils** means the release of, or display of, any **electronic media** on an **insured business's internet** site or **print media** for which an **insured business** is solely responsible, which directly results in any of the following:

1. any form of defamation or other tort related to the disparagement or harm to the **reputation** or character of any person or organization, including libel, slander, product disparagement or trade libel, and infliction of emotional distress, mental anguish, outrage or outrageous conduct, if directly resulting from any of the foregoing;

2. invasion, infringement or interference with an individual's right of privacy or publicity, including false light, intrusion upon seclusion, commercial misappropriation of name, person, or likeness, and public disclosure of private facts;

3. plagiarism, piracy or misappropriation of ideas under an implied contract;

4. infringement of copyright, trademark, trade name, trade dress, title, slogan, service mark or service name; or

5. domain name infringement or improper deep-linking or framing.

YY. **Net profit** means an **insured business's** net trading profit (exclusive of all capital receipts and accretions and all outlay improperly chargeable to capital) within any given period generated from an **insured business's income** after due provision has been made for all standing and other charges including depreciation, but before the deduction of any taxation chargeable on profits.

ZZ. **Operational programs** means programs and software which are ready for operational use, having been fully developed, tested, and accepted by an **insured business**.

AAA. **Outsourced IT service provider** means a third party independent contractor that provides information technology services for the benefit of an **insured business** under a written contract with the **insured business**. Outsourced services include, but are not limited to, hosting, security management, co-location, and **data** storage.

BBB. **Period of indemnity** means the period of time elected by an **insured business** which both begins and ends within the period commencing with the date of the first **adverse media report** of a **data protection breach** and continuing thereafter for the time period specified in the policy schedule and not limited by the expiration date

© 2015 MedPro Group. All rights reserved.

of the policy. During the **period of indemnity**, coverage against any further occurrence of any **data protection breach** shall continue only until the expiration date of this policy.

CCC. **Period of restoration** means the period of time that commences on the date when the interruption, degradation or failure of an **insured business's computer system** began and ends on the later of:

1. the date when an **insured business's computer system** is restored or could have been repaired or restored with reasonable speed to the same condition, functionality and level of service that existed prior to a **covered cause of loss** plus no more than 30 consecutive days after the restoration of an **insured business's computer system** to allow for restoration of the business; or

2. 120 consecutive days after notice of a **covered cause of loss** is received by the **company**.

DDD. **Print media** means newspapers, newsletters, magazines, books and literary works in any form, brochures or other types of publications, and advertising materials, including packaging, photographs, and digital images.

EEE. **Privacy breach** means a common law breach by an **insured**, a **BPO service provider** or **outsourced IT service provider** of confidentiality, infringement or violation of any right to privacy including, but not limited to, a breach of an **insured business's** privacy policy, breach of a person's right of publicity, false light, intrusion upon a person's seclusion or public disclosure of a person's private information. A series of continuing **privacy breaches** or related or repeated **privacy breaches** shall be considered a single **privacy breach** and shall be deemed to have occurred at the time of the first such **privacy breach**.

FFF. **Privacy breach response costs** means those reasonable and necessary fees an **insured** incurs, with the **company's** prior written consent, for the employment of a public relations consultant if an **insured** reasonably considers that action is needed in order to avert or mitigate any material damage to an **insured business's reputation** that results or reasonably will result from an **adverse media report** that has been notified to the **company**.

GGG. **Privacy regulatory proceeding** means a formal civil administrative proceeding or regulatory action instituted against an **insured** by a federal, state or local governmental regulatory body for a **security breach**, **privacy breach** or **breach of privacy regulations**.

HHH. **Programming error** means an error which occurs during the development or encoding of a **computer program**, software, or application, which would, when in operation, result in a malfunction or incorrect operation of a **computer system**.

III. **Property damage** means physical injury to, impairment, destruction, or corruption of any tangible property, including the loss thereof. **Data** is not considered tangible property.

JJJ. **Public relations event** means:

1. any event in which an **insured business** has paid any:

   a. **evacuation expense**; or

   b. **disinfection expense**;

2. any event that results in the publication or broadcast of information which can reasonably be expected to damage an **insured business's reputation**, if such event is caused by:

   a. an actual or alleged act, error or omission in the furnishing or failure to furnish **treatment**;

   b. an abusive act; or

   c. workplace violence or threat of workplace violence.

KKK. **Public relations expenses** means:

1. with respect to Coverage D, reasonable and necessary expenses incurred by an **insured business** to re-establish its **reputation**, which was damaged as a direct result of an **adverse media report**.

2. with respect to Coverage K, reasonable fees and costs incurred by an **insured business** in the investigation and mitigation of a **public relations event** including the costs:

   a. of attorneys, experts and consultants, including third-party media consultants and security consultants;

© 2015 MedPro Group. All rights reserved.

    b.  to notify third parties directly affected by such **public relations event**;

    c.  incurred in the management of public relations with respect to such **public relations event**; and

    d.  **employee counseling** expenses.

3.  with respect to Coverage M, reasonable and necessary expenses incurred by an **insured business** to re-establish its **reputation**, which was damaged as a direct result of a **data protection breach**.

However, **public relations expenses** do not include:

1.  any salaries, overhead, fees, loss of earnings, or benefit expenses incurred by, or paid to, any **insured**; or

2.  **disinfection expense** or **evacuation expense**.

LLL. **Qui tam plaintiff** means a private plaintiff under the U.S. False Claims Act.

MMM. **Recoverable costs** mean, within any period in which an **insured business's net profit** is nil, any standing and other charges incurred by an **insured business** in excess of its **income**, up to, but not exceeding, 20% of its anticipated **net profit** for such period.

NNN. **Regulatory compensatory award** means a sum of money which an **insured** is legally obligated to pay as an award or fund for affected individuals, including a regulatory agency's monetary award to a third party due to an adverse judgment or settlement arising out of a **privacy regulatory proceeding**. **Regulatory compensatory award** does not include a criminal penalty or fine issued by a regulatory agency of any kind, including federal, state, or local governmental agencies.

OOO. **Regulatory fines and penalties** mean civil fines or penalties imposed against an **insured** by a **government entity** as a result of a **privacy regulatory proceeding** triggering coverage under Coverage C or a **regulatory proceeding** triggering coverage under Coverage H.

PPP. **Regulatory proceeding** means:

1.  With respect to Coverage H, any of the following instituted against an **insured** during the **policy period**:

    a.  **billing errors proceeding**;

    b.  **EMTALA proceeding**; or

    c.  **Stark proceeding**.

2.  With respect to Coverage L, any of the following instituted against an **insured** during the **policy period**:

    a.  any investigation or request for information by the Office for Human Research Protection (OHRP) under Title 45, Part 46, Code of Federal Regulations (45 CFR part 46);

    b.  any request for information by the Office of Inspector General (OIG) as part of its audits, investigations, inspections and evaluations; or

    c.  any request for information by the Food and Drug Administration (FDA) as part of its audits, investigations, inspections and evaluations.

QQQ. **Reputation** means the estimation of trust that patients, customers or clients have in doing business with an **insured business** or in purchasing the products or services of an **insured business**.

RRR. **Restitution** means repayment of fees, reimbursement, profits, charges or other benefit payments:

1.  received by an **insured** from:

    a.  a governmental health benefit payer or program, carrier or intermediary making payments as part of, or in connection with, any such program;

    b.  a **commercial payer**; or

    c.  any patient.

2.  to which such **insured** was not legally entitled by reason of a billing error or errors, the return of which is sought in a **billing errors proceeding**.

SSS. **Retention** means the amount shown on the Declarations applicable to this Coverage Part, which must be borne

 © 2015 MedPro Group. All rights reserved.

by the **insureds** uninsured and at their own risk in respect to **damages**, **claim expenses** and any other amounts covered under this Coverage Part. The **company** has no liability to pay **damages**, **claim expenses** or any other amounts covered under this Coverage Part until the **retention** has been fully paid and satisfied by the **insureds**, unless otherwise provided in this Coverage Part. The **retention** shall apply separately to each **claim** under each of the Coverages of this Coverage Part. If a **claim** attaches to more than one of the Coverages of this Coverage Part, only the highest **retention** applies.

TTT. **Retroactive date** means the date shown on the Declarations applicable to this Coverage Part that an **insured** has no coverage under Coverages A, B, C, H or L.

UUU. **Security and privacy wrongful act** mean any of the below, whether actual or alleged, but only if committed or alleged committed by an **insured** in their capacity as such:

1. the failure to prevent or hinder **unauthorized access** to or **unauthorized use** of an **insured business's computer system**; security failures; or social engineering techniques devised to trick the user into surrendering personal information ('phishing' or 'pharming') that in turn results in:

   a. the alteration, copying, corruption, destruction, deletion, or damage to electronic **data** stored on an **insured business's computer system**;

   b. theft, loss or unauthorized disclosure of electronic and non-electronic confidential commercial, corporate, personally identifiable, or private information that is in the care, custody or control of an **insured business**;

   c. theft, loss or unauthorized disclosure of electronic and non-electronic confidential commercial, corporate, personally identifiable, or private information that is in the care, custody or control of a **BPO service provider** or **outsourced IT service provider** that is holding, processing or transferring such information on behalf of an **insured business**; provided, however, that the theft, loss or unauthorized disclosure occurs while an **insured business's** written contract with such **BPO service provider** or **outsourced IT service provider** is still in effect; or

   d. **unauthorized use** of or **unauthorized access** to a **computer system** other than an **insured business's computer system**.

2. an **insured business's** failure to timely disclose a **security breach** affecting personally identifiable, nonpublic information, or the failure to dispose of personally identifiable information within the required time period, in **breach of privacy regulations** in effect now or in the future;

3. the failure to prevent the transmission of **malicious code** or **computer virus** from an **insured business's computer system** to the **computer system** of a third party;

4. a **privacy breach** or **breach of privacy regulations**;

5. the failure to prevent or hinder participation by an **insured business's computer system** in a **denial of service attack** directed against **internet** sites or the **computer system** of any third party; or

6. loss of **employee** information.

VVV. **Security breach** means:

1. **unauthorized access** to or **unauthorized use** of an **insured business's computer system**, including **unauthorized access** or **unauthorized use** resulting from the theft of a password from an **insured business's computer system** or from any **insured**;

2. a **denial of service attack** against an **insured business's computer system**; or

3. infection of an **insured business's computer system** by **malicious code** or the transmission of **malicious code** from an **insured business's computer system**,

   whether any of the foregoing is a specifically targeted attack or a generally distributed attack. A series of continuing **security breaches**, related or repeated **security breaches**, or multiple **security breaches** resulting from a continuing failure of computer security, shall be considered a single **security breach** and be deemed to have occurred at the time of the first such **security breach**.

WWW. **Shadow audit** means an audit performed by a qualified professional, which examines the same billing records

© 2015 MedPro Group. All rights reserved.

and related documents as those subject to an ongoing **billing errors proceeding**, with the intent of providing an **insured** with a private expert opinion. Such **shadow audits** are subject to the **company's** prior approval.

XXX. **Shadow audit expenses** means the fees for the services of a qualified audit professional and associated expenses incurred by an **insured** in the course of a **shadow audit**.

YYY. **Social services** means programs provided by an **insured** to help maintain or improve the quality of life for the patient, including family counseling and educational programs. These programs do not include therapy for the direct benefit of anyone other than the patient.

ZZZ. **Special expenses** means reasonable and necessary costs and expenses an **insured business** incurs to:

   1. prevent, preserve, minimize, or mitigate any further damage to an **insured business's digital assets**, including the reasonable and necessary fees and expenses of specialists, outside consultants or forensic experts an **insured business** retains;

   2. preserve critical evidence of any criminal or malicious wrongdoing;

   3. purchase replacement licenses for **computer programs** because the copy protection system and/or access control software was damaged or destroyed by a **covered cause of loss**; or

   4. notify customers of a total or partial interruption, degradation in service or failure of an **insured business's computer system** resulting from a **covered cause of loss**.

AAAA. **Stark proceeding** means proceedings instituted against an **insured** by a **government entity** alleging violation of any federal, state or local anti-kickback or self-referral laws.

BBBB. **Student** means an unlicensed person, other than a resident, enrolled in a licensed or accredited training program operated by an **insured business** relative to the delivery of **treatment**.

CCCC. **Time retention** means the number of hours that must elapse, as shown on the Declarations applicable to this Coverage Part, before the recovery of loss under Coverage E.2., Non-Physical Business Interruption and Extra Expense, or Coverage G, can be considered.

DDDD. **Unauthorized access** means the gaining of access to a **computer system** by an unauthorized person or persons.

EEEE. **Unauthorized use** means the use of a **computer system** by an unauthorized person or persons or an authorized person in an unauthorized manner.

FFFF. **Voluntary self disclosure** means an **insured** discloses information, without inquiry, to any **government entity** or **commercial payer**, which may serve as grounds for a **billing errors proceeding** against an **insured**. Such information must have become known to the **insured** fortuitously and subsequent to the initial effective date of this insurance.



**Issuing Company:**
**National Fire & Marine Insurance Company**
**Omaha, Nebraska**

### *THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.*

| | |
|---|---|
| **Endorsement No.:** | 1 |
| **Forming Part of Policy No.:** | NSC100432 |
| **Issued to:** | Orinda Care Center, LLC |
| **Effective Date of Endorsement:** | 02/15/2020 at 12:01 a.m. at the address of the First Named Insured stated herein. |

## SCHEDULE OF ADDITIONAL INSUREDS ENDORSEMENT

Only with respect to coverage provided under this endorsement, and in consideration of the payment of the additional premium due, if any, and in reliance upon the representations of all **insureds**, the **company** and the **insureds** agree to amend the policy as follows:

The definition of **additional insured** in the Definitions section of the Common Policy Provisions and Conditions is deleted.

As used in this endorsement, and only with respect to the Coverage Part(s) listed in the Schedule of Additional Insureds below, **additional insured** means any person or organization listed in that Schedule of Additional Insureds; however, any such person or organization is not an **additional insured** with respect to **losses** arising from, or in connection with, any acts or omissions alleged to have been committed by that person or organization.

The following subparagraph is added to the Insuring Clause(s) of the Coverage Part(s) listed in in the Schedule of Additional Insureds below:

The **company's** duty to defend and pay **losses** or **claims expense** on behalf of any **insured** shall extend to any **additional insured** meeting the terms and conditions of this policy, but only with respect to any **loss** or **claims expense** payable as the result of the **additional insured's** vicarious liability for the acts or omissions of an **insured** otherwise covered under this Coverage Part.

However, the coverage provided to an **additional insured** shall not be broader than that which an **insured** is required by written contract or agreement to provide to that **additional insured**. Additionally, coverage shall not apply to structural alterations, new construction or demolition operations performed by or on behalf of an **additional insured**.

The following provision is added to the Limits of Liability section(s) of the Coverage Part(s) listed in the Schedule of Additional Insureds below:

ADDITIONAL INSUREDS

All **additional insureds** share the Limits of Liability applicable to any **claim** with any **insured** for which the **additional insured** is alleged to be vicariously liable with respect to that same **claim**.

© 2015 MedPro Group. All rights reserved.

| SCHEDULE OF ADDITIONAL INSUREDS | | |
|---|---|---|
| ADDITIONAL INSURED | ADDRESS / DESCRIPTION OF OPERATIONS | COVERAGE PART |
| Renew Health Consulting Services, LLC | 107 W Lemon Ave, Monrovia, CA 91016 / Consultant | General Liability and Professional Liability |
| Renew Health Group, LLC | 107 W Lemon Ave, Monrovia, CA 91016 / Ownership Company | General Liability and Professional Liability |
| Capital Funding, LLC, ISAOA, ATIMA | Attn: Bank Loan Servicing 1422 Clarkview Rd, Baltimore, MD 21209 / Lender | General Liability and Professional Liability |
| US Department of Housing and Urban Development | Attn: Bank Loan Servicing 1422 Clarkview Rd, Baltimore, MD 21209 / Lender | General Liability and Professional Liability |

**All other terms and conditions of the policy remain unchanged.**



**Issuing Company:**
**National Fire & Marine Insurance Company**
**Omaha, Nebraska**

### *THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.*

| | |
|---|---|
| **Endorsement No.:** | 2 |
| **Forming Part of Policy No.:** | NSC100432 |
| **Issued to:** | Orinda Care Center, LLC |
| **Effective Date of Endorsement:** | 02/15/2020 at 12:01 a.m. at the address of the First Named Insured stated herein. |

## DISCIPLINARY, LICENSING AND CREDENTIALING ACTIONS ENDORSEMENT
## (PROFESSIONAL LIABILITY)

In consideration of the payment of the additional premium due, if any, and in reliance upon the representations of all **insureds**, the **company** and the **insureds** agree to amend the policy as follows:

The following provision is added to the Insuring Clause section of the Professional Liability Coverage Part:

DISCIPLINARY, LICENSING, AND CREDENTIALING ACTIONS

The **company's** duty to defend a **claim** includes the defense of any disciplinary, licensing, or credentialing action brought against an **insured** by (1) a state board of medical examiners or state dental board responsible for investigating and disciplining licensees, (2) a hospital or facility professional review board or committee through formally adopted, written procedures, or (3) the United States Drug Enforcement Administration, subject to the following additional conditions:

A.  If the policy provides coverage to an **insured** on a Claims-Made and Reported basis:

   1.  the action must arise from the **insured's** rendering of, or failure to render, **professional services**, after the **retroactive date**, but before the end of the **policy period**, and for which there is no other insurance available; and

   2.  the action must be first initiated against the **insured** during the **policy period**.

B.  If the policy provides coverage to an **insured** on an Occurrence basis, the action must arise from the **insured's** rendering of, or failure to render, **professional services** during the **policy period,** and for which there is no other insurance available.

C.  The payment of **claims expense** for such actions will be in addition to the applicable Limit of Liability. However, the **company** will not pay more than $25,000 in **claims expense** on behalf of an **insured** for any single action. Furthermore, the **company** will not pay more than $100,000 for **claims expense** on behalf of all **insureds** for all such actions covered under the policy.

D.  The **company** has no duty to pay any fines, penalties, or other costs assessed against an **insured** as a result of any such action.

However, payments for **claims** under this Insuring Clause shall not be subject to any Deductible or Self-Insured Retention.

### All other terms and conditions of the policy remain unchanged.



**Issuing Company:**
**National Fire & Marine Insurance Company**
**Omaha, Nebraska**

## *THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.*

| | |
|---|---|
| **Endorsement No.:** | 3 |
| **Forming Part of Policy No.:** | NSC100432 |
| **Issued to:** | Orinda Care Center, LLC |
| **Effective Date of Endorsement:** | 02/15/2020 at 12:01 a.m. at the address of the First Named Insured stated herein. |

## EMPLOYEE BENEFITS LIABILITY ENDORSEMENT
### (GENERAL LIABILITY)
### (CLAIMS-MADE AND REPORTED COVERAGE)

### NOTICE:

**This endorsement contains claims-made and reported coverage. Please read this endorsement carefully.**

In consideration of the payment of the additional premium due, if any, and in reliance upon the representations of all **insureds**, the **company** and the **insureds** agree to amend the policy as follows:

The following provision is added to the Insuring Clauses section of the General Liability Coverage Part:

EMPLOYEE BENEFITS LIABILITY

1. Claims-Made and Reported

    If "Claims-Made and Reported" is shown on the Declarations with respect to this Coverage Part, the following provisions apply:

    a.  The **company** will pay on behalf of any **insured** all **loss** and **claims expense**, subject to any applicable Deductible or Self-Insured Retention, and up to the Limits of Liability shown on the Declarations with respect to this Insuring Clause, arising from an **event** related to the **administration** of **employee benefits** that took place on or after the applicable retroactive date shown on the Declarations. Moreover, to be covered under this policy, the **loss** or **claims expense** must arise from:

        (1) a **claim** that was first made against, and received by, an **insured** during the **policy period**, and reported to the **company**, in writing, during the **policy period** or within any applicable **extended reporting period**; or

        (2) a **potential claim** that was first known about or discovered by an **insured** during the **policy period**, and reported to the **company**, in writing, during the **policy period** or within the automatic limited **extended reporting period**.

    b.  All **claims** and **potential claims** for damages arising out of, or in connection with, the same **event** will be deemed to have been first made on the date that the first of those **claims** is made against any **insured**, or the date the first of such **potential claims** is discovered by an **authorized insured**, whichever date is earlier. Only the policy in effect when the first such **claim** is made and reported to the **company**, or the first such **potential claim** is discovered and reported to the **company**, whichever is earlier, will apply to all related **claims** and **potential claims**, no matter when those related **claims** are made or reported, or **potential claims** are discovered and reported. If, prior to the effective date of this policy, the first such **claim** is made, or the first such **potential claim** is discovered, this policy will not apply to that **claim** or **potential claim**,

nor to any related **claim** or **potential claim** made during this **policy period** or any **extended reporting period**.

Only with respect to coverage provided under this endorsement, the following definitions are added to the Definitions section of the Common Policy Provisions and Conditions:

**Administration** means:

1. providing information to **employees**, including their dependents and beneficiaries, with respect to eligibility for or scope of an **employee benefits** program;

2. handling records in connection with an **employee benefits** program; or

3. effecting, continuing, or terminating any **employee's** participation in any **employee benefits** program.

**Administration** does not include handling payroll deductions.

**Employee benefits** means any group benefits administered on behalf of a **named insured's employees**, including:

1. group insurance plans or programs, such as life, health, accident, dental, or legal advice;

2. Individual retirement accounts, salary reduction plans under I.R.S. Code 401(k), or any amendment thereto, savings plans, or employee stock subscription plans;

3. travel or vacation plans; or

4. workers' compensation, occupational disease, unemployment, Social Security, or disability benefits insurance.

Only with respect to coverage provided under this endorsement, the EMPLOYEE BENEFITS LIABILITY exclusion is deleted from the Exclusions section of the Common Policy Provisions and Conditions.

The following provisions are added to the Exclusions section of the General Liability Coverage Part:

EXCLUSIONS APPLICABLE TO THE EMPLOYEE BENEFITS LIABILITY INSURING CLAUSE

The coverage provided under the Employee Benefits Liability Insuring Clause does not apply to:

1. BODILY INJURY, PROPERTY DAMAGE AND PERSONAL AND ADVERTISING INJURY

   Any **claim** arising from, or in connection with, **bodily injury**, **property damage**, or **personal and advertising injury**.

2. CLAIM FOR BENEFITS WHERE FUNDS AVAILABLE WITH REASONABLE COOPERATION

   Any **claim** for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the **insured**, from the applicable funds accrued or other collectible insurance.

3. COLLECTIVE BARGAINING

   Any **claim** arising from, or in connection with, the breach of any collective bargaining agreement.

4. ERISA

   Any **claim** arising from, or in connection with, an **insured's** duty as a sponsor of an employee benefit plan under the Employee Retirement Income Security Act of 1974 (ERISA), or any amendment or regulation that applies thereto. However, this exclusion is limited to:

   a. an **insured's** failure or inability to fund the plan in accordance with the plan document or any applicable law or regulation; and

   b. liability for the payment of benefits owed to a participant or beneficiary of the plan that have been paid or may lawfully be paid from the plan's funds or those of other employee programs.

 © 2015 MedPro Group. All rights reserved.

5.  FAILURE TO PERFORM UNDER A CONTRACT

    Damages arising out of the failure of an insurer to perform under a contract.

6.  HEALTH CARE EVENT

    Any **claim** arising from, or in connection with, any **health care event**.

7.  PERFORMANCE OF INVESTMENTS AND ADVICE GIVEN REGARDING EMPLOYEE BENEFITS

    Any **claim** arising from, or in connection with:

    a.  errors in providing information on past performance of investment vehicles; or

    b.  advice given to any person with respect to that person's decision to participate or not to participate in any **employee benefits** plan.

8.  UNPAID OBLIGATIONS UNDER EMPLOYEE BENEFIT PLAN

    Any **claim** arising from, or in connection with, damages arising out of an insufficiency of funds to meet any obligations under any plan included as an **employee benefit**.


The following provisions are added to the Limits of Liability Section of the General Liability Coverage Part:

EMPLOYEE BENEFITS LIABILITY PER EVENT LIMIT

The Employee Benefits Liability Per Event Limit shown on the Declarations is the most the **company** will pay for **loss** and **claims expense**, if shown on the Declarations as "Defense Within Limits," under the Employee Benefits Liability Insuring Clause because of **bodily injury** arising out of any one **event**.

EMPLOYEE BENEFITS LIABILITY AGGREGATE LIMIT

The Employee Benefits Liability Aggregate Limit shown on the Declarations is the most the **company** will pay for **loss** and **claims expense**, if shown on the Declarations as "Defense Within Limits," because of **bodily injury** included in the Employee Benefits Liability Insuring Clause.


Only with respect to the Employee Benefits Liability Insuring Clause, the Settlement condition in the Conditions section of the Common Policy Provisions and Conditions is deleted and replaced by the following:

SETTLEMENT

The **company** may settle any **claim**, **potential claim,** or other matter brought against an **insured** as the **company** deems expedient. However, the **company** shall first provide written notice to the **first named insured**.


**All other terms and conditions of the policy remain unchanged.**



**Issuing Company:**
**National Fire & Marine Insurance Company**
**Omaha, Nebraska**

## *THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.*

| | |
|---|---|
| **Endorsement No.:** | 4 |
| **Forming Part of Policy No.:** | NSC100432 |
| **Issued to:** | Orinda Care Center, LLC |
| **Effective Date of Endorsement:** | 02/15/2020 at 12:01 a.m. at the address of the First Named Insured stated herein. |

## PATIENT'S PERSONAL PROPERTY ENDORSEMENT
## (GENERAL LIABILITY)

In consideration of the payment of the additional premium due, if any, and in reliance upon the representations of all **insureds**, the **company** and the **insureds** agree to amend the policy as follows:

The following provision is added to the Limits of Liability section of the General Liability Coverage Part:

PATIENTS PERSONAL PROPERTY

Patient's Property Per Person Per Event Limit:     $5,000

Patient's Property Deductible:                              $250

Subject to the General Aggregate Limit and the Per Event Limit, the Patient's Property Per Person Per Event Limit shown above is the most the **company** will pay, subject to the Patient's Property Deductible set forth above, under the Bodily Injury and Property Damage Insuring Clause for **loss** and **claims expense** because of **property damage** to a **patient's** personal property sustained by any one person or arising out of one **event**.

Only with respect to coverage provided under this endorsement, the Damage to Property exclusion in the Exclusions section of the General Liability Coverage Part is deleted and replaced with the following:

Damage to Property

**Property damage** to:

a. property an **insured** owns, rents, or occupies, including any costs or expenses incurred by an **insured**, or any other person or organization for repair, replacement, enhancement, restoration, or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

b. premises an **insured** sells, gives away, or abandons if the **property damage** arises out of, or in connection with, any part of those premises;

c. property loaned to an **insured**;

d. personal property in the care, custody, or control of an **insured**, except that the **company** agrees to reimburse the **insured** for damages they become legally obligated to pay to a **patient** for **property damage** to the **patient's** personal property, which occurred while such property was in the care, custody, or control of the **insured**. The reimbursement for each such **patient** shall not exceed the Patient's Property Per Person Limit, minus the Patient's Property Deductible;

e. that particular part of real property on which an **insured** or any contractors or subcontractors, working directly or indirectly on behalf of the **insured**, are performing operations if the **property damage** arises out of those operations; or

f. that particular part of any property that must be restored, repaired, or replaced because the **insured's work** was

© 2015 MedPro Group. All rights reserved.

incorrectly performed on it.

Subparagraphs a, c, and d of this exclusion do not apply to **property damage** (other than damage by fire) to a premises, including the contents of such premises, rented to an **insured** for a period of 7 or fewer consecutive days. A separate limit of liability applies to the Damage to Premises Rented to an Insured as described in the Limits of Liability provision.

Subparagraph b of this exclusion does not apply if the premises are the **insured's work** and were never occupied, rented, or held for rental by the **insured**.

Subparagraph f of this exclusion does not apply to **property damage** included in the **products completed operations hazard**.


Only with respect to coverage provided under this endorsement, the following definition applies:

**Patient** means a person receiving **treatment** at an **insured's** facility.


**All other terms and conditions of the policy remain unchanged.**

© 2015 MedPro Group. All rights reserved.



**Issuing Company:**
**National Fire & Marine Insurance Company**
**Omaha, Nebraska**

### *THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.*

| | |
|---|---|
| **Endorsement No.:** | 5 |
| **Forming Part of Policy No.:** | NSC100432 |
| **Issued to:** | Orinda Care Center, LLC |
| **Effective Date of Endorsement:** | 02/15/2020 at 12:01 a.m. at the address of the First Named Insured stated herein. |

## CRISIS RESPONSE COSTS ENDORSEMENT
## (GENERAL LIABILITY)

In consideration of the payment of the additional premium due, if any, and in reliance upon the representations of all **insureds**, the **company** and the **insureds** agree to amend the policy as follows:

The following provision is added to the Limits of Liability section of the General Liability Coverage Part:

CRISIS RESPONSE COSTS LIMIT

The Crisis Response Costs Aggregate Limit shown below is the most the **company** will reimburse a **named insured** under the Crisis Response Costs Insuring Clause for **crisis response costs** because of a **crisis event**:

    Crisis Response Costs Aggregate Limit:               $25,000

The Crisis Response Costs Aggregate Limit shown above is the most the **company** will reimburse for all **crisis response costs** for all **crisis events** regardless of the number of **insureds** or **crisis events**. The Crisis Response Costs Aggregate Limit is not part of, and does not erode, the Limits of Liability applicable to other Insuring Clauses under this Coverage Part. The **company's** duty to reimburse for **crisis response costs** is not subject to any Deductible or Self-Insured Retention.

The following insuring clause is added to the Insuring Clause section of the General Liability Coverage Part:

CRISIS RESPONSE COSTS

The **company** will reimburse a **named insured**, upon satisfactory proof of payment, for **crisis response costs** paid by the **named insured** in connection with a single **crisis event** that occurs during this **policy period**, subject to the Crisis Response Costs Aggregate Limit. The **crisis response costs** must be incurred by a **named insured** within 30 days after the commencement of the **crisis event**. The end of the policy will not cut short this 30 day period.

Only with respect to coverage provided under this endorsement, the following condition is added to the Conditions section of the Common Policy Provisions and Conditions:

REPORTING REQUIREMENTS FOR CRISIS EVENTS

The **company's** duty to reimburse a **named insured** for any **crisis response costs** is conditioned upon:

1. an **authorized insured** providing notice of a **crisis event** to the **company** via telephone call to (800) 463-3776 or electronic message no later than 24 hours after the **crisis event**;

2. an **authorized insured** notifying the **company** in writing as soon as possible:

    a.  how, when and where the **crisis event** took place;

    b.  the names and addresses of any witnesses or **affected persons**; and

 © 2015 MedPro Group. All rights reserved.

    c.   the nature and location of any injury or damage arising out of the **crisis event**.

3.   the **insured** taking all reasonable steps to prevent a **crisis event** and to mitigate any **crisis response costs**; and

4.   a request for reimbursement of **crisis event costs**, along with all invoices or receipts support such **crisis response costs** in excess of $50, must be submitted to the **company** within 90 days after incurring such **crisis response costs**.

Only with respect to coverage provided under this endorsement, the following definitions are added to the Definitions section of the Common Policy Provisions and Conditions:

**Affected persons** means those individuals who suffer direct **bodily injury** or **property damage**, or directly experience **imminent injury**.

**Crisis event** means a man-made emergency situation, including but not limited to, arson, bombing, the taking of hostages, a mass shooting, terrorism, intentional contamination of food, drink or pharmaceuticals that results in **bodily injury**, **property damage**, or **imminent injury** to multiple persons and significant adverse regional or national news media coverage. A **crisis event** does not include a certified act of terrorism.

**Crisis response costs** means:

1.   reasonable and necessary fees and expenses incurred by a **crisis management firm** or by an **named insured** in order to provide public relations and media management services for the purposes of maintaining an **insured's** reputation;

2.   printing, advertising, or mailing costs incurred in order to manage the reputational risk of an **insured**;

3.   reasonable and necessary **emergency psychology expenses**, **emergency travel expenses**, funeral expenses, travel expenses, and temporary living expenses for **affected persons**;

4.   reasonable and necessary travel expenses and hotel accommodations for immediate family members of **affected persons**; or

5.   expenses to secure the scene of a **crisis event**.

**Crisis response costs** do not include **claims expense** or salaries paid by an **insured**.

**Crisis management firm** means a public relations firm assigned or approved by the **company** in writing that is hired by a **named insured** to perform services to protect and maintain the reputation of an **insured**.

**Emergency psychology expenses** means reasonable and necessary expenses for psychological or counseling services provided to **affected persons** and incurred within the first 14 days after a **crisis event**. This does not include the costs of any medications or hospitalizations. Such **emergency psychology expenses** must be approved by the **crisis management firm**, if hired, or in the alternative, by the **company**.

**Emergency travel expenses** means reasonable and necessary expenses occurring within 24 hours after a **crisis event** to transport an **affected person** sustaining **bodily injury** in a **crisis event** to a medical treatment facility.

**Imminent injury** means the actual and immediate threat of **bodily injury** or **property damage**.

Only with respect to coverage provided under this endorsement, the definitions of **event** in the Definitions section of the Common Policy Provisions and Conditions is deleted and replaced by the following:

**Event** means an accident and a **crisis event**. All injuries arising out of, or in connection with:

1.   the same or related acts or omissions; or

2.   the continuous or repeated exposure to substantially the same harmful conditions;

will be considered one **event**. For the purposes of this definition, all injuries to a mother and fetus (or fetuses) from conception through delivery shall constitute one **event**.

Only with respect to coverage provided under this endorsement, the following exclusions are added to the Exclusions Applicable To This Coverage Part section of the General Liability Coverage Part:

<u>Infections Disease Or Illness</u>

Any request for reimbursement of **crisis response costs** related to a **crisis event** that was caused by any infectious disease or illness caused by any bacterium, virus or fungus.

<u>Crisis Response Costs</u>

Any element of damages that have been paid by the **company** as **crisis response costs** under this endorsement which arises in any other **claim** or **potential claim**.

## All other terms and conditions of the policy remain unchanged.

                                       © 2015 MedPro Group. All rights reserved.



**Issuing Company:**
**National Fire & Marine Insurance Company**
**Omaha, Nebraska**

### *THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.*

| | |
|---|---|
| **Endorsement No.:** | 6 |
| **Forming Part of Policy No.:** | NSC100432 |
| **Issued to:** | Orinda Care Center, LLC |
| **Effective Date of Endorsement:** | 02/15/2020 at 12:01 a.m. at the address of the First Named Insured stated herein. |

## DISEASE CONTAMINATION CLEAN-UP EXPENSES ENDORSEMENT
## (GENERAL LIABILITY)

In consideration of the payment of the additional premium due, if any, and in reliance upon the representations of all **insureds**, the **company** and the **insureds** agree to amend the policy as follows:

The following provision is added to the Limits of Liability section of the General Liability Coverage Part:

DISEASE CONTAMINATION CLEAN-UP EXPENSE LIMIT

The Disease Contamination Clean-up Expense Aggregate Limit shown below is the most the **company** will reimburse a **named insured** under the Disease Contamination Clean-Up Expenses Insuring Clause for **clean-up expenses** because of **a superbug contamination**:

Disease Contamination Clean-up Expense Aggregate Limit:     $25,000

The Disease Contamination Clean-up Expense Aggregate Limit shown above is the most the **company** will reimburse for all **clean-up expenses** for all **superbug contaminations** regardless of the number of **insureds** or **superbug contaminations**. The Disease Contamination Clean-up Expense Aggregate Limit is not part of, and does not erode, the Limits of Liability applicable to other Insuring Clauses under this Coverage Part. The **company's** duty to reimburse for **clean-up expenses** is not subject to any Deductible or Self-Insured Retention.

The following insuring clause is added to the Insuring Clause section of the General Liability Coverage Part:

DISEASE CONTAMINATION CLEAN-UP EXPENSES

The **company** will reimburse a **named insured**, upon satisfactory proof of payment, for **clean-up expenses** paid by the **named insured** in connection with a **superbug contamination** that occurs during this **policy period**, subject to the Disease Contamination Clean-up Expense Aggregate Limit.

Only with respect to coverage provided under this endorsement, the following definitions are added to the Definitions section of the Common Policy Provisions and Conditions:

**Clean-up expenses** means reasonable costs and expenses incurred by a **named insured** to hire a third party to disinfect an **insured's** location as a result of a **superbug contamination**. **Clean-up expenses** shall not include any salaries, benefits, remuneration or overhead of a **named insured**.

Only with respect to coverage provided under this endorsement, the Contaminations exclusion in the Exclusions Applicable To This Coverage Part section of the General Liability Coverage Part is deleted.

### All other terms and conditions of the policy remain unchanged.

© 2015 MedPro Group. All rights reserved.



**Issuing Company:**
**National Fire & Marine Insurance Company**
**Omaha, Nebraska**

## *THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.*

| | |
|---|---|
| **Endorsement No.:** | 7 |
| **Forming Part of Policy No.:** | NSC100432 |
| **Issued to:** | Orinda Care Center, LLC |
| **Effective Date of Endorsement:** | 02/15/2020 at 12:01 a.m. at the address of the First Named Insured stated herein. |

## EMERGENCY EVACUATION EXPENSES ENDORSEMENT
## (GENERAL LIABILITY)

In consideration of the payment of the additional premium due, if any, and in reliance upon the representations of all **insureds**, the **company** and the **insureds** agree to amend the policy as follows:

The following provision is added to the Limits of Liability section of the General Liability Coverage Part:

EMERGENCY EVACUATION EXPENSE LIMIT

The Emergency Evacuation Expense Aggregate Limit shown below is the most the **company** will reimburse a **named insured** under the Emergency Evacuation Expenses Insuring Clause for **emergency evacuation expenses** because of an **emergency evacuation**:

> Emergency Evacuation Expense Aggregate Limit: $50,000

The Emergency Evacuation Expense Aggregate Limit shown above is the most the **company** will reimburse for all **emergency evacuation expenses** for all **emergency evacuations** regardless of the number of **insureds** or **emergency evacuations**. The Emergency Evacuation Expense Aggregate Limit is not part of, and does not erode, the Limits of Liability applicable to other Insuring Clauses under this Coverage Part. The **company's** duty to reimburse for **emergency evacuation expenses** is not subject to any Deductible or Self-Insured Retention.

The following insuring clause is added to the Insuring Clause section of the General Liability Coverage Part:

EMERGENCY EVACUATION EXPENSES

The **company** will reimburse a **named insured**, upon satisfactory proof of payment, for **emergency evacuation expenses** paid by the **named insured** in connection with an **emergency evacuation** that occurs during this **policy period**, subject to the Emergency Evacuation Expense Aggregate Limit.

Only with respect to coverage provided under this endorsement, the following condition is added to the Conditions section of the Common Policy Provisions and Conditions:

REPORTING REQUIREMENTS FOR EMERGENCY EVACUATIONS

The **company's** duty to reimburse a **named insured** for any **emergency evacuation expense** is conditioned upon:

1.  an **authorized insured** forwarding notice of an **emergency evacuation** to the **company** no later than 60 days after the **emergency evacuation**;

2.  an **authorized insured** notifying the **company** of any other insurance policy, prepaid legal service contract or legal practitioner retainer agreement available with respect to such **emergency evacuation**;

3.  the **insured** taking all reasonable steps to prevent an **emergency evacuation** and to mitigate any **emergency**

© 2015 MedPro Group. All rights reserved.

**evacuation expenses**; and

4. an **insured** not taking any action, or failing to take any action, without the written consent of the **company**, which would otherwise prejudice the **company's** rights under this policy.

Only with respect to coverage provided under this endorsement, the following definitions are added to the Definitions section of the Common Policy Provisions and Conditions:

**Emergency evacuation** means an evacuation of a **named insured's** location because a determination is made by the **named insured** that imminent danger exists arising from an external event or a condition in the **named insured's** location which would cause loss of life or harm to patients or **residents**. **Emergency evacuation** does not include an evacuation arising from:

1. a strike, bomb threat or false fire alarm, unless vacating is ordered by a civil authority;

2. a planned vacating drill;

3. the vacating of one or more patients or **residents** that is due to, and confined to, an individual's medical condition;

4. a governmental action;

5. a nuclear hazard; or

6. war or military action.

**Emergency evacuation expenses** means reasonable costs and expenses incurred by a **named insured** to perform an **emergency evacuation**. **Emergency evacuation expenses** do not include:

1. **claims expense**;

2. any other expenses incurred by an **employee**, volunteer, or other person providing assistance with, in any part of, or included in, the **emergency evacuation**; or

3. the remuneration, salaries, overhead or benefit expenses of an **insured**.

**All other terms and conditions of the policy remain unchanged.**



**Issuing Company:**
**National Fire & Marine Insurance Company**
**Omaha, Nebraska**

### *THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.*

| | |
|---|---|
| **Endorsement No.:** | 8 |
| **Forming Part of Policy No.:** | NSC100432 |
| **Issued to:** | Orinda Care Center, LLC |
| **Effective Date of Endorsement:** | 02/15/2020 at 12:01 a.m. at the address of the First Named Insured stated herein. |

## MEDIA EXPENSES ENDORSEMENT
## (GENERAL LIABILITY)

In consideration of the payment of the additional premium due, if any, and in reliance upon the representations of all **insureds**, the **company** and the **insureds** agree to amend the policy as follows:

The following new provision is added to the Limits of Liability section of the General Liability Coverage Part:

MEDIA EXPENSE LIMIT

The Media Expense Aggregate Limit shown below is the most the **company** will reimburse a **named insured** under the Media Expenses Insuring Clause for all **formal proceedings**:

    Media Expense Aggregate Limit:           $50,000

The Media Expense Aggregate Limit shown above is the most the **company** will reimburse for all **media expenses** for all **formal proceedings** regardless of the number of **insureds** or **formal proceedings.** The Media Expense Aggregate Limit is not part of, and does not erode, the Limits of Liability applicable to other Insuring Clauses under this Coverage Part. The **company's** duty to reimburse for **media expenses** is not subject to any Deductible or Self-Insured Retention.

The following insuring clause is added to the Insuring Clause section of the General Liability Coverage Part:

MEDIA EXPENSES

The **company** will reimburse a **named insured**, upon satisfactory proof of payment, for **media expenses** paid by the **named insured** in connection with a **formal proceeding** that occurs during this **policy period**, subject to the Aggregate Medial Expense Limit. The **media expense** must be incurred by a **named insured** within 6 months following the discovery of a **formal proceeding**.

Only with respect to coverage provided under this endorsement, the following condition is added to the Conditions section of the Common Policy Provisions and Conditions:

REPORTING REQUIREMENTS FOR FORMAL PROCEEDINGS

The **company's** duty to reimburse a **named insured** for **media expenses** is conditioned upon:

1. an **authorized insured** forwarding notice of a **formal proceeding** to the **company** no later than 60 days after the first discovery of the **formal proceeding**;
2. an **authorized insured** notifying the **company** of any other insurance policy, prepaid legal service contract or legal practitioner retainer agreement available with respect to such **formal proceeding**;
3. the **insured** taking all reasonable steps to prevent a **formal proceeding** and to mitigate any **media expenses**; and

© 2015 MedPro Group. All rights reserved.

4. an **insured** not taking any action, or failing to take any action, without the written consent of the **company**, which would otherwise prejudice the **company's** rights under this policy.


Only with respect to coverage provided under this endorsement, the following definitions are added to the Definitions section of the Common Policy Provisions and Conditions:

**Media expenses** means reasonable costs and expenses incurred by a **named insured** to manage a **formal proceeding** or other public relations expenses incurred to hire public relations experts and consultants. **Media expenses** do not include any reimbursement of salaries, overhead, fees, loss of earnings, or reimbursement of benefit expenses of an **insured**.

**Formal proceeding** means a criminal or civil investigation, complaint or formal administrative proceeding initiated against an **insured** relating to an actual or alleged violation or infringement if any federal, state or local law designed to protect **resident's rights**.


The following exclusion is added to the Exclusions Applicable To This Coverage Part section of the General Liability Coverage Part:

Prior Known Formal Proceedings

Any request for reimbursement of **media expenses** related to a **formal proceeding** of which any **authorized insured** knew or should have known of prior to the occurrence of such **formal proceeding.**


**All other terms and conditions of the policy remain unchanged.**

© 2015 MedPro Group. All rights reserved.



**Issuing Company:**
**National Fire & Marine Insurance Company**
**Omaha, Nebraska**

## *THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.*

| | |
|---|---|
| **Endorsement No.:** | 9 |
| **Forming Part of Policy No.:** | NSC100432 |
| **Issued to:** | Orinda Care Center, LLC |
| **Effective Date of Endorsement:** | 02/15/2020 at 12:01 a.m. at the address of the First Named Insured stated herein. |

## SCHEDULE OF HIRED AND NON-OWNED AUTO LIABILITY LIMITED COVERAGE ENDORSEMENT (GENERAL LIABILITY)

In consideration of the payment of the additional premium due, if any, and in reliance upon the representations of all **insureds**, the **company** and the **insureds** agree to amend the policy as follows:

Only with respect to coverage provided under this endorsement, the following provisions are added to the Bodily Injury and Property Damage Liability Insuring Clause of the General Liability Coverage Part:

The **company** will pay on behalf of any **named insured** listed in the Schedule of Hired and Non-Owned Auto Liability all **loss** and **claims expense**, subject to any applicable Deductible or Self-Insured Retention, and up to the Limits of Liability shown on the Declarations with respect to this Insuring Clause, arising from an **event** resulting in **bodily injury** or **property damage** that, notwithstanding any provision to the contrary in this Insuring Clause, occurred during the **policy period**, and arising from:

1. the maintenance or use by any **insured** of a **hired auto** in the course of the **insured's** business; or

2. the use of a **non-owned auto** by an **insured** in the course of the **insured's** business.

Only with respect to coverage provided under this endorsement, the Aircraft, Auto or Watercraft, Liquor Liability and Mobile Equipment exclusions in the Exclusions section of the General Liability Coverage Part are deleted.

Only with respect to coverage provided under this endorsement, the following exclusion applies:

**Bodily injury** to an **employee** of an **insured** arising out of and in the course of:

1. employment by an **insured**; and

2. where an **insured** is liable either as an employer or in any other capacity, or if there is an obligation to fully or partially reimburse a third person for damages arising out of **bodily injury** to an **employee** of the **insured** if the **bodily injury** occurs in the course of employment by the **insured**.

This exclusion does not apply to:

1. liability assumed by an **insured** under **insured contract**; or

2. **bodily injury** arising out of and in the course of domestic employment unless benefits for such injury are in whole or in part either payable or required to be provided under any workers' compensation benefits.

Only with respect to coverage provided under this endorsement, the Damage to Property exclusion in the Exclusions section of the General Liability Coverage Part is deleted and replaced with the following:

DAMAGE TO PROPERTY

**Property damage** to:

1.  property owned or being transported by, or rented leased, or loaned to any **insured**; or

2.  property in the care, custody, or control of any **insured**.


Only with respect to coverage provided under this endorsement, the following persons and organizations are added to the definition of **insureds** in the Definitions section of the Common Policy Provisions and Conditions:

1.  any person using a **hired auto** with an **insured's** permission;

2.  with respect to a **non-owned auto**, any partner or executive officer of an **insured**, but only while such **non-owned auto** is being used on behalf of the **insured**; and

3.  any other person or organization, but only with respect to their liability because of acts or omissions of an **insured** otherwise covered under the Bodily Injury and Property Damage Insuring Clause, or the acts of **insured** as defined under subparagraphs 1 and 2 above.


Only with respect to coverage provided under this endorsement, the following persons and organizations are not **insureds**, notwithstanding any provision to the contrary in the Definitions section of the Common Policy Provisions and Conditions:

1.  any person engaged in the business of his or her employer with respect to **bodily injury** to any co-employee of such person injured in the course of employment, or consequential injury to any relative of such co-employee, or for any obligation to reimburse a third party as the result of the **bodily injury** to the co-employee;

2.  any partner, executive officer or manager (if the **insured** is a limited liability company) with respect to any **auto** owned by such partner or officer or a member of his or her household;

3.  any person while employed in or otherwise engaged in performing duties related to the conduct of an **auto business** other than an **auto business** operated by the **insured**;

4.  the owner or lessee (of whom the **insured** is a sublessee) of a **hired auto** or the owner of a **non-owned auto** or any agent of **employee** of any such owner or lessee; or

5.  any person or organization with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not listed in the Schedule of Hired and Non-Owned Auto Liability.


Only with respect to coverage provided under this endorsement, the following definitions apply:

**Auto business** means the business or occupation of selling, repairing, servicing, storing or parking **autos**.

**Hired auto** means any **auto** an **insured** leases, hires, rents or borrows on a temporary, occasional or infrequent basis. It does not include any **auto** the **insured** leases, hires, rents or borrows from:

1.  any of the **insured's employees** or members of their households; or

2.  partners, executive officers or managers (if the **insured** is a limited liability company) or members of their households.

**Non-owned auto** means any **auto** the **insured** does not own, lease, hire or borrow which is used in connection with the **insured's** business. However, if the **insured** is a partnership, a **non-owned auto** does not include any **auto** owned by any partner.

**Tort liability** means liability that would have been imposed by law in the absence of any contract or agreement.

     © 2019 MedPro Group. All rights reserved.

| SCHEDULE OF HIRED AND NON-OWNED AUTO LIABILITY | | |
|---|---|---|
| NAMED INSURED | ID NUMBER | RETROACTIVE DATE |
| Orinda Care Center, LLC | 1368708 | 02/15/2015 |

**All other terms and conditions of the policy remain unchanged.**



**Issuing Company:**
**National Fire & Marine Insurance Company**
**Omaha, Nebraska**

### *THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.*

| | |
|---|---|
| **Endorsement No.:** | 10 |
| **Forming Part of Policy No.:** | NSC100432 |
| **Issued to:** | Orinda Care Center, LLC |
| **Effective Date of Endorsement:** | 02/15/2020 at 12:01 a.m. at the address of the First Named Insured stated herein. |

## EXCLUSION OF CERTIFIED ACTS OF TERRORISM ENDORSEMENT
## (GENERAL LIABILITY)

In consideration of the payment of the additional premium due, if any, and in reliance upon the representations of all **insureds**, the **company** and the **insureds** agree to amend the policy as follows:

Only with respect to coverage provided under the General Liability Coverage Part, the following exclusion is added to the Exclusions section of the Common Policy Provisions and Conditions:

CERTIFIED ACT OF TERRORISM

Any **injury or damage** arising, directly or indirectly, out of a **certified act of terrorism**.

Only with respect to coverage provided under the General Liability Coverage Part, the following definitions are added to the Definitions section of the Common Policy Provisions and Conditions:

**Certified act of terrorism** means an act that is certified by the Secretary of the Treasury in accordance with the provisions of the **TRIA Act**, to be an act of terrorism pursuant to the **TRIA Act**. The **TRIA Act** sets forth the following criteria for a **certified act of terrorism**:

1. The act resulted in losses covered by insurance in excess of $5,000,000 in the aggregate, attributable to all types of insurance subject to the **TRIA Act**;

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. The act must have resulted in damage within the United States including its territories and possessions and Puerto Rico, or outside the United States in cases of an air carrier or vessel meeting the definitions of such as provided in the **TRIA Act**, or the premises of a United States mission; and

3. No act of terrorism shall be certified if the act is committed as a part of the course of a war declared by Congress.

**Injury or damage** means any injury or damage covered under any Insuring Agreement to which this endorsement applies, including but not limited to **bodily injury**, **property damage** and **personal and advertising injury**. **Injury or damage** also includes clean-up costs or environmental damage sustained.

**TRIA Act** means the federal Terrorism Risk Insurance Act of 2002, as extended on December 22, 2005, and amended on December 31, 2007 and January 12, 2015.

## All other terms and conditions of the policy remain unchanged.

Electronically FILED by Superior Court of California, County of Los Angeles on 10/19/2021 05:36 PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Flores-Hernandez,Deputy Clerk

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

<table>
<tr><td></td><td><em>FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE)</em></td></tr>
</table>

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

MEDPRO GROUP, INC., an Indiana corporation, and DOES 1 through 10, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ORINDA CARE CENTER, LLC a California limited liability company; RENEW HEALTH GROUP, LLC, a California limited liability company

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* LOS ANGELES SUPERIOR COURT
CENTRAL JUDICIAL DISTRICT - STANLEY MOSK COURTHOUSE
111 North Hill Street, Los Angeles, California 90012

CASE NUMBER: *(Número del Caso):*
21STCV38519

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Brian A. Procel (SBN 218657) Miller Barondess, LLP, 1999 Avenue of the Stars #1000, Los Angeles, CA 90067 310-552-4400

DATE: 10/19/2021 Sherri R. Carter Executive Officer / Clerk of Court
*(Fecha)* Clerk, by H. Flores-Hernandez , Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*


[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>10/19/2021<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ H. Flores-Hernandez _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>21STCV38519 |

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Daniel S. Murphy | 32 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on  10/20/2021
     (Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By H. Flores-Hernandez                    , Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

Electronically FILED by Superior Court of California, County of Los Angeles on 10/19/2021 05:36 PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Flores-Hernandez,Deputy Clerk

| SHORT TITLE: Orinda Care Center, et al v. Medpro Group, et al | CASE NUMBER 21STCV38519 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I.  Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES    CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL Five   ☐ HOURS/ ☑ DAYS

Item II. Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked.
For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV.  Sign the declaration.

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort  (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |

CIV 109 03-04 (Rev. 03/06)
LASC Approved

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 1 of 4

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Orinda Care Center, et al v. Medpro Group, et al | _____ |

| | **A**<br>Civil Case Cover Sheet Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons<br>-See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont d.)** | Professional Negligence (25) | ☐ A6017  Legal Malpractice<br>☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3.<br>1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case<br>☐ A6109  Labor Commissioner Appeals | 1., 2., 3.<br>10. |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction)<br>☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019  Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.<br>2., 5.<br>1., 2., 5.<br>1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff<br>☐ A6012  Other Promissory Note/Collections Case | 2., 5., 6.<br>2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☑ A6009  Contractual Fraud<br>☐ A6031  Tortious Interference<br>☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 5.<br>1., 2., 3., 5.<br>1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation       Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure<br>☐ A6032  Quiet Title<br>☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6.<br>2., 6.<br>2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

CIV 109 03-04 (Rev. 03/06)

LASC Approved

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

LASC, rule 2.0

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Orinda Care Center, et al v. Medpro Group, et al | |

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review (Cont'd.)** | Writ of Mandate<br><br>(02) | ☐ A6151   Writ - Administrative Mandamus<br>☐ A6152   Writ - Mandamus on Limited Court Case Matter<br>☐ A6153   Writ - Other Limited Court Case Review | 2., 8.<br><br>2.<br><br>2. |
| | Other Judicial Review<br>(39) | ☐ A6150   Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade<br>Regulation (03) | ☐ A6003   Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007   Construction defect | 1., 2., 3. |
| | Claims Involving Mass<br>Tort (40) | ☐ A6006   Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035   Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental  (30) | ☐ A6036   Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014   Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment<br><br>(20) | ☐ A6141   Sister State Judgment<br>☐ A6160   Abstract of Judgment<br>☐ A6107   Confession of Judgment (non-domestic relations)<br>☐ A6140   Administrative Agency Award (not unpaid taxes)<br>☐ A6114   Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112   Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033   Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above)<br><br>(42) | ☐ A6030   Declaratory Relief Only<br>☐ A6040   Injunctive Relief Only (not domestic/harassment)<br>☐ A6011   Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000   Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance(21) | ☐ A6113   Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br><br>(43) | ☐ A6121   Civil Harassment<br>☐ A6123   Workplace Harassment<br>☐ A6124   Elder/Dependent Adult Abuse Case<br>☐ A6190   Election Contest<br>☐ A6110   Petition for Change of Name<br>☐ A6170   Petition for Relief from Late Claim Law<br>☐ A6100   Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

CIV 109 03-04 (Rev. 03/06)

LASC Approved

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0

Page 3 of 4

| SHORT TITLE:<br>Orinda Care Center, et al v. Medpro Group, et al | CASE NUMBER:<br>_____ |
| --- | --- |

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE<br><br>☑1. ☑2. ☑3. ☐4. ☑5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:<br>ReNew Health Group<br>107 W Lemon Ave |
| --- | --- |
| CITY:<br>Monrovia | STATE:<br>CA | ZIP CODE:<br>91016 | |

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the ___Stanley Mosk___ courthouse in the ___Central___ District of the Los Angeles Superior Court  (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: ___October 19, 2021___

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

---

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LASC Approved CIV 109 03-04 (Rev. 03/06).

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form 982(a)(27), if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles

**10/21/2021**

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____N. Avalos_____ Deputy

COURTHOUSE ADDRESS:
Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

PLAINTIFF:
Orinda Care Center, LLC  et al

DEFENDANT:
Medpro Group, Inc.

## NOTICE OF CASE MANAGEMENT CONFERENCE

CASE NUMBER:
21STCV38519

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

| Date: 02/25/2022 | Time: 8:30 AM | Dept.: 32 |
|---|---|---|

NOTICE TO DEFENDANT:   THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT  FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC, Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: ___10/21/2021___

_____
Daniel S. Murphy / Judge
Judicial Officer

---

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☑ by depositing in the United States mail at the courthouse in __Los Angeles__, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

Brian Procel
1999 Avenue of the Stars Suite 1000

Los Angeles, CA 90067

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: ___10/21/2021___

By _N. Avalos_____
Deputy Clerk

LACIV 132 (Rev. 07/13)
LASC Approved 10-03
For Optional Use

# NOTICE OF
# CASE MANAGEMENT CONFERENCE

Cal. Rules of Court, rules 3.720-3.730
LASC Local Rules, Chapter V@^^

Electronically FILED by Superior Court of California, County of Los Angeles on 11/08/2021 03:45 PM Sherri R. Carter, Executive Officer/Clerk of Court, by E. Gregg,Deputy Clerk

| | For Court Use Only |
|---|---|
| *Attorney or Party without Attorney:*<br>BRIAN A. PROCEL (State Bar No. 218657)<br>MILLER BARONDESS, LLP<br>1999 Avenue of the Stars, Suite 1000<br>Los Angeles, California, 90067<br>   *Telephone No:*  310-552-4400<br><br>   *Attorney For:*   Plaintiff<br><br>   *Ref. No. or File No.:* | |

| *Insert name of Court, and Judicial District and Branch Court:*<br>SUPERIOR COURT OF THE STATE OF CALIFORNIA<br>COUNTY OF LOS ANGELES, CENTRAL DISTRICT |
|---|

| *Plaintiff:*  ORINDA CARE CENTER, LLC, a California limited liability company; et al.<br>*Defendant:*  MEDPRO GROUP, INC., an Indiana corporation |
|---|

| PROOF OF SERVICE<br>SUMMONS | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>21STCV38519 |
|---|---|---|---|---|

1.   *At the time of service I was at least 18 years of age and not a party to this action.*

2.   I served copies of the Summons; Complaint; Civil Case Cover Sheet; Civil Case Cover Sheet Addendum and Statement of Location (Certificate of Grounds for Assignment to Courthouse Location); Notice of Case Assignment- Unlimited Civil Case; Notice of Case Management Conference; First Amended General Order; Voluntary Efficient Litigation Stipulations; Stipulation-Discovery Resolution; Stipulation-Early Organizational Meeting; Informal Discovery Conference; Stipulation And Order-Motions In Limine; Alternative Dispute Resolution (ADR) Information Package

3.   *a.   Party served:*      MEDPRO GROUP, INC., an Indiana corporation
      *b.   Person served:*   Pat Jones, CT Corporation System, Registered Agent

4.   *Address where the party was served:*   334 N Senate Ave, Indianapolis, IN 46204

5.   *I served the party:*
      a. by personal service.   I personally delivered the documents listed in item 2 to the party or person authorized to receive
            service of process for the party (1) on *(date):* Fri, Nov 05 2021 (2) at *(time):* 02:30 PM
      (1)   [ X ]   (business)
      (2)   [    ]   (home)
      (3)   [    ]   (other) :

6.   The "Notice to the Person Served" (on the summons) was completed as follows:
      a.   [    ]   as an individual defendant.
      b.   [    ]   as the person sued under the fictitious name of *(specify):*
      c.   [    ]   as occupant.
      d.   [ X ]   On behalf of *(specify):*   MEDPRO GROUP, INC., an Indiana corporation
            under the following Code of Civil Procedure section:
            [ X ]   416.10 (corporation)                              [    ]   415.95 (business organization, form unknown)
            [    ]   416.20 (defunct corporation)                     [    ]   416.60 (minor)
            [    ]   416.30 (joint stock company/association)         [    ]   416.70 (ward or conservatee)
            [    ]   416.40 (association or partnership)              [    ]   416.90 (authorized person)
            [    ]   416.50 (public entity)                          [    ]   415.46 (occupant)
            [    ]   other:



Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

PROOF OF
SERVICE
SUMMONS

*6319431*
*(4811700)*
Page 1 of 2

| Attorney or Party without Attorney:<br>BRIAN A. PROCEL (State Bar No. 218657)<br>MILLER BARONDESS, LLP<br>1999 Avenue of the Stars, Suite 1000<br>Los Angeles, California, 90067<br>Telephone No: 310-552-4400 | | For Court Use Only |
|---|---|---|
| Attorney For: Plaintiff | Ref. No. or File No.: | |
| Insert name of Court, and Judicial District and Branch Court:<br>SUPERIOR COURT OF THE STATE OF CALIFORNIA<br>COUNTY OF LOS ANGELES, CENTRAL DISTRICT | | |
| Plaintiff: ORINDA CARE CENTER, LLC, a California limited liability company; et al.<br>Defendant: MEDPRO GROUP, INC., an Indiana corporation | | |

| PROOF OF SERVICE SUMMONS | Hearing Date: | Time: | Dept/Div: | Case Number:<br>21STCV38519 |
|---|---|---|---|---|

Recoverable cost Per CCP 1033.5(a)(4)(B)

7. **Person who served papers**
  a.  Name:          Raymond Bandy
  b.  Address:     **FIRST LEGAL**
                    1517 W. Beverly Blvd.
                    LOS ANGELES, CA 90026
  c.  Telephone number:   (213) 250-1111
  d.  **The fee** for service was:   $389.91
  e.  I am:
    (1)  [X]  not a registered California process server.
    (2)  [ ]  exempt from registration under Business and Professions Code section 22350(b).
    (3)  [ ]  a registered California process server:
        (i)  [ ] owner  [ ] employee  [ ] independent contractor
        (ii)  Registration No:
        (iii)  County:

8. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

11/05/2021               *Raymond Bandy*
(Date)                           Raymond Bandy



Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

PROOF OF
SERVICE
SUMMONS

6319431
(4811700)
Page 2 of 2